**FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG, PA

AUG 01 2018

PER _____
DEPUTY CLERK

(1) Gartor Kiki Brown    NA6401
   (Name of Plaintiff)     (Inmate Number)

1100 Pike st. Huntingdon PA 16654 -1112
   (Address)

(2)_____
   (Name of Plaintiff)     (Inmate Number)

_____
   (Address)

(Each named party must be numbered,
and all names must be printed or typed)

        vs.

(1)  See Attachment _____

(2)_____

(3)_____
   (Names of Defendants)

(Each named party must be numbered,
and all names must be printed or typed)

_____
     (Case Number)

**CIVIL  COMPLAINT**

TO BE FILED UNDER: ___✓___ 42 U.S.C. § 1983 - STATE OFFICIALS

_____ 28 U.S.C. § 1331 - FEDERAL OFFICIALS

## I.   PREVIOUS LAWSUITS

   A.   If you have filed any other lawsuits in federal court while a prisoner, please list the caption and case number including year, as well as the name of the judicial officer to whom it was assigned:

N/A

## II.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

In order to proceed in federal court, you must fully exhaust any available administrative remedies as to each ground on which you request action.

A.   Is there a prisoner grievance procedure available at your present institution? __✓__Yes ____No

B.   Have you fully exhausted your available administrative remedies regarding each of your present claims? __✓__Yes ____No

C.   If your answer to "B" is Yes:

1. What steps did you take? I have tryed. The first step was the grievance officer then appealed to facility manager, then secretary office. The jail has a system in place were they don't investigate grievances, giving late responses or not responding or not mailing out their grievances on time to the secretary officers causing them not to respond. So most of my claims were not adequatly address.

2. What was the result? Secretary office would dinied addressing my claims, because it was not send to them with in 15 business days, in which was not true. I was sending my grievances out on time but they just refused to address most of my claims. They would also send me memos asserting i did not send copys of responses from the institution even though I did just not to respond. I did not get any results.

D.   If your answer to "B" is No, explain why not: _____ N/A _____
_____

## III.   DEFENDANTS

(1) Name of first defendant: See attachment

    Employed as _____ at _____
    Mailing address: _____
(2) Name of second defendant: _____
    Employed as _____ at _____
    Mailing address: _____
(3) Name of third defendant: _____
    Employed as _____ at _____
    Mailing address: _____
    (List any additional defendants, their employment, and addresses on extra sheets if necessary)

## IV.   STATEMENT OF CLAIM

(State here as briefly as possible the facts of your case.  Describe how each defendant is involved, including dates and places.  Do not give any legal arguments or cite any cases or statutes.  Attach no more than three extra sheets if necessary.)

1.   See 58 pg Attachment

It will also stand as a respond to defendants motion to dismiss & summary judgment if no co is appointed

2. _____

_____

_____

3. _____

_____

_____

**V.   RELIEF**

(State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statutes.)

1.   See Page 4 of complaint, also see order to show cause for An Peliminary injunction & A temporary restraining order. plaintiff in this matter is unable to send hit over 200 pages of Exhibits because of 803 indegent policy

2.   ~~Police~~ limiting him to $10.00 in copying and postage all in one a month. His Exhibits would be send out after his injunction is granted pursuant to that policy or at a later date.

3. _____

_____

_____

I declare under penalty of perjury that the foregoing is true and correct.

Signed this ___0 7___ day of _____i 0 th_____, 20 _18_.

_____
(Signature of Plaintiff)

Defendants

L.T. Gildea
C/O Harig
1 C/O D.L. Hill Jr.
1 C/O Sposito
5 Sgt. Zimmerman
6 Sgt. Leleux
7 L.T. Frances
8 Superintendent Ferry
9 L.T. Suimi
10 Sgt. Tombly
11 C/O Myers Camp Hill
12 L.I. Snyder Camp Hill
13 Dr. Shaikh
14 Sgt. Smith
15 Dr. Edwards
16 Dr. Steve
17 Nurse Jennifer
18 Nurse Lisa
19 Nurse Bob
20 P.A. Beth
21 unknew medical provider at Camp Hill
22 John Wetzel
23 Paula Price
24 Dr. Kolada
25 Dr. Kollmen
26 Andrew Daucha
27 Medical Provider Wexford
28 P.A. King
29 P.A. Gomes
30 P.A. Eric
31 Nurse Nikie
32 Nurse Trice
33 Nurse Hallie
34 Cousins
35 Goss
36 L.T. Maxwell
37 L.T. Snyder  Huntingdon
38 C/O Plocinik
39 C/O Crawford
40 C/O Hariss
41 Eric Partsons
42 C/O Johnson
43 Sgt. Anders
44 L.T. Dunkle
45 L.T. Younker
46 CO Fochtman
47 L.T. W.E. House
48 Unit Manager Kendrick
49 Mandy Sipple
50 C/O Kovick
51 L.T. Eberling
52 Kevin Kauffman
53 C/O Weyant
54 C/O Garlik
55 Sgt. Rhodes
56 Sgt. Flowers
57 Sgt. J. Neumann
58 Miss Stone
59 S. Ellenberger
60 C. Green
61 Sgt. Moore
62 C/O Myers  Huntingdon
63 Counselor Richeals
64 Sgt. Heater
6 P.R.C.
65 unknow P.A. Jean Doe at Graterford
66 C/O Smith

Count I Failure

Lieutenant Gildea, C/o Harris, C/o D.L. Hill Jr., C/o Sposito, Sgt. Zimmerment
Lieutenant Snyder, Lieutenant Suimi, Sgt. S.T. Leleux, Superintendant Harry
C/o Kovach, Lieutenant Maxwell, Mandy Sipple, Kauffman, LT. House
Unit Manager Kendrick  LT. Eberling, C/o Crowfrod, C/o Plocinik,
L.T. Younker, L.T. Dunkel, C/o Hariss, Eric Partsons, C/o Johnson
Sgt. Anders  C/o Fochtman,

## Count II Excessive Force

Sgt. Tombly, Sgt. Zimmerment, C/o Myers, C/o Plocinik  LT. Eberling

## Count III Retaliation

Sgt. Zimmerment, Sgt. Tombly, C/o Myers, LT. Gildea, C/o Sposito, C/o Harris
C/o D.L. Hill Jr., Sgt. Leleux, L.T. Frances, Superintendant Harry, Sgt. Smith,
LT. Maxwell, Kauffman, Mandy Sipple, LT. House, LT. Eberling, Miss Cousin, Goss,
Unit Manager Kendrick  C/o Harris, LT. Snyder, LT. Dunkel, C/o Kovach, Sgt. Heath
C/o Wevant, C/o Plocinik, C/O Garlik, Eric Partsans, Sgt. Anders
C/o Fochtman, LT. Younker, Sgt Rhodes, Porrertly Sgt Flowers, Sgt Moore

## Count V Municipal Policys  LT. Snyder, C/o Myers, C/o Smith

### Policy #1

Medical Custom for Inadequate Treatment, Failure To Train, Discipline, Supervise
against John Wetzel, medical Provider Wexford, P.A. Jean Doe of Graterford, Paula Price
Kauffman, Unknew medical Provider at camp Hill, Dr. Kevin Kollman, Dr. Kolodo,
Dr. Shaikin, Andrew Dancha

### Policy # 2

John Wetzel, Kauffman, Mandy Sipple, L.T. Maxwell
Asking for Permanent Injunction on this custom or Policy

### Policy # 3

Preliminary and Permanent Injunction on DC-ADM 803 indegent Policy

### Policy # 4

Prison mail Policy, Kauffman Unit Manager Kendrick, John Wetzal, LT. Maxwell
Mandy Sipple, LT House, LT Younker, Sgt. Rhodes, J. Neumann. Sgt Moore

## Count X Inadequate Access To The Courts

Unit Manager Kendrick, Kauffman Sgt. Moore, Sgt. Rhodes

## Count XI Procedural Due Process

John Wetzel, Kauffman, S. Ellenberger, P.R.C.

## Count XII Substantive Due Process

P.R.C., Kauffman, Counselor Richeaks, C. Green, Unit Manager Kendrick, C/o Plocinik
P.A. Games, LT. Gildea, Superintendent Harry

Count XIII Deliberate Indifference
Count XV Negligence

## Count XX Medical Malpractice

A. Gomes, Dr. Shaikh, P.A. Eric, Nurse Jennifer, Dr. Edwards, Dr. Steve, A. King, Nurse Nikie, Dr. Kalada, Nurse Trice, Nurse Hallie, Dr. Kevin Kollman, Paula Price, Cousin, Goss, Bob, Lisa, PA Beth

## Count XXII Assault & Battery

Sgt. Tombly, Sgt. Zimmerment, C/O Myers, C/O Plocinik, LT. Eberling

Extention OF Due Process For Damage OF Property
And Access To The Court

LT. Younker, Property Sgt. Flowers, Mail Room J. Neumann, Mail Room miss stone

## Count XV Negligence

LT. Gildea, c/o Harig, C/O D.L. Hill Jr., C/o Sposito, Sgt. Zimmerment, LT. Maxwell, Sgt. LeBeux, LT. Frances, LT. Snyder, C/o Plocinik, C/o Crowfrod, C/o Hariss, Eric Partsons, C/o Johnson, Sgt. Anders, LT. Dunkel, LT. Younker, C/o Fochtman, LT. W.E. House, Unit Manager Kendrick, Mandy Sipple, Superintenden Harry, C/o Kovick, LT. Suimi, Sgt. Tombly, C/o Myers, LT. Eberling, Kevin Kauffman, C/o Weyant, Cousin, Goss, C/o Garlik, Sgt. Rhodes, Property Flowers, Mail Room Sgt J. Neumann, Miss stone, S. Ellenberger, Counselor Richeds, John Wetzel, Sgt. Smith, P.A. Jean Doe at Graterford, C. Green, Sgt. Moon, T. snyder, c/o myers, c/o smith, Sgt. Heater, P.R.C.,

# Certificate Of Service

I here by state I am Gartor Kiki Brown Plaintiff in this matter. And that on this _____7_____ day _____10_____ 20 _____18_____ The Following Motion For Order TO Show Cause For An Preliminary Injunction and A Temporary Restraining order was Put in the U.S. Postage Pre Pay TO The following Address Below

United states District Court Middle District
228 Walnut St. Harrisburg, P.A. 17108

Dated ___7/10/18___

Gartor K. Brown NA 6401
~~Gartor Brown~~
1100 Pike St. Huntingdon P.A. 16654-1112

Plaintiff is also citing 983 also citing 28 U.S.C. 1331(a), 18 USC 1367. Plaintiff is suing all defendants in their official and individual capacity. Although the state statute is not infront of Plaintiff because he is being deprived law library time; he will like to sue under these state statute, Damage of Property, Count XIII, Count XV, Count XX, Count XXII and count II. These counts a lay out through his Complaint. Also Count XXI.

Plaintiff is citing "28 U.S.C. 1915, and is claiming he is under imminent threat of serious physical injury." Plaintiff is also claiming under 42 U.S.C. 1997e(a) which states "No action shall be brought with respect to Prison conditions by a prisoner confiner in any Jail, Prison, or Other correctional facility untill such administrative. remedies as or available are exhausted." Brown is claiming he has exhausted his administrative remedies, or attempted to.

This court also has Jurisdiction under 28 U.S.C. 1343(a)(3) See Pennhirst state sch & Hosp. v. Halderman, 465-U.S. 89 106 (1984), "Pennhurst does not Prohibit federal Court from awarding damages based on state law claims or awarding any kind of relief against local government." Plaintiff claims for injunctive relief are authorised by 28 U.S.C 2283 & 2284 and or 28 U.S.C. 1367. See Count V Policy 2 and 3.

Plaintiff is seeking $125,000 from each defendant in Compensatory Damages and more if the Courts deem necessary. Plaintiff seeks $125,000 from each defendants in Punitive damages; and more if the court's deem necessary. Plaintiff seeks nominal damages in any amount the Court's deem necessary. Under the Political Subdivision Tort Claims Act, 42 Pa. C.S.A. 8541 et seq. no local agency or employee may be held liable for any damages caused by the employee acting within the scope of his duties unless the allegedly injurious acts fall into one of the exceptions listed in 8542(b).

Under 42 Pa. CSA. 8550.9 an employee is not Protected by his agency's immuni if his act constitutes a crime, actual fraud, actual malice, or Willful misconduct. Pennsylvan Court have hold that willful misconduct in this Context is Synonymous with "intentional tort. See Agresta v. Philadelphia, 694 F. Supp. 117, 123 (E.D. Pa. 1985). Defendants are not Protected by governmental immunity against Brown's claims. Brown is also seeking attorneys' Fees in which he is asking defendants to Pay for all cost Pursuant to this litigation, respectfully.

Plaintiff is asking for declaratory, injunctive and monetary relief.

Plaintiff is sworn under Penalty of Perjury that everything in this complaint is ture!

# Count I   Failure-To-Protect

Brown is a 120 Pound homosexual male that was housed at Camp Hill from 08-09-17 — 10-23-17. Brown made officials at Camp Hill aware of this in which it is also transparent because Brown talks like a girl and switch his hips when he walk. Plaintiff was transferred to the RHU around 09-28-17 Pursuant to a write UP he got. After the strip case, Plaintiff meet with Lieutenant Gildea. Plaintiff made Gildea aware of his concerns of being housed with other inmates while in the RHU. Nevertheless his request was denied as Gildea asserted "we don't accommodate fags" Law Suit Man.

Plaintiff told Gildea he was bleeding from his hand during which a co had slamed the gate on his hand, Gildea told Plaintiff, "Camp Hill is not the Place to act up, you need to read on our history, we don't give a fuck about gay rights or your dom ass lawsuits." As Gildea was locking Plaintiff in his newly asign c Brown asserted "don't call me gay"; my name is, Gildea cut Plaintiff off "Shut the fuck up, your name is what ever I say it is!" "matter of fact sense you want to be a smart ass, I got something for you!" He then slamed the cell door. Plaintiff notice his cellmate was in the yard. Gildea came back faster then a track runner, asserting lets go! Plaintiff was nundle at this Point, thats when Gildea asserted I am Celling you up with "Strong" he has "12" A1 assaults and he loves homosexuals! Gildea took Plaintiff out of one cell and Put him in with "Strong". "Strong" then told Gildea "You know I don't take cells in the hole he's going to be a victim!" Gildea side have fun!

The Eighth Amendment requires prison officials "to Protect Prisoners from Violence". Bistrian v. Levi, 696 F.3d 352, 367 (3d. Cir. 2012) To establish a failure to Protect claim Plaintiff must show, he was incarcerated under conditions, Posing a substantial risk of serious harm; Prison officials acted with "deliberate indifference", in which they knew of and disregarded an excessive risk to his safety; and the official's deliberate indifference caused the Prisoner harm. During Plaintiffs stay in the cell with Strong, official Harig conducted a visual caivity search before Brown left the cell two times and co D.L.Hiller, once as Part of Policy. At no time did these officials tell Plaintiff cellmate to turn and look the other way, at one Point Co Harig told Plaintiff to turn and show "Strong" his anal caivity in which that CO asserted "I know how you fags are, "Strong look and make sure nothing is hiding in there for me!" On 10-1-17 when Plaintiff came back to the cell "Strong" askd him to sit on his bed" Brown then asserted "I don't roll like that!" "Strong made Brown aware while he was out the cell Gildea came to the cell and told him Plaintiff was "gay" "and a rat" Strong asserted "why do you think he put you in here, he told you all about me I am guessing" "I have 12 A1 assaults, and I like to to Fuck inmates!" At this time Plaintiff back was to the wall.

A yelling match then started, as Brown started to walk to the door to again ask officials to remove him from the cell like he did ever other time he was out the cell, he was Pulled back by his hair with Physical force by a 205 Pound "beast! Plaintiff was then subject to a brutal beat down that includ hits to the face and ribs. "Stro then tied Plaintiff's hands with a sheet; as Plaintiff was crying for help he was hit again and told to "Shut the Fuck UP! A sock was then forced into his mouth. Brown was now on "Strong's" bed with his jumper off and boxers down to his knees were his jumper was, Plaintiff's head was faced the door, and he saw Lieutenant Gildea come to the door with another unknown cp. He then asserted "Yall don't get blood on my sheets out loud; at no Point did Gildea attempt to stop the sexual assault on Brown. Before walking off he asserted, thats what you get for being a smart ass"!

The Sharp pain in me was more hurtful then when my mother dies". Plaintiff suffered contusions to the head face and knee from the sexual assault. Within the next couple days Plaintiff Protested through the doors when he had a chance usually when "Strong" was asleep. Brown had a chance to talk to Gildea telling him what took place, he told Plaintiff to stop ratting; that he was glad to see it go down; as in the sexual assault. Nothing was done to remove Plaintiff from the cell by Gildea. On 10-4-17, Brown suffered another sexual assault at the hands of "Strong".

3 of 58

This time Brown was pulled of the bed with extreme physical force, hitting his head on the side of the bed. Plaintiff was then beaten then tied with a rope like after his jumper was forcibly tooken off, he was thust into. Plaintiff then started to bleed from the anal during the middle of the assault. Again a sock was put into his mouth and a hand over to stop the yells. Although Gildea did not witness the second sexual assault, he was made aware after and did nothing. This time Brown suffered numbness to the head, groin pain, hip flexor pain, sharp back pain, and pain through his ribs. Gildea deliberate indifference caused Brown's injuries.

Plaintiff also brings these claims against Co. Sposito. On 10-1-17 the interew Co. that was at the door with Gildea was Co. Sposito. It was obvious from Sposito's actions in which was motivated by Gildea showed malicious use indifference. Plaintiff was not aware that this was Sposito, till he had a chance to leave the cell the next day. He then made Sposito aware that he seen him at the door with Gildea. Plaintiff then asked Sposito why he did not stop the on "going rape"? Sposito asserted, "that's why we put you in there!" Plaintiff then bagged Sposito to remove him from the cell, he asserted "Strona is not done with you!" Brown was put back into the same cell, and was later sexual assaulted again on 10-4-17.

To be liable, a prison official must both know of and disregard an excessive risk to inmate safety, that is, the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware, although the subjective knowledge can be proved by circumstantial evidence, that the excessive risk was so obvious that the official must have known of the risk. Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d cir. 2001). Sposito was also made aware of the second sexual assault on Brown, in which he asserted, "Man you keep getting rape, he must like you!"

Plaintiff also brings these claims against both Co. Haris, and D.L. Hill Jr. Because both actors actions was unjustifiable conducts without any legitimate penological purpose. Brown also brings these claims against both Sgt. Zimmerment and Lieutenant Snyder of camp Hill. All four actors was aware of both "Strona's" violent past and the fact that Plaintiff was 120 pound homosex. Plaintiff also made Co. Haris, D.L. Hill Jr, Zimmerment, and Snyder aware of the brutal act while at the law libaray on 10-2-17. While Brown was on his way to the libaray co. Haris asserted "Dam it smell like sex in your cell, in which D.L. Hill followed up with "Sposito told us you got some!" They that told Plaintiff he was moving slower than a escargot and asked him if his ass hurt. While at the law libaray Plaintiff told all defendants he feared for his life that he did not want to go back in the cell. Snyder then asserted "I am gay too. Just had sex with a man last night." Defendants was deliberate indifference in putting Brown back into the cell, in which was controtory to policy. In accordance with DC~ADM008, section 4A "Upon learning of an allegation that an inmate was sexually abused, the first staff member to respond shall follow the procedures. Security staff shall notify the Shift Commander; immediately separate the alleged victim and alleged abuser (28 C.F.R. 115.64[a][L]). At no time did any of the defendants followed policy in which caused Plaintiff to suffer a second sexual assault on 10-4-17 at the hands of his cellmate. Defendants actions violated the Eighth Amendment U2 U.S.C. 1560l (13) and U2 U.S.C. 5602(1) see Schwenk v. Hartford. 204 F.3d 1187 (9th Cir 2000) See Exhibit J #2.

Actual knowledge or awareness requires "articulated specific threats of serious harm" or "multiple complaints about his assailant to any one guard" Jones v. Beard. 105 Fed Appx 743.745 (3d Cir 2005). Defendants was also aware under reception and classification both Brown and "Strona" should had been in different cells because Plaintiff was on a disciplinary charge from a misconduct's and Strona" was in the RHU. Under investigation for extorting another inmate. At the time both inmates was two different classifications. Sgt. Zimmerment asserted to Plaintiff, "Myers and I made a bet that you would get your ass took before leaving the Hill." "I guess we was right!" Plaintiff then asked Zimmerment to remove him from the cell that he fear for his life. Zimmerment asserted "stop cring and go get fucked again!" This was on 10-2-17; because Zimmerment failed to reat Plaintiff was sexualy assaulted again on 10-4-17.

Also see Exhibit A-1 Pursuant to the dates/days pursuant to transfer. Apparently Plaintiff was transferred to SCI Huntingdon on 10-23-17 a day after leaving the RHU at camp Hill. Plaintiff was then transferred back to Camp Hill with in days; after he made officials at SCI Huntingdon aware of the brutal Malicrouse rapes he suffered prior to geting too Huntingdon. The D.O.C. reason for the transfer back to camp Hill was So Brown could Consulte with State Police. Although Plaintiff Protested of alternatives, because he feared retaliation, he was forced by officials to go back.

Plaintiff meat with a Lieutenant Suimi on 10-30-17 while at camp Hill. Plaintiff made Suimi aware of his concerns of having a cellmate Pursuant to what had already took place, and his feminine Characteristics make him a target to other inmates, Also that if his cellmate finds out that he's a rape victim that came back to camp Hill to talk to State Police, that would cause an excessive risk to his safety. See Bistrian, 696 F.3d at 367. Suimi stated to Plaintiff their was no Policy accommodation Gays or victims of rape. He then added "You are not a Z-code So you can't not get a single cell, and its to our discretion to give you that Z-code because your at up, will never give You Z-code". "You have to take a cell, or it's back to the RHU", and you remember what took place down their the last time You was their". Because Plaintiff did not want to go to the RHU, he was force to take a cellmate.

Plaintiff also brings failure to Protect claims against Lieutenant Suimi and Sgt. S.T. Leleux. The first thing Plaintiff's cellmate said to him was "O hell no, I don't do gay cells," "Willson" then went to the bubble and told officials "yall got a fagit in my cell switching his hips, who is he?" "I don't want him in my cell" officials told "willson" it would be handle the next day. On 11-1-17 after Plaintiff came from dinner, "Willson" told him to pack his Shit, and to get out the cell, He then told Brown that Sgt. Leleux told him Plaintiff was raped in the RHU and now he's back from another Jail to talk to the law "Willson" then asserted your a "rat" and your gay, you got to get the fuck out".

Plaintiff then walked to the bubble and told Sgt. Leleux he was in danger that his celly wanted him out the cell. Leleux then walked to Plaintiffs cell and asserted to "willson" the only way Brown is leaving this cell is in a body bag, this is Jail, yall work it out". "Fuck him up if you have to". Sgt. Suimi was called and Superinten daunt Harry also came down. Brown told both Suimi and Harry what "Willson" had told him Pursuant to getting out the cell and being a safe victim. "Willson" then started to talk to Harry, and Suimi saying "Yall put him somewear eals their is a empty cell put him in their". Harry asserted he's not a Z-code "I don't care what you do with him". He did all three actors 'Jim Jang to send him to medical, with his shit open".

Deliberate Indifference is a Subjective standard requiring the Plaintiff to show the Prison official actually was aware of an excessive risk to Inmate Safty. Jackson V. Everett, 140 F.3d 1149, 1142, 1152 (8th Cir 1998). Brown then asked both Harry and Suimi why don't they just put him in a single cell and they told Brown because "You told Huntingdon that our CO's had something to do with your Sault rape". After they walked off Plaintiff was forced back into the cell by Leleux. With in no time "Willson" started to hit Plaintiff in the face, after, Brown fell to the floor, "willson" started to yell out the door "I told Yall to get him the fuck out of my cell". Plaintiff then walked back to the bubble this time with blood all over him from a brooken nose. Leleux started to laughaud her he seen Plaintiff. "Threats between inmates are Common" and do not, in every circumstance "Serve to impute actual Knowledge of Substantial risk of harm".

This is different and the Courts should note how Serious Brown Claims are Plaintiff made multiple complaints in which was specific to officials, but nothing was done. Willson also told Leleux, Harry, and Suimi that he would harm Brown if they did not remove him. Officials action was contrast to Policy. See Exhibit B-5. Plaintiff was send to medical in which he meat with medical officials. LT. Frances and Superintendant Harry was Called down. Brown addressed both actor, asserting all that Just took Place, in which Harry was already aware. Plaintiff was told to Sit in the hallway outside medical. At this time Plaintiff was still bleeding from the nose, accessivly, his Shirt was Covered in blood. One inmate even asked him "did you just fight a U.F.C. fighter?" Both actors came out of medical

They then told Plaintiff to go back to his unit. Plaintiff started to cry out of fear, he then asserted it would be ardous, being that he was just assaulted for being a rat and being a gay inmate. Nevertheless the issue was ignored, "this was like a nightmear that would'nt end". Plaintiff walked back to his housing unit and notice his cellmate was still in the cell with no write up for his actions. Willson told Plaintiff not to look at him and any wrong move would tricker another assault. The next day Plaintiff suffered another assault after he used the toilet and forgot to flush. Brown again was bleeding and had bruises from only one hit to the face. Plaintiff again wolled to the bubble and told officals what happened. This time Sgt. Leleux refused to send Plaintiff own to medical. Plaintiff also bring failure to protect claims against both I. Frances and Superintendant Harry. Plaintiff expressed his concerns regarding his safty, but nothing happened to prevent the assaults to Plaintiff. Both Harry and Frances was aware that Brown cellmate was aware he was a rape victim that was down from SCI Huntingdon to cooperate with the State Police. It was also obvious that his cellmate was aware he was gay in which Leleux told him, and the fact that Brown has feminine characteristics.

Plaintiff also wrote grievances pursuant to his stay in the RHU at Camp Hill and his transfer back to Camp Hill see Exhibits B1-8 and C1-4. Plaintiff brings these claims against Co Kovach. After Plaintiff was transferred back to SCI Huntindon on 11-13-17 he meat with both P.R.E.A. Personnals Lieutenant Maxwell and Mandy Sipple. Maxwell asserted to Plaintiff that he use to work at Camp Hill and his friends was under allot of heat because of his claims. He stated he was not happy with Brown because of that. Sipple then asserted that policy dose not require that Plaintiff be given a single cell just because he is a homosexual and a rape victim.

Both actors then started to ask Plaintiff about his pending lawsuits. Plaintiff asserted he did not want to talk about any pending litigations. Plaintiff then told both officals that he was just assaulted back at Camp Hill and he fear for his safty and that he would again be a target because of his feminine Characteristics in which he was little, he talked like a girl, and switch his hips when he walks and he wears eye linder. Sipple told Plaintiff "you can't have your cake and eat it too" it's seems to me your trying to attack Men, so don't screem rape". Maxwell asserted to Brown, "look you will be getting a celly we are over crowded if you refuse then the RHU will be your home"!

Two members from security came in with pen and paper, they told Plaintiff to sign a dubble bunking sheet and write a statement that he is ok to go and stay in population. Plaintiff refused and he was threaten so he sign it. Plaintiff was then put in population on B-A were it was single cells. After a week he was told he would be moving to get a cellmate because he had wrote a grievance on two security staff. Plaintiff refused to take a celly and he was send to the hole. Plaintiff spend 30 days in the hole in a single cell. When he came out he was put on A-A with a cellmate name Dale Jackson. Plaintiff made both Lieutenant Maxwell and Mandy Sipple aware that he fear for his safty and that he was having mental issues. Nothing was done to accommodate Brown.

Plaintiff then made his concerns be known to a block co name Kovach, he told Kovach that Dale keap asking him if he was gay and making fun at him for wearing eye linder. On 1-7-18 Plaintiff was called a fagit by Co Kovach in front of other inmates. Plaintiff then calld the PREA hot line, and wrote a grievance. By 1-13-18 Co Kovach had sliped Dale personal mail of Brown pursuant to his sexual assault claims. He then told Dale that Brown had been raped, and he likes putting in lawsuits and cooperating with the law. Plaintiff meat with both Maxwell and Sipple and made them aware of what Kovach did. Their responce was, "Stop wearing eye linder"! inmate Jackson then told a friend that Plaintiff was a rat, that

And a homosexual that was raped at Camp Hill, Jackson then Gived his friend "Allan" a grievance responds from Camp Hill that was given to "Jackson" by Co. Kovach, that inmate then passed it around to the other inmates on the block. Both "Jackson" and "Allan" then started to Sexual harass Plaintiff, and extort him. Plaintiff was force to, call a family friend of another inmates account so that it would not alert officials, asking for money. That family friend send over $300.00 to both, "Jackson" "and "Allan". Inmate Jackson then Put a Shank to the neck of Plaintiff, asserting "If you tell i'll kill your fagit ass".

Never the less Plaintiff againe told both Maxwell and Sipple but nothing was done. on 1-15-18, Brown was assaulted by inmate "Jackson" in the morning before Jackson went to school. He then told "Allan" "if you see him come out the cell fuck him up!" Nevertheless Plaintiff came out the cell because he would not stop bleeding from a cut on his face and his nose. He then made Co Kovach aware and a Sgt. Mt. Aurano. Co Kovach told Plainti that's what you get "fucking rat", "now get away from my desk before I write you up!" Sgt Aurano told Kovach "we have to send him to medical, he's bleeding bad", Kovach asserted, if we do that, they will make a big deal you know he's got all these lawsuits" Plaintiff was forced back to his cell.

Officials, Sipple, Maxwell, and Kovach had knowledge of excessive risk to Plaintiff's safty. Circumstantial Evidence, denotes that defendants knew of a substantial risk from, the very fact that the risk was obvious. see Bistrian v. Levi 696 F.3d 352, 367 (3d cir 2012). Plaintiff also made Kovach aware when inmate Jackson Put the Shank to his neck and that he was force to Put over $300 on Jackson and Allan's books, and Co Kovach did nothing when Brown asked to be move. Brown againe wrote a Grievance see Exhibit D1-4.

On 1-22-18 Brown was written up and as in to the RHU. He was Put into a camera cell in which he had a mental break down. Plaintiff was written up for refusing a cellmate while in the RHU. Brown was moved out the camera cell to a single cell on 2-1-18. On 2-2-18 Co Plecinik came to Brown's cell to alert him that he will be moving with inmate Allan on G-A the next day. Plaintiff made Co Plecinik aware that him and Allan was enemies, that while on A-A he was extorted by both Allan and Jackson for over $300.00, Plaintiff also asserted he had wrote a grievance asking for separati on both Allan and Jackson see Exhibit D1-3, but that his grievance was never respone to. He also asserted to Plecinik that both LT. Maxwell and Sipple was aware and that he was a rape victim and he would reather get curr'ight up before taking a cellmate. Plecinik told Plaintiff that he was aware, and that Allan is on his enemie list but it was over crowded so he would have to move Brown when it was time. He also asserted he did not "give a shit".

Plaintiff was then called down to Maxwell's office. In the office was a **Lieutenant House**, Lieutenant Eberling, Kevin Kauffman, Unit Manager Kendrick our Mandy Sipple, Brown notice House and Eberling was the two officals that force him to sign the double bunking sheet see Exhibit E1-5 in which Brown wrote a Grievance, directed to both officals. Brown started to talk, asserting he was subject to harassment on the unit. Brown to Maxwell's office by other inmates because officals had said it out loud "your going to see Maxwell" and inmate knows that Maxwell is the PREA Lieutenant, Brown also made officals aware, that he had been subject to harassment by other inmates such as, Allan and Jackson and that he was very to harassment by other inmates such as, Allan and Jackson and that he was very in concern about his Safty. Kauffman told Brown, "You should had never left the "once this is Jail", inmates get assaulted and sexually assaulted all the time, Put some weight on and you will be fine, Kauffman also Predicated "Prisoners do not have rights" Plaintiff made these officals aware that he did not want to go in the cell with Allan" because they was enemies that he was extorted by this same inmate and was subj to sexual harassment after Co Kovach Stiped Jackson legal mail Pursuant Sexual assault clauns by Brown. House, Eberling, Kauffman & Sipple and Kendrick all agreed that Plaintiff will be going in the cell with Allan dispite his concerns; because it was over crowded in the RHU, and the Jail. Plaintiff then Predicated that he was aware that "Allan" was in the hole for stabbing another inmate over cookies. They told Plaintiff he would be mace with or spray with O.C. "the good stuff"

Brown is alleging that he informed official Kauffman, LT House, LT Eberling, Kendrick, Maxwell and Sipple of the substantial risk of serious harm and they disregarded the risk despite knowledgement See Beers - Capitol 256 F.3d at 132 Plaintiff also brings failure to Protect claims against these actors. The next day Plaintiff was told it was time to move by Co. Plocnik and Co Crawford. Co. Plocnik then predicated "Allan is going to fuck you up, we just told him your Morris in with him!" "You should have seen his face", "He said who the fag it kid"!

Plaintiff again told both Co's that him and inmate "Allen" was enemies and that he did not want to move in with him. Nevertheless Co Plocnik asserted that force would be use because it was over crowded. An inmate Delgrisso shae was a witness, as Plaintiff was crying out that he did not want to go into the cell. A group of Co's came from the bubble Predicating they will use force if Plaintiff did not go into the cell. Plaintiff then asked to talk to a white shirt. Three Lieutenants came from the bubble LT Dunkel and LT. Younker, Plaintiff then asserted his concerns and why he did not want to go into the cells they Predicated "We know who you are Chip and dip, or should we say Mis Brown"! Plaintiff was forced into the cell. When cuffs came off CO. Plocnik asserted "have fun with him, he's a fagit". Allen started to Punch Brown "didn't I tell your fagit ass not to come in here". Brown covered up as Co Plocnik, Co Crawford, LT Dunkel and LT. Younker was watching cheering "Allan" on, in which they did nothing to stop the assault on Brown. Brown brings failure to Protect claims against Co Crawford, LT Younker, Co. Plocnik and L.T. Dunkel. At the time of the assault all defendants had sufficient knowledgement of a risk to Plaintiff to constitute deliberate indifference.

On 2-5-18 Plaintiff came out for showers, he told Co Hariss what took Place, Hariss asserted "get your gay ass in the shower and stop talking to me" this co also failed to act. After the shower Plaintiff again told him he did not want to go in the cell in which he asked Brown if he remember the Grievance he wrote on him Plaintiff then asserted yes I told Plaintiff "get your fagit ass back into the cell"! Allen also told Hariss get him out my cell, I am a liter I will kill him, "I don't like rats. Nevertheless nothing was done, he told Brown force would be used accommodated with a write up. So Plaintiff locked in. Soon after Plaintiff talked to a Phychologist through the Door Eric Parsons. He told Eric about the assault in which "Allen" encourge because he wanted to get Plaintiff out the cell. He then told Eric he fear for his Safty and that he was "suicidal" Eric asserted to Plaintiff "Well your still alive" Eric did nothing "Allen then came to the Door and predicated to Eric "Yo if he's Suicidal you got to get him out of here and into camera cell" Eric asserted "he will be Just fine". Unit Manager Kendrick then walked up as "Allan" was talking to Eric. He told Kendrick that he would Kill Plaintiff if he did not get him out the cell. Kendrick asserted its over crowded. Allen turn around and again started to hit Plaintiff in front of Kendrick and Eric. They both walked away from the door, in which they did nothing to remove Brown. Plaintiff also brings claims of failure to Protect against both Co Hariss and Eric Parsons and Unit Manager Kendrick. Though Plaintiff Provided details about the nature of his dispute with inmate "Allen" See 696 F.3d at 369. When Plaintiff meat with Maxwell in which nothing was done. Around 5:00 Pm on 2-5-18 Brown called Co. Chilcote and told him he had suffered injuries from two assaults at the hand of his Cellmate. He asserted "I already know the guys was talking about it" as fucked up as it sounds". Allen then hit Brown in the face by this time Plaintiff was use to covering up when "Allen" came close to him. "Allen started to Yell at Co Chilcote get him the fuck out my cell, or he will be Sucking my dick Pretty Soon"! Co Chilcote then told "Allen" stop hitting him I got you"! "there are four inmates that just left to go to population so the cells are open, but for some reason Younker, and Dunkel do not like Brown, they want to fuck with him by keeping him in here"! He also Predicated "I know your about your work, but I cant let anything happen to Brown hold on"! CO Chilcote left the door and came back a short time later. He then told "Allen" "the best I can do is move you with your buddy on B Pod"; "but I had orders from Kendrick and Dunkle that they want to keep Brown in the corner cell". "Allen" then Yelled back "Fuck No, I'am good Here I'am at"! "But get this fagit out of my fucking cell"!

Co chilcole is not a defendant because he was the only one that attempted to make a move. A short time after a Co Johnson came to the cell door as he was doing his rounds. Plaintiff told Johnson what was going on and that he was aware that their was single cells on the block. Sgt. Ander wall to the door and Plaintiff started to cry out asking him to move him before he suffer more injuries, Ader asserted "Power to the people and let the Goys line on" then he started to laugh. They both walked off with out moving Plaintiff

When Ader as in Sgt. Ander did trays that night, "Allan took Plaintiff's tray, Plaintiff then reached for his tray and "Allan" started to hit him in front of Ander. Ander did nothing and walked off. At this time there was other open cells on the Pod, but officials surely put other inmates in them. In the middle of the night with out worning "Allan" pulled Brown off the top top bunk, Plaintiff then hit his head on the rail and started to bleed. Before Plaintiff could react, he was getting chocked by inmate Allan" in which he started to predicate "they want me to fuck you" "they want me to Fuck you" "they want me to fuck you, that's why they won't move you"! He then started to hit Plaintiff over and over. He then attempted to take Brown's jumper for off him, but was unable to. "It was now a full on fight, Brown had told himse that he would rather die before he would a gane be a victom of a sexual assault, The ample force from "Allan" over powered Brown, Brown knew in his hart he did not stand a chance but he did not quit.

With God in Plaintiff's croner that night, "Allan" stoped the malicious attack. The next morning Plaintiff was slower then an escargot in which his body was deteriorating from his on going injuries suffered at the hands of the "diabolical Goon". On 2-6-18 in the morning "Allan" told Sgt. Ander and LT Younker and LT Dunkle that there will be an rape assault if they did not move Brown out his cell. Nevertheless nothing was done. The three actors told Allan" "go ahead, it would't be the first time." On 2/7/18 Brown a gane talked to Unit Manager Kendrick telling him in detail what had took place during the night. Againe "Allan" was motovating Plaintiff to tell Kendrick because now "Allan" was aware through officoo actions that they was conspirins to keep Plaintiff in the cell. Kendrick told Plaintiff, "their is nothing I can do for you" "the next time you come out the cell for showers, just don't lock in"! Plaintiff is alleging that his constitutional rights were violated when Prison officials failed to protect him from repeated assaults. The Eighth Amendment right against cruel and unusual punishment imposes on Prison officials a duty "to protect prisoners from viola at the hands of other Prisoners". Farmer v. Brennan, 511 US. 825, 833 (1994).

A Prison official failure to protect a prisoner from inmate violence can make the official liable to the prisoner under 12 U.S.C. 1983. On 2/7/18 As the warden Kauffman did h rounds, Brown a gane told Kauffman that one inmate "Allan attempted to rape him. Allan then hurried to the door and told Kauffman "I am going to take his ass if y don't remove this fagit ass rgit from my cell" "Yall know i am a lifer I have nothing to lose, I am never going home". Kauffman told Brown, take it up with the Unit Manage. Kauffman then hurryly walked off with out doing nothing. Later that day, sometime afte 4:00PM Brown talked to Co Johnson, told Johnson he was aware of open cells on the un and that he should be moved, along with Johnson was Co Plocinik, that's when "Allan" snapped si I am sick of this shit; He attacked Brown as Johnson & Plocinik ran off. "Allan then ripped through Brown's jumper as if it was gold under the jumper, Brown try to put up a fight, but by now he was like a wounded animal; "Allan then put Brown's legs over his shoulder and forcly trusted into Brown with no reverse "at THIS TIME, PLAINTIFF'S ANCESTORS COULD HERE HIM CRY OUT FOR HELP"!

The ample force used caused Brown to start bleeding! Allan now w ike an hungry wolf, and Brown was "dinner"! It was transparent that the bangin was from the cell next door "asserting what are you doing to the poor kid" "you're going to kill him"! The diabolical Goon started to hit Brown in the face telling him to "shut the fuck up, Brown was now bleeding from his nose and mouth, "Allan then put part of Brown's sheet into his mouth for Apparently Brown had sheets rapped around him when he went to talk to Johnson a and Plocinik at the door because he was cold.

"Allan" then started to predicate to Brown "do you know that him? who's your dad? who's your dad?" Brown could now feel an explosion in, and up through his anal; it was confermation that the "arduous", "degrading", "demoting" act was over! Allan then hurly got from over Brown and his actions were as it ran wanted to get sexually assaulted "amerous like" asserting to Brown "did you like that aby girl? The vulnerable Brown slowly got up ashe notice blood all around the crime seen

Inasmuch the court should note officials actions were contrary to POLICY. DC-DM001. The Department dose not permit an inmate to be subject to abuse; which includes, n occurrence of an unwarranted life-threatening act, verbal or written threat be inflict hysical injury directed toward you; and or sexual contact. Inmate are prompted to report abuse verbally or file a grievance see DC-ADM 804. Officials action were also contrary to their Prison Rape Elimination Act (DC-ADM 008) Policy.

Sexual harassment of inmates is prohibited. Sexual Harassment is defined as exual advances, request for sexual favors, or verbal comments, gestures, or actions of derogatory or offensive sexual nature, by one inmate directed towards another. Sexual abuse of inmates are prohibited. sexual abuse of an inmate by another inmate include any of the following acts; if the victim does not consent, is coerced int uch act by overt or implied threats of violence, or is unable to consent or refuse; contact between the penis and the vulva or the penis and the anus, including penetration, however slight 2) contact between the mouth and the penis, vulva, or nus.

Plaintiff started to yelled out the door for help or medical attention. Co. Johnson ame back to the door asserting "damn it looks like an animal got slay in here; lot of blood" he then predicated "we know what's going on but sgt Anders and t. Younker and Dunkal does not want us to move you, but I can let them now your bleeding all over the place" Brown told co Johnson again that he had 1st been raped. Other inmates then started to yell some calling Plaintiff a "rat" and others saying get him out of that cell or he's going to kill him". An unknew co came to the door asaying "holly shit" "I have nothing to do with this once shit hit the fan, he needs medical attention." Co. Fochtman then came to the door, asserting "It's a boy, no it's a girl, "Allan" you are the father" Fochtman then predicated, which one of y'all am I writing up for fighting? Sgt. Anders wants me to write someone up, so it can look good" Plaintiff thes asserted to Fochtman "y'all have to move me, Allan said he's oing to keep sexualy assaulting me till y'all move me" Allan then started o yell out, "y'all did this, i am the most violent lifer in this jail, and y'all refuse to move him" Co. Fochtman then stated "WE DO NOT MAKE OURTESY MOVES; THIS IS NOT THE HILLTON, IT'S HUNINGDON"! This actor then walked off lauging. The Court Should note this is a camera block and ne cameras will be consistent with Plaintiff's claims.

Co Johnson then came back to the cell door 108 on G-A, asserting that gt. Ander wight, Plaintiff to give him everything with blood on it heir was bleed all over Plaintiffs linen, boxers, sheets, Summer even socks, Plaintiff was force to give that to Co. Johnson, Fochtman & Pipcinik. After this, sgt. Ander came on the block with Co Fochtman, another inmate called Anders to his cell now and Fochtman walked to the Cell this inmate was very concern asking him "I have been in jail for 10 years I have never seen nothing like this" "why don't y'all move the poor" Kied in 108 out the cell with that moster, he just got sexual assaulted". Fochtman told this inmate "because he is a rat" then Anders asserted; do you know what happens to rats? they get fucked over, and have lots of bangs" like Brown & Brown spiled both actors to the door and Allan jumped up asserting "y'all don't get him out its going to be a round two to night"! These actors was standing to the next door over, as if they did not want to come to Allan's door, they was both lauging. Plaintiff was never moved. See Extention of Exhibit F1-5.

In the middle of the night sometim around 11:30pm or 12:00am while Plaintiff was at the door frighten to go to sleep

And Suffocate him. Plaintiff then stated that all the actions were asking him if he likes it. It was transparent that the "wolf" was hungry againe and againe Brown would be food. "Allan grabed Brown by his long hair with ample force; he briefly looked at Brown, predicating, "tonight your Night," then started to hit Brown in the back around his ribbs. Brown was knocked over the toilet bending him over with his face in the toilet. Brown then started to cry out "I can't breathe" "I can't breath," "Stop, let me be." Againe Brown had was put into the toilet both of Brown's hands were bent then force behind him as if he was getting cuffed. After Brown's hand was restra head in the toilet, "Allan" trusted into Brown. As the trusting continued Brown can feel it in his stomagh.

The next day now 2/8/18 Co Hariss and Co Garlik and Co Myers of Huntin after Plaintiff let these officials know what took place. Another inmate told Garlik "Yall got te let him out for showers. Once Plaintiff was let out for showers; againe, he told Garlik, Harr and Myers. Plaintiff then refused to lock in and he was written up by Myers of Huntin Plaintiff also brings failure To Protect claims againce Co. Fechtman. To establish liability for a failure-to-protect claim, a Plaintiff must show (i) that the Plaintiff was "incarcerated under conditions posing a substantial risk of serious harm; that the prison officials was deliberately indifferent to that risk; and that the deliberate indifference resulted in harm to the Plaintiff. Farmer, 511 U.S. at 834; Bistrian v. Levi, 696 F.3d 352, 567 (3d Cir 2012) Plaintiff wrote grievances pursuant to the subject matter See Exhibit I 1-5 Grievance # 723758 and Exhibit I 1-6 Grievance # 733749 and Exhibit I 1-13 Who will guard the guards themselves?

# Count II Excessive Force

The management by a few guards of large numbers of Prisoners, not usually the most gentle or tractable, of man and women, may require and justify the occasional use of a degree of intentional force. Not every Push or Shove, even if it ma later seem unnecessary in the Peace of a Judge's chambers, violates a Prisoner's Constitutional rights. In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very Purpose of causing harm. Haines v. Kerner, 404 U.S. 519 520-521 92 S Ct. 594 30 L Ed 2d 652 (197 on 9-15-17 Plaintiff wrote a grievance pursuant to Sgt Zimmerment using abusiv language. A day later a inmate came up to Plaintiff Predicating that he was in coll 101 by the grievance box and he seen Zimmerment fishing Brown's grievance out the grievance box with a stick with tape on the end. Inmate "John" then asked Zimmerment what he was doing? Zimmerment walked to cell 101 asserting "don't worry it's just Brown's grievance." Brown confronted Zimmerment he then told Brown to lock in. A block worker came to Brown and told him that Zimmerment had asked him for scenetape and a stick; the block worke John and Plaintiff went to an unknew LT. After dinner and told him Zimmerment actions on 9-18-17 Brown was called for clothing exchange; he was told to go in a back room, after Plaintiff enter the room Sgt. Tombly Co. Myers and Sgt. Zimmerment came Plaintiff and started to assault him. Sgt. Zimmerment Pulled Plaintiff's hair; Plaintiff then walked into a Punch from Tombly; he was then kicked in the back by Myers. Plaintiff the feal and all three actors started to hit and kick Plaintiff. Plaintiff was then curled and againe knee by 10 Myers; and hit by Zimmerment. After this Plaintiff was threating with hole time if he did not go to his cell and clean up he would go to the hole. Brown suffered confusions to the eye and bruise ribb from the assault. On 9-28-17 it was make up hair cut day. Plaintiff walked up to Sgt Tombly asking if he could get a "shape up". Tombly told Plaintiff to go to the yard and to stop talking to him. Plaintiff then asked Tombly why he could not get a hair shape up? Tombly asserted "because we don't like yall" "You like filing grievances and telling on CO's; Tombly then started to yell at Brown. At this time Plaintiff try walking to the yard; Tombly asserted "go to your cell and lock in" Plaintiff then asked what did he do wrong and why? Tombly asserted "go to your cell; it's your home," "go home". Plaintiff turned around and started to walk to his cell. Tombly started to follow Plaintiff. As Plaintiff walked up the

Stairs he was cornered by CO Myers. This CO started to yell at Plaintiff saying get in your fuckint cell. Plaintiff asserted that's what I am doing i he was grabed by Myers slamed on the gate and then slamed into the cell. Plaintiff then put his hand yet and Myers slamed his hand on the gate. Plaintiff suffered a deep cut on his hand and was left bleeding. Plaintiff is bringing Excessive Force claims against Sgt Towmly Sgt Zimmerment, and CO Myers for their action pursuant to the to the assault that took place in the back room on 9-18-17, and for Myers actions on 9-29-17.

The Court must determine whether the evidence goes beyond a mere ispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Hesselgesser V. Reilly 440 F2 d 901 (9 Cir 1971) The factors the court considers when evaluating whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur include: the need for force i the correlation between the need for force and the amount of force used; the extent of the injury; the threat to the safety of staff and inmates, as reasonably perceived by the responsible officer(s) on the basis of the facts Known to them; and any attempt to temper with the severity of the response. See Whitley V. Albers 475 U.S. 312 89 L Ed 2d 251 106 Sict 1078 (1986)

On 2-25-18 Plaintiff was taken to the Porperty room for a porperty exchange I was cornered by CO Placinik and LT. Eberling - this LT. Started to ask Brown about s sexual assault allegations with a smirk on his face, before Brown could respond Brown was hit with an elbow to the back. Plaintiff then fell on on to his knees and seemen the same actor swinging a mace can i Plaintiff was hit in the face by CO Placinik with the can. While Plaintiff was cuffed he was then Kicked by LT. Eberling in the stomach as if he was a soccer ball. Brown then started to Pit out blood all over the ground. LT Eberling asserted "you got blood on my nice boots" as if he was a narcissistic. This actor appetite for violence was apparent when he hit Plaintiff again across the face and then started to call him a "homosexual faggot." CO Placinik then asked Plaintiff, are you going to stop writing grievances on staff members? Brown asserted yes, LT. Eberling then walked away and CO Placinik asked Plaintiff to get up. As Plaintiff was getting up he was then kicked by CO Placinik in his ribbs, because Brown was cuffed he was now on his side in pain. Brown then asserted "your going down for this!" CO Placinik asserted, their are no cameras back here, this is were I come to put shit in your food!" The scrupulously vulgar assertion was followed up with this CO, grabbing Plaintiff's balls and predicating say I like big fat white dicks!! Plaintiff then yelled "you Buffoon"! This actor then released Plaintiff's balls and asserted "I hate homosexuals".

Plaintiff then wrote a grievance that was never responed to see Exhibit 1-3 When a prisoner, having been warned three times, refuses to comply with a legitimate jail security regulation, the incident has escalated into a "disturbance that indisputableposes significant risk to the safety of inmates and prison staff" Whitley, 475 U.S. at 320. This was not the case i this was not a disturbance, and force was not applied in a good faith effort to maintain or restore discipline, it was applied maliciously and sadistically for the very purpose of causing harm Qudin Johnson v. Glick, 481 F. 2d 028, 1033 (2d cir) Brown is bringing claims of Excessive force against both LT. Eberling and CO Placinik.

# Count III Retaliation:

First Amendment Retaliation against a prisoner for the exercise of his constitutional rights is unconstitutional see Mitchell v. Horn 318 F. 3d 523, 529-31 (3d cir 2003 Rauser v. Horn. 241 F. 3d 330, 333-34 (3d cir. 2001).

On 9-15-17 Plaintiff continuation one Sgt. Zimmermant. Pursuant to a grievance he wrote, after a inmate "John" made Plaintiff aware he witness the Sgt. Cish Plaintiff's grievance cut the grievance box. Zimmermant then told Plaintiff to lock in. Brown then went to an Unknown Lieutenount and made him aware of Zimmerment's actions. On 9-18-17 Plaintiff was called for clothing exchange and he was told to go in a back room were the inmate workers get the clothing exchange. While in the room Sgt. Zimmerment was one of the acters that cornered Plaintiff. Sgt Zimmerment then hit Plaintiff in the face and pulled his hair after Plaintiff feal. Zimmerment was one of the acters kicking Plaintif and calling him a rat.

On 10-2-17 Plaintiff made Sgt. Zimmermant aware of a brutal rape while at the law Library in which Plaintiff was the victim. Sgt. Zimmerment did nothing. This acter also predicated that him and another "Co Mvers" had made a bet that Plaintiff would get "his ass took" before leaving the Hill! In which he stated "I guess we was right". Plaintiff then asked Zimmerment to remove him from the cell. He also told Zimmerment that he fear for his life. Zimmerment asserted "Stop rating and go get fucked again!" Plaintiff was again sexually assaulted by his cellmate. Zimmermant action clearly showed retaliation in which Plaintiff brings the First Amendment claims against.

Plaintiff also bring these claims against defendants Tombly and Co Mvers On 9-18-17 Plaintiff entered the back room wear inmate workers go get clothing for th once a week clothing exchange. Sgt Tombly and Co Mvers was two of the three acters that cornered Plaintiff. Plaintiff then walked into a punch from sgt. Tombly, he was then kicked in the back by Co Mvers. After he feal to the ggound both defendants started to kick and hitt him causing him contusions and pain The reason beywas because Plaintiff wrote a grievance on Sgt. Zimmerment.

Plaintiff then had another encountner with both acters on 9-28-17. It was make up hair cut day, and Plaintiff asked Sgt. Tombly if he could get his hair shaped around. Tombly assaulted to Plaintiff "go to the Fucking yard and stop talking to me rat!" Plaintiff then asked Sgt. Tombly why he was med at him and why he couldn't get a make up hair cut if he was at school durming the hair cuts. Sgt Tombly asserted, "because we do not like you" "You like filing grievances and telling on staff members, your going to have a very hard time up here doing that! this is not the county Jail! this is the big boys house". Tombly then started to yell at Brown at this time Plaintif attempted to walk to the yard. "Tombly asserted, "go to your cell and lock the fuck in"! Plaintiff then asked Sgt. Tombly if he did something wrong? Plaintiff then turned around and started to walk towards his cell as Tombly started to follow him. As Plaintiff started to walk up the stairs he was cornered by Co Mvers. "This Co also started to yell "get in your fucking cell" "It's your fucking home!" This Co then grabed Brown and slamed him into the cel then slamed the gate in which Plaintiff hand was cought on the gate. Plaintiff suffered a cut on his hand from the attack. Brown brings claims of retaliation against both defendants. See Exhibit M write up and statement

To state a claim for retaliation, a Plaintiff must allege that 1) he wa engaged in constitutionally protected conduct, 1) "he suffered some 'adverse action' at the hands of the prison officials" and 2) "his constitutionally protected conduct was a substantial or motivating factor in the decision to take thei action. See Allah v. Serverling, 229 F.3d 220, 221-26 (36 cir 2000). On 09-28-17 Plaintiff meat with an Lieutenant Gildea after the strip cage. Plaintiff made this Lieutenant aware that he was a homosexual and it was also transparent bw Plaintiff has feminine characteristics in which he sounds like a girl and switch his hips when he walks. Plaintiff made Lieutenant Gildea aware of his concerns of being housed with other inmates. He made it clear that he might be a target. Nevertheless his request was denied to be housed alone, as "Gildea" asserted "we don't accommodate fags" "Law Suit Man"!

Plaintiff then told Gildea he was bleeding from the hand from his hand being slamed on the gate. Gildea told Plaintiff, "Camp Hill is not the place to act up" "you need to read on our history! we don't give a fuck about gay rights"! "Or your damn ass lawsuits"!

*58

As this actor was talking Plaintiff, who he considered Brown asserted "don't call me gay" "my name is, Gildea cut Plaintiff off "shut the fuck up, Your name is what ever I say it is," "Gildea then asserted Brown would go to a different cell since he wanted to be a smart ass. Plaintiff was Muckle at this point it that's when Gildea asserted "I am telling you up with "Strong"! "He is from Vermont" "He was a four times wrestling champ in high school. He is in jail for raping a bitch and he has a history of assaults and sexual assaults on inmates." "As a matter of fact he has 121 assaults on other inmates".

Plaintiff was clearly put into the cell with this Goon out of retaliation. On 1-1-17 when Brown came back to the cell, "Strong" made Brown aware that LT. Gildea came to the cell and told him that Brown was gay and a rat. Brown then suffered a brutal sexual assault, at the hand of "Strong" who was motivated by what LT. Gildea had just told him about Brown. LT. Gildea then came to the cell door with another CO during the assault. He then asserted "Yall don't get bleed on my sheets". At no point did Gildea attempted to stop the sexual assault on Plaintiff. Brown then had a chance to confront Gildea pursuant to the sexual assault. He told Brown to stop ratting, and that he was glad to see it go down! Nothing was done to remove Brown from the cell.

On 10-2-17 Plaintiff made CO. SPosito aware that he seen him at the door with Lieutenant Gildea when he was getting sexually assaulted. SPosito then asserted "that's why we put you in there", Plaintiff then begged SPosito to be remove from the cell if he asserted "Strong is not done with you" "If he wants you moved he will let us know" Brown was then assaulted and sexually assaulted again days later because Co SPosito failed to remove him from the cell. The next chance Brown got to talk to Co. SPosito, he told Brown he did not like him because he was a "homosexual, and a big fat rat". SPosito actions were motivated by one LT. Gildea and also because he thought Brown was a rat and a homosexual. Co SPosito actions showed retaliation.

Brown brings claims of retaliation against Co. Harig and D.L. Hill Jr. On 10-10-17 a visual cavity search was conducted by CO. Harig. Plaintiff told Co Harig he was a homosexual, he asserted "I can tell but you would still have to strip before you leave the cell it's policy!" he asked Brown to take off his clothing. He then told Brown to turn and bent over to show his cellmate his anal cavity, his reason being, "I know how you fags are" "Strong" "look and make sure nothing's hiding in their for me!" Plaintiff was force to bent over so his cellmate could look in his anal cavity. Co Harig asserted he did this because Plaintiff was a fagit This was clearly a motivating factor in which Brown suffered a sexual assault at the hand of his cellmate the same day. Co. D.L. Hill Jr. also conducted search in front of Brown's cellmate; at no time did this co ask Brown cellmate to turn around. Both Co Harig and D.L. Hill Jr. then conspired to deprive Brown for showers and recreation while in the RHU from 9-28-17 through 10-21-17. They also deprived Brown of his trays because Brown was label a "rat", on 10-10-17 Brown was deprived of his tray by co Harig. On 10-11-17 he was deprived his tray and shower by D.L. Hill Jr. on 10-12-17 Brown was deprived his tray by Co Harig in which he stated fagits do not eat while in the hole at Camp Hill." Brown was deprived his trays on 10-14-17 and 10-15-17 by D.L. Hill Jr. At no time did the two actors let Brown go out to food.

Plaintiff also brings claims of retaliation against SGT. Leleux, LT. Frances and Superintendant Harry from Camp Hill. Plaintiff was subject to an assault by his cellmate Willson after Sgt. Leleux told Willson that Plaintiff was a rat and gay athought it was apparrent to Willson by Plaintiff's feminine characteristics. Plaintiff first meeting with Leleux was pursuant to his ID card; in which he was charged on his account for a knew card even though he already had one. Plaintiff and Sgt. Leleux started to argue and another unknow co stepped in and started to yell at Plaintiff. That when Leleux called Plaintiff a rat. So on 11-1-17 when Plaintiff came back RHU from dinner "Willson asserted that Leleux had told him he was raped before to. Plaintiff went to the bubble and he was a rat; it was something he seen before. Plaintiff then went to the bubble asserting to Leleux that his cellmate wanted him out the cell and he was in danger; also that his cellmate had read some paper work in which was sexual assault under Plaintiffs bed while Plaintiff was at dinner pursuant to sexual assault allegations. Leleux then walked to Plaintiffs cell and told Willson "the only way "Brown" is leaving this cell is in a body bag!" "Fuck him up if you

"...have to." Plaintiff was againe assaulted by Willson" and this time Lefeur fail to even send Plaintiff to medical. See Exhibit N1-1. Statements from inmates that was on the unit. On 11-1-17 Superintendent Harry was called to P-block or she was doin' her rounds, walkin' around the Jail in which is a Policy. Plaintiff told Miss Harry what "Willson' had told him Pursuant to getin't Plaintiff out his cell.

Also that he was aware that Plaintiff was a rape victim, "Willson' then start to assert to Miss Harry and a LT. Siimi "Yall Put him somewear eals, their is an empty cell, Put him in their!" Harry asserted, he's not a Z-code. "I don't care what you do to him!", Willson started to Yell " I am 9oin9 to send him to medical with hit that open! Plaintiff then asked Harry why don't they Just Put him in the single cell doors down? She asserted "because you told Huntingdon that our officials had something to do with you getin9 raped! After she walked off Lefeur Put Plaintiff back into the cell in which he was subject to an assault. Harry actions clearly showed retaliation.

On 11-1-17 Plaintiff was send to medical in which he meat with doctors and a LT. Frances. Frances had came down with Superintendant Harry as Plaintiff was talking to medical Personnal. He asserted to LT. Frances who he was, Frances Predicated "Everybody know who you are miss Brown". Plaintiff then made Frances aware that he was Just assaulted in which was also apparent because he was still bleeding from his nose and blood was all over Plaintiff as well as dropping down to the floor. Plaintiff was asked to sit in the hallway and could here, Frances in the room next door. "The rat is bleedin9 all over the floor if we treat him, he's still goin9 to tell, let's send him back to the unit like we do every other rat!" Frances then came out and told Plaintiff to 9o back to P-block, that their was nothing they could do for him because he told". Brown was forced back to P-Block and suffered another assault at the hand of his cellmate.

While at SCI Camp Hill for classification reasons it's a Policy that new D.O.C. inmates shower three times a week, in which every shower is only two minutes long. Because of this inmates are told to put their sope on in the cell and walk to the shower Nicket when directed. On 8/18/17 Plaintiff talked to sgt. Zimmerment infursuants to females conductin9 the showers in which females officials watch the nicket male inmates beginin9 they something conduct the showers. sgt. Zimmerment asserted to Plaintiff, "this is Jail!" Plaintiff then asserted to sgt. Smith once, the females that conduct their showers, He told Smith he was concern that though it was Jail female's should not be Permaled to view nicket male inmates. Sgt. Smith asked Plaintiff in for two days, She also told Plaintiff "sue me I got a 9ood lawer!"

After the two day lock in, on 9-1-17 Brown was send to a shower that officials was aware the hinges was broken in which the door stayed open, as yes show the shower was conducted by Sgt. Smith, Co. Claine, and co. Jones in which are all females. Brown againe asserted his concern to Sgt. Smith that she could not conduct the showers if inmates are forced to walk nicket to the shower, Plaintiff also asserted his concerns that she had, send him to the shower with the broken hinges in which the door stayed open out of retaliation. Plaintiff also Predicated that this Practice havin9 inmates walk to the showers nicket was contrary to Policy. She asserted we make inmate put sope of their body while in the cell because the showers are only two minutes at the time. Sgt. Smith againe locked Plaintiff M his cell for two days. On 9-7-17 Sgt. Smith againe forced Plaintiff to the shower with the broken hinges in which the door stays open. Plaintiff was againe view and watched by female co's Jones and Sgt. Smith.

Plaintiff then wrote a grievance on 9-8-17 Pursuant of the showers Sgt. Smith came to Plaintiff's cell on 9-9-17 sent in his cell and denied him from 9oin9 to dinner that day and the next day because he wrote a grievance. On 9-10-17 Sgt. Smith againe send Plaintiff to the shower with the broken hinges, M Full view of Co Clive and Sgt. Smith, as in showered. See Exhibit O1-2. Plaintiff could not responed to the initial review response because he was in the RHU, once Plaintiff got out he responed and did not get a response because he was transsfered to SCI Huntingdon. Plaintiff brin9 retaliation claims against Sgt. Smith for her actions. Plaintiff suffered adverse action from Sgt. Smith for exercising his constitutional rights. See Bistrian V. Levi 696 F.3d 352 375; 2012 U.S. App LEXIS 19473 51 82 ALR fed 689. Defendant actions caused Plaintiff intentional infliction of Emotional distress.

On 10-25-17 Plantiff meet with Lt. Maxwell this Plaintiff subsequent he so meat with Mandy Sipple at the time she was a P.R.E.A. Personal. Plaintiff predicated that he had been a rape victim while at camp Hill in the R.T.U. Plaintiff serted that he was a homosexual and that he would be concern pursuant to his afty with in SCI. Huntingdon. Maxwell asserted he use to work at camp Hill and that he had alot of friends still working their. This was 11-13-17, Maxwell also asserted his friends was under alot of heat because of Plaintiff's sexual assault claim.

Plaintiff was then called a "Whistle Blower", that don't deserve to live by. Maxwell Sipple then predicted "I agreed with him". Sipple then told Plaintiff that licy close does not require he be accommodated with a single cell because or just because he a homosexual or a rape victim. Both actors then started to ask Plaintiff about lawsuits he had pending that he never spoke with Maxwell and Sipple about. then told Brown "People with lawsuits have a had time in this Jail. Plaintiff then asked Sipple and Maxwell for a state cell they asserted that's not how it works, that every 30 days a vote sheet goes around to that Immate counselor, P.R.C., P.R.T, and Kauffman Pursuer to 'Z code'. All these Policy makers would vote an inmate to Z code/single cell or vote against that inmate denying him Z-code.

They then asserted they will not be voting for Plaintiff for Z-code because he is a "Whistle Blower" that likes to file law suits. Plaintiff told both fficials that he had Just came back from camp Hill, to which he had to talk o State Police, and that he suffered an assault in which his cellmate Brook his rose because he was aware Plaintiff was a rape victim and a homosexual nd his actions made it clear that he did not want to Cell up with a homosexual. Brown asserted because of his feminine characteristics, "wearing eye liner, low ounds like a girl when talking, switch his hips when walking, and the fact that he was only 120 pounds and looked as if he was 16 years a age would make him a target.

Sipple asserted to Plaintiff "You can't have your cake and eat it too!" it's seems to me your trying to attrack men, so don't scream rape!" Maxwell told Brown "Whistle Blower" "You will be set up a cell, if you refuse then the DTU will be your home bout." Both officials though aware that Brown was a victim and had a history of getting assaulted and sexually assaulted they denied him Z-code single cell, because he was a "Whistle Blower" that le to suit People. There is a clear link between both defendants denying the Plaintiff's Z-code single cell and the rape assault he suffered at SCI Huntingdon.

Officials would had never put Brown in a cell with another inmate, than r Brown would had never suffered another rape assault at the hand of inmate "Allen". Defendants actions was motivated by retaliation. Plaintiff was then forced to sign a double bunking sheet in front of both Maxwell and Sipple in which he refused. Security officials and Maxwell threaten Plaintiff with force. So Plaintiff wrote the statement asserting he was being force to write and that he was ok going to population.

Plaintiff again meat with Lt. Maxwell and Sipple on and before 1-14-18 e told both defendants he was having mental issues and that his cellmate keep asking him if he was gay, because a Co Kovach had slit him a mail pursuants to Plaintiff's sexual assault claims also that the fear for his safty. Their response was "Stop wearing eye liner! And stop "Whistle Blowing"! Plaintiff was subject to another assault by his cellmate inmate "Jackson" both Jackson and his friend "Allen" forced Brown to call a family member for $300.00 of another inmate account. In which Jackson put a nife to Plaintiff's neck asserting "if you tell, i will kill Kill you". Plaintiff meat with both defendants againe and told them what happened. He againe asked to be put into a single cell in which he was denied.

Plaintiff again meet with Maxwell and Sipple, while in the R.T.U. He told both defendants that officials asserted to him that he would be celling up with inmate "Allen". Maxwell asserted who. "The one that tryed to rape another inmate, and is currently in the R.T.U. for stabbing an inmate over cookies". Brown said yes he inmate "Jackson" friend. That's when Maxwell asserted "drop your P.R.E.A. Claims against my friends and we will get you a single cell". Plaintiff was later sexually assaulted by inmate "Allen".

Retaliation against a prisoner for the exercise of his Constitional rights is unconstitutional see Aliah V seivering 229 F. 3d 220 224-26 (3d cir 2000) To state a claim for retaliation, a Plaintiff must allege that (1) he was engaged in Constitutionally Protected conduct (2) "he suffered some adverse action" at the hands of the prison officials and (3) his Constitutionally protected conduct was a substantial or substantial or motivating factor in the decision to take that action Rauser 241 F3d at 333.

Both LT. House and LT. Eberling acted in retaliation against Calvin C. Brown. Both House and Eberling are high ranking security officials, who forced Plaintiff to write a statement in which Plaintiff made it clear that he did not know if he had enemies in Population; that he would go to Population with the acknowledgment that he could be accommodated with single cell z-code. Both actors while infront of Maxwell and Sipple asserted "You are going to do what we want you to do or force will be used". "We will leave you in the R.H.U. deprive you of your mail and phone calls, we know you got alot of law suits". They also asserted they would put in with a cellmate, that's going to have his way with Plaintiff, and his C.O's fuck with Plaintiff, if he did not sign the double bunking.

Plaintiff sign the sheet and was put in Population. Plaintiff then wrote a grievance in pursuants to what happened. Plaintiff was taken out of the single cell and was told he was getting a cellmate because he wrote the grievance on LT. House and LT. Eberling. That same day Plaintiff was to meet with on member of (P.R.T) Miss Cousin in pursuants to his psychological symptoms he was having, in which he was denied. Plaintiff then refused to take a cellmate and was send to the R.H.U. See Exhibit P1-B. Plaintiff told officials he was having psychological symptoms from being raped it was put down as a refusal. This was on 12-1-17.

Plaintiff was then put in a cold cell naked with temperature so extreme to suffered frostbites and had symptoms of hypothermia. The actors that put him in the cell were both House and Eberling. This custom is so common it has a nickname "bluesing" or "being bluesed". Plaintiff made his concerns made to a C.O. Harris while he was at his cell door. This C.O. stated "did you write a grievance on a LT. House and LT. Eberling?" Plaintiff asserted "yes" the C.O. asserted "thats why your freezing your black ass off with no clothing". Harris then predicated that both House and Eberling told him and LT. Snyder that he should not be let out for yard or showers, and should be deprived of his legal mail in which the Unit Manager Kendrick had already wrote down on paper.

Plaintiff was taken out the cold cell after days of freezing by LT. Eberling Kauffman, and LT. House and put into a cell smear with feces in which another inmate had just been O.C. Plaintiff asserted to Kauffman, Eberling, and House that he could not breath from the mist of O.C. and that the feces was all over the floor and wall, toilet, table, sink. Kauffman and House then asserted "Whistle Blowing rats will not sit their way at SCI Huntingdon". Plaintiff then repeatedly begged LT. Dunkel, LT. Snyder, and Kendrick to rem him from the cell, but nothing was done. Plaintiff clearly suffered adverse action at the hands of House and Eberling for exercising his constitutional rights. See Fuentes v. Wagner 206 F. 3d 335 (3d Cir 2000) See Exhibit Q1-6 and Exhibit R1-5 and Exhibit G1-7.

Plaintiff again meet with House and Eberling on 12-11-17. Plaintiff made both defendances aware that he was not getting trays, his legal mail, and the cell in which they had put him in was still fill with feces and that he was being harris by officials and his mental status is deteriorating, and the lack of medical treatment was causing his injuries to worsen. They told Plaintiff "You are not from this cortico the Constitution dose not apply to you" "Go back to your stinky ass ce

On 1-25-18 Plaintiff was taken to the property room for property exchange. He was cornered by LT. Eberling with the help of another C.O. LT. Eberling started to ask Plaintiff about his sexual assault his sexual assault with a smirk on his face before Brown could respond he was hit with an elbow to the back. Plaintiff then fell to his knees. Plaintiff was then hit in the face with a mace can while in He was then kicked by LT. Eberling in the stomach as if he was a "soccer ball" Plaintiff then started to spit out blood all over the ground. LT. Eberling asserted "You got blood on my nice boots" as if he was a narcissistic. This actor, appetite for violence was apparo when he hit Plaintiff again across the face and then started to call him a "homosexual nigger".

C.O. Harris retaliated against Brown on 12-1-17 through 12-23-17 whil Plaintiff was in the R.H.U. Plaintiff was put in a cold cell naked with temperature so extreme he suffered "Frostbites and had symptoms of hypothermia." Plaintiff made his concerns aware through C.O. Harris while he was at Plaintiff cell door. This C.O. stated "did you write a grievance on an LT. House and LT. Eberling?" Plaintiff asserted that he had wrote a grievance on both actors pursuant to force him to sign some paperwork. This C.O. then predicated "that's why we are freezing your black ass." This actor also mention that House and Eberling told hi and LT. Snyder that he should not be let out for yard or showers and

P. 58

and should also be deprived of his legal mail in which unit manager Kendrick had already wrote down. Plaintiff was deprived of showers, yard, and his legal mail by this C.O. while in the R.H.U. On 12-13-17 Plaintiff was taken to the property room after the hear telling officials he was with out any property for two weeks. He was asked to sign for his property by C.O. Hariss. Brown refused because it did not look like all his property and he was told he could not look through his property. It was clear that Plaintiff was missing property of which was legal papers. That's when C.O. Hariss asserted "Your lucky your geting anything, we know you raped after you was raped at camp Hill, and then you come here filing grievances on our staff members." "Security already told us not to give you shit, by the way all your legal mail are going to other inmate you fucking nit." Plaintiff was then taken back to his cell with out any property or legal work, Plaintiff again made C.O. Hariss aware he had a motion due in the courts pursuant to his civial case he had pending, but nothing was done.

C.O. Hariss again called Plaintiff a rat. Plaintiff then asserted to Hariss that he was in a cell with feces everwher, that he would need a cleaning buckit or that I should be removed from the cell, he asserted "they want you in that cell" See Exhibit S 1-5. C.O. Hariss depriving Plaintiff of his property hurt his case in which he could not respond to an appeal motion. Although Plaintiff did brink failure to protect claims against C.O. Hariss, on 2-5-18 he made C.O. Hariss aware that he was sexually assaulted while in the cell by his cellmate "Allen" and that officials did nothing to remove him from the cell and that he fear for his safty. Did Hariss all of this when Hariss let him out for showers. Hariss responds was "get your gay ass in the shower and stop talking to me." Hariss then asked Plaintiff if he remember the grievance he wrote on hims. After the shower Plaintiff again asserted to Hariss that he did not want to go back in the cell, he again responds "get your fagit ass in that cell," "Or force will be used."

On 12-29-17 Plaintiff made his concerns be known to a block C.O. name Kovach that he fear for his safty. Plaintiff asserted that his cellmate Jackson kept asking if he was gay and was making fun of the fact he was wearing eye linder. On 1-7-18, Plaintiff got in a verbal argument with Kovach in which this C.O. agent called him a fagit. Plaintiff then called the P.R.E.A. hot line and wrote a grievance pursuants to what took place on 1-7-18. On 1-13-18 C.O. Kovach had sliped inmate Jackson personal mail of Brown pursuants to his sexual assault claims at camp Hill. He also told Jackson that Brown was cooperating with the law pursuant to him being raped at camp Hill. Inmate Jackson then told a friend that Plaintiff was a rat and a rape victim. That friend name was "Allen."

Jackson then gived inmate Allen a grievance responds from camp Hill that was given to him by C.O. Kovach. Inmate Allen then made copys and passed it to other inmates. Plaintiff was then forced to call a family member from another inmate's account asking for money. That family friend send over $300.00 to both Jackson "and Allen. Inmate Jackson then put a shank to the neck of Plaintiff, asserting "if you tell i'll kill your fagit ass." On 1-15-18 Plaintiff was assaulted by inmate "Jackson." Brown made C.O. Kovach aware and a Sgt. MT. Aurano. C.O. Kovach told Plaintiff "that's what you get fucking rat now get away from my desk before I wrote you up." Sgt. Aurano told Kovach "we have to send him to medical, he's bleeding bad." Kovach predicated "if we do that, they will make a big deal you now he's got all them lawsuits." Brown was deprived medical attention out of retaliation. Kovach actions clearly showed retaliation. He called Brown a fagit, after Brown called the P.R.E.A. hot line and wrote a grievance, this C.O. they passed out Browns legal papers to inmate Jackson. Kovach actions had a link to Plaintiff being assaulted.

On 12-1-17 Unit Manager Kendrick wrote down on paper directing Hill officials like Hariss, Weyant, Plocinik, Garlik, to deprive Plaintiff of showers, recreation, legal papers and mail. Plaintiff made Kendrick aware that he was in the middle of fighting multiple civil cases, and had a criminal case pending in the courts of appeals. Plaintiff made Kendrick aware that by depriving him his legal papers was hurting his cases. Kendrick asserted "you should had never wrote 2nd grievance on my friends, we don't accommadate rats." Plaintiff was deprived of his legal papers from 12-1-17 through 12-23-17. When Plaintiff was geting out the RHU. Kendrick asserted "by the way alot of your legal papers went in the trash, next time you will think hard betour writing a grievance.

Plaintiff .... was unable to respond to motions pursuant to two case during that time. Plaintiff next meet wit Unit Manager Kendrick during his next trip to the R.H.U. or right before. while in the camera cell on 1-24-18 Plaintiff made Kendrick aware that he was having some mental issues that was not being addressed by officials. He asserted to Brown "it's hard being Gay these days." Brown also asserted to Kendrick all that took place at Camp Hill and the fact that he was a homosexual that he had also been a target at SCI Huntingdon. That his last cellmate had just assaulted him. Mr. Kendrick then asserted "Kill yourself maybe you will go to homosexual #FLU!!"

Plaintiff againe meet with Unit Manager Kendrick and other officials weeks later. He told Kendrick that he was subject to harrassment on the way to Maxwell's office. He asserted to Kendrick that he is aware he dose or a prove tha moves while in the R.H.U. in which he asked Kendrick if he a proved Brown to move in with one "Inmate Allen." Kendrick asserted Yes. Brown then made Kendrick aware that it was "Allen" and his cellmate Jackson that was extorting him while on A-A and that him and "Allen" was enemies and that he had already wrote in a grievance pursuant to what happened see Exhibit D1-3. Brown was very concern because Allen had a violent inmate, a lifer with nothing to loose. He was in the hole for stabbing an inmate over cookies. Mr. Kendrick then asserted I do not care for homosexuals you will go in the cell you are a sign to or OC. will be used, the good stuff".

Brown next meeting with Mr. Kendrick was while Plaintiff was now in the cell with a "cold hearted Goon" "Allen". On 2-5-18 while Allen was talking to one Eric Parsons a Unit Phychologist through the door after Brown had asserted he was suicidal. Unit Manager Kendrick walked to the door. Allen demenod to Kendrick that he would "kill Brown" if he did not get Brown out the cell. He made it clear that he did not want to be cellys with Brown. Kendrick asserted "it's over Crowded." Inmate Allen was triggered by what he heard, and turn around and againe started to assault Brown with ample force. At the time both Kendrick and Mr. Parsons was still at the door. Kendrick did nothing to remove Brown from the cell. That same nig Brown suffered more injuries when "Allen" attempted to take him from his bed and rape him.

Plaintiff next meeting with Unit Manager Kendrick was on 2-7-2018 asserting in details what had took place during the night. In which inmate Allen was motovating Plaintiff to tell Kendrick because now he was aware through officials actions. That they was confirmt to keep Brown in the cell. Kendrick told Brown there was nothing he could do for him because he was a homosexual. He then asserted all I can tell you is the next time they let you out the cell for showers. Kendrick's actions was contrary to Prison Rape Elimination Act (AC-ADM 008) because he told Brown he did not like "rat's or homo sexuals" Brown suffered a rape assault that same day and that night at the hand of his cell.

Brown next meeting with Unit Manager Kendrick was on 2-9-18. Brown asserted he had sufered two rape assault at the hands of "Allen" and that he was denied medical attention and sick call requestes. He also asserted that he refused to lock in on 2-8-18 and officials wrote him up (Even though aware he had suffered a brutal rape assault). Kendrick assert you Fucking rat You got the black matter then the Ozone layer!" he then walked off. Plaintiff againe meet with Mr. Kendrick on 2-23-18, Kendrick asked Brown about a grievance he wrote see Exhibit F1-12, he seemed very angry. He then started to threaten Brown asserting "If you do not stop While Blowing and writing grievances down here, all your legal porperty will go missing!" "I will make sure every staff member you are telling on worke down here, so they can put shit in your food and fuck with your mail and harass you" Brown got in an argument with him and he asserted to Brown 'This is my Jail, and my unit just remember that!" he then walked off. During Brown's next meeting with Kendrick he made him aware that he had a porperty exchauge he was missing almost two boxes of legal work and Exhibits. He also asserted that he was sending put Certified mail and was not getting his receipt back, and his legal mail stoped coming in. see Exhibit I1 and Exhibit U1-6. Plaintiff also asserted that officials was puting the grievances in the mail box then coming back days later and harassing him in which his grievances was not getting addressed. See Exhibit V1-6 also Exhibit W1-6, Unit Manager Kendrick asserted "I told you this is my unit you fucking rat, why don't you Kill yourself?"

Brown again spoke with Hendrick on 4-20-18 after staff had received a write up on 3-21-18 and 4-18-18 he dening or refusing to go to Population. Brown told Hendrick that the write ups were out of retaliation because officials was well aware of the claims against inmate "Allen" staff members and inmate "Jackson" as well as he was getting death threats from a inmate name "Murder", "Rock", "Killer" all members of Allen's gang in which these inmates has a history of Violents. Brown was also getting death threats from inmates he did not even know. Hendrick asserted to Brown "We are going to keep writing you up untill you go to Population, and we are going to put your rat ass on the same block with Allen". See Exhibit W 1-05

Brown also brings claims of retaliation against Kevin Kauffman. Plaintiff meat with Kauffman and other officials in which he told Kauffman he was subject to harassment from other inmates after a C.O. Kovach sliped inmate Jackson his cellmate at the time a mail in which was personal at the time allegeing sexual assault allerations while Plaintiff was at camp Hill. Kauffman told Brown, "you should had never left the house this is Jail". "Inmates get assaulted and sexualy assaulted all the time, Put some weight on and you will be fine". Kauffman also Predicated "Prisoners do not have rights". Kauffman asserted to Brown, "You will go in the cell with Allen Existou because you are a whistle blower". Although Brown told Kauffman that him and this inmate, were enemies which he was extorted by this inmate and his cellmate Jackson, during his stay on block A. Kauffman asserted he did not care that homosexuals deserve to get extorted. "If any of my kids wear homosexuals, they would be discun and get unacknowledged". Kauffman again retaliated against Brown when he removed Brown from the cell in which he was naket in a cold cell. Kauffman then Put Brown into a cell smeared with feces because Brown had wrote a grievance Pursuant to being forced to wright a statement. Another inmate had just been O.C. in the cell. Plaintiff asserted to Kauffman that he could not breathe because of his Asthma, Kauffman told Brown to suit him. The mist of O.C. and the feces of another inmate was all over the floors and walls, toilet, sink. Kauffman then asserted "Whistle Blowing rats' will not get their way at SCI Huntingdon. Plaintiff was force to stay in the cell for over 20 days in which he had to eat and sleep in feces. Plaintiff suffered adverse action at the hands of Kauffman for exercising his constitutional rights.

On 3-7-18 Brown again talked to Kauffman as he was doing his rounds. Brown asserted to Kauffman that one inmate Allen was attempting to rape him during the night that just passed. Inmate Allen then hurry to the door asserting "I am going to take his ass if Yall, do not remove this rat ass rat from my cell, Yall know I am a lifer with nothing to loose, I am never going home". Kauffman then Predicated to Brown "take it up with the Unit Manager, and if you was'nt a homosexual he would not be attempting to rape you". Brown was later Sexually assaulted that night.

Both LT. Dunkel and LT. Snyder retaliated against Plaintiff during his stay in the R.H.U. While Brown was in the R.H.U. LT. Snyder came to Brown's cell door and asked if he was cold, in which he was in a cell naket. Brown asserted "Yes I am very cold, can I get some clothing". He asserted the only way your going to thing around here is if you stop writing grievances". He then walked off leaving Plaintiff with nothing. LT. Dunkel also walked to Plaintiffs cell and asked if he was freezing, then started to poke fun at Plaintiff saying "O do you want to call your mommy". This custom is so common it has a nick name "bluesing".

While in the camera cell on 1-26-18 Brown had an asthma attack in which he could not breathe, Brown crawl to the door because their was no stress button. Brown then, started to hit the door, LT. Dunkel came to the door and order Brown to get up, Brown was unable to get up, Another co. came and asserted "he's having an Asthma attack". LT. Dunkel stated "Fuck him he's a rat, we will call medical after he dies". On 4/7/18 Brown told LT. Snyder and LT. Dunkel that he was getting deprived of the Law Library, showers, and recreation, that he had sign up for the Law Library and officials were not taking him down. Also every time he sign up for Showers he would get denied. Dunkel asserted we already had a talk, "Stop writing grievances, You just wrote a grievance on Smith and relevant Pursuant to the Showers on 3-8-18, then you wrote a grievance on Plocink, "Your not going Showers your not going to the Yard, and your, not getting any law library time because You keep telling on our staff".

Brown again meet with both Dunkel and Li. Snyder said told them that he was assaulted by Co Plocinik while in the Property room. Both LT.'s then told co. Plocinik and told him stop giving him his dinner trys. Brown was then deproval for his dinner trays for over two weeks.

Brown again made both Dunkel and Snyder aware that co. such as Denvan and Plocinik was Puting the grievances and sick calls into the mail box in which Brown's grievances and sick calls were not geting address and Pursto his sexual assault claims. Both actors called Brown a rat and told him to Somile a razer. See Exhibit V 1-6.

Plaintiff is bringing Claims of Retaliated against C.O. Plocinik and c.o. Fachtman on 2-2-18 Co. Plocinik came to Brown's cell to alert him that he will be moving with inmate Allen on G-A the very next day. Plaintiff made C.O. Plocinik aware that him and Allen was enemies, that while on A-A he was exported by both Allen and his cellmate Jackson for over 8 hours. Plaintiff also asserted he had wrote a grievance asking for separation on both inmales see Exhibit V 1-6, but that his grievance was never respond to. He also asserted that both Lt. Maxwell and Siffle was aware. and that he was a rape victim while at CampHill. Plocinik told Pimtiff that he was aware that Allen was on his Enemie list but it was over crowded. He also asserted he dose not give a shit. On 2-3-18 Co. Plocinik came to Plaintiff Cell and asserted force will be use if he did not cuff up, that he would be going into the cell with inmate Allen and that Allen was going to fuck Plaintiff UP. "We just told ho your moving in with him." After cuffing up and tooken to G-A block another inmate Delarosa Shae was a witness as Plaintiff was crying out that he did not want to go into the cell with inmate Allen, that he fear for his safety.

TWO LT.'S came out the bubble with other officials, in which Plain. 2xpressed his concerns but nothing was done. Plaintiff was called "Chip and dip and Mrs. Brown!" Plaintiff was forced into the cell by co Plocinik, once the cuffs came off, Plocinik witness inmate Allen hiting Brown in which he asserted "have fun with him." On 2-4-18 Plaintiff again meet with this defendant as he was Picking up mail. This actor started motovating inmate Allen to attack Plaintiff, in which he started to assert "Allen How is Brown still alive in here, he's a fuckin rat." On 2-7-18 after inmate Allen had attacked Brown and sexually assaulted him Co. Plocinik came to the door asserted "I told you Allen was going to fuck you in here." he then asserted "It looks like a murder seen in here."

On 2-10-18 Plaintiff was subject to verbal sexual harassment by this C.O. during security check. Plaintiff was crying out for medical attention and was very concern that his grievances and sick calls were geting put into the wrong box in which he was not geting responds. This Co. called Brown a cum sucking homosexual and told him to shut the fuck up. On 2-15-18 again Brown meet with co. Plocinik in which Brown asked him why he had Put his grievance into the wrong box? He asserted because yourcat a got the black hot! "For Fifteen Business days your grievances and sick calls will go missing if we Put it in the mail box because the mail lady works with us. He then Predicated "After Fifteen Business days your grievances will be tim bared in which we will then start Puting all grievances back into the grievance box!" He also asserted "medical dose not want to see you, they will only see you through the door, and we know your not going to tell them your bleeding from your ass throu the door, because other inmates will here you and you will be subject to more harasive See Exhibit V 1-6. On 2-25-18 Plaintiff was tooken to the Porperly room for Porperty exchange.. He was cornered by C.O. Plocinik and LT. Eberling, this LT. sarted to ask Plaintiff about his sexual assault aligations against the jail with a smirk on his face. Plaintiff was elbow in the back by Co. Plocinik before he could respond. Plaintiff then feal to his knees and seen the Same actor swinging a Mace can, hiting Plaintiff in the face. Co. Plocinik asked Plaintiff to get up after LT. Eberling was also done, assaulting Plaintiff and walked away. Plaintiff was then kicked by this actor in his ribbs while cuffed after he had asked him, are "you going to stop writing grievances on my staff membe Plaintiff then asserted "your going down for this!" Co. Plocinik asserted "their ar no Camera's back here!" "This is were I bring your truy to Put shit in it!" The scrupylously vulger assertion was followed up with this co. grabbing Plaintiff's balls and predicating "say I like big fat white dicks!" Plaintiff yelled "you Buffoone!

The actor then released Plaintiff balls and asserted "I hate homosexuals" Plaintiff was then deprived for his dinner trays on 2-26-18, 3-6-18, 3-8-18, 3-17-18. On 3-8-18 Plaintiff got his dinner tray but it was spit in by this C.O. because Brown meat with Miss. Corlony Linston a member from the Prison sfourty. on 3-17-18, 3-19-18, 3-25-18 Plaintiff's tray was spit in by this C.O. on 4-5-18 C.O. Plaintiff id dinner trays, this time, he did not spit in the tray, but he did ask Plaintiff about a grievance he wrote. then he asserted "have fun eating that tray" while Plaintiff as eating the tray he feel his stomach started to burn, his lips was numb and his eyes started to wartee up. Plaintiff found Chewing tobacco in his food and another Unknown Substance. The room started to spin and Plaintiff passed out. On this day it was no way for Brown to get C.O.'s attention because there are no stress bottoms with in the Cells. Plaintiff hit his head and suffered Injuries. Plaintiff then told Paula Paire and Unit Manager Kendrick but nothing was done about Plaintiff injuries. On 1/10/18 during dinner trays Brown cell lights was on while using the bathroom. C.O. Locinik asserted to Brown that "homosexuals has little dicks" because they never have to use them Brown asked him what he was talking about? Plaintiff asserted "You have a little dick, and you are a homosexual!" He then told Brown, "go lay in Your bed, Stick Your thumb up your ass, then in Your mouth, Suck on it and act like it's Allens dick." see Exhibit XL-7 also see witness Statement.

On 1-24-18, 1-25-18, 1-26-18 C.O. Fochtman deprived Plaintiff of his inner trays, Because he had told officials that his Porkerty was missing when he came down to the hole. He also asserted to Plaintiff LT. Younker said "You do not eat!" On 2-4-18 Plaintiff meat with co. Fochtman while he was in cell 108 with inmate Allen. He told Fochtman that he had been assaulted by Allen and he fear for is Safety. Fochtman asserted "You better team how to fight? Younker, Dunkle and the int Manager and Maxwell all want You in this Cell!" Fochtman did nothing to move plaintiff, from the Cell. on 2-7-18 after Plaintiff was sexualy assaulted by his Cellmate, C.O. Fochtman came to the door asserting "It's a boy, no it's a irl!" Allen "You are the father!" Fochtman, then Predicated which one of Yall nm I going to write up for fighting?" Sgt. Anders want me to write someone up for fighting, so it can look good!!

Plaintiff then asserted to Fochtman "Yall have to move, me!!" Allen said he's oing to keep sexualy assaulting me till Yall move me!!" Allen then Started to Yell out Yall did this, I am the most violent Liter in this Jail, and Yall are refusing to move him!" Co. Fochtman then stated, "WE DO NOT MAKE COURTESY MOVES, THIS IS NOT THE HILTON, IT'S HUNINGDON!" Co. Fochtman then walked off and Started laughing. On 3-23-18 after Brown meat with Corlony Linston with the Prison Society co. Fochtman Picked Brown up from the vedio room in which he started to asked own what him and Linston talked about. Because Brown fail to respond, he was spit on by Co. Fochtman. Co. Fochtman started to Yell at Brown assert "You fucking omosexual, are you trying to suit us?" "I will make Your life a living hell ack here!" "Back here" as in the R.H.U. Brown told the Unit Manager what took Place but nothing was done to discipline, Co. Fochtman for his actions. On 4-28-18 Co Fochtman did trays he walked to Plaintiff door with tray, he then asked Plaintiff "What happened the last time he meat with he Prison Society? Brown asserted "You spit in my face!" He then asserted "dam right" then spited in Brown's tray and handed it to him. Brown again suffered an adverse action at the hands of Co. Fochtman for exercising his onstitutional rights. See Bistrian v. Levi 696 F.3d 352. 375. 2012 U.S. APP Lexis 19973 563 82 A LR Fed 2d 680.

Brown also brings retaliation claims against Sgt. Anders and nd LT. Younker. On 1-22-18 LT. Younker approached Plaintiff on his housing unit I-A. He asserted to Plaintiff that he did not like the fact that Plaintiff keep writing grievances in his institution. He also asserted to Plaintiff that over his 15 years of working at SCI Huntingdon he had yet to see a bigger rat, and that if Plaintiff keep riting grievances, the R.H.U. Will be his home. Brown told Younker the reason or his grievances was because his rights were being violated. He cut Brown off and Predicated that Kauffman and Maxwell had already told him everything he needed o know.

Later on that day the Sgt. brought back he had seen the legal sheet up with his name on it in which is a custom. LT. Younker started to harass Plaintiff asserting "we will give your mail when we are ready, go back to your cell before I tell my staff to tonight you up!" Plaintiff then watched another inmate walk to the desk and grabbed his legal mail. Plaintiff walked back to the desk again asking for his mail. This time Plaintiff mail was visible in which he seen his Attorney control number was scratch off and the legal mail was already open.

LT. Younker then asserted "I read your legal mail, and your lucky your even getting your legal mail you fucking whistle Blower," "Go fuck your shit your going to the hole, write him up for disobeying order and threatening staff, they should give him 60 days." Brown then asserted "You can't write me up for having concerns of my legal mail being read." LT. Younker predicated "this is my house, I do what I want to rat." Brown was written up by a Sgt. Moore. On the way to the hole LT. Younker told Brown "remember my fucking name, your not getting any of your property you fucking rat." During this Sgt. Moore also asserted the same thing.

During a inventory of Brown's Property hours later, Brown would not sign the Property sheet because he notice he was missing all his commissary and all of legal papers. LT. Younker and the Property Sgt. Flowers was called down. Both actors then asserted to Brown that he was a "Whistle Blower" and that he was a rat that likes to file grievances because of that he will not be getting any of his commissary. Brown wrote a Grievance See Exhibit YI-6, during Property exchange after Brown was assaulted by two officials, he again meat with the Property Sgt. Flowers and LT. Younker telling them he was missing what looked like up to two record center boxes of legal work. Again both actors asserted to Brown that his filing grievances was the reason he was missing legal Property. Again Brown filed a grievance pursuant to the missing Property, but nothing was done. See Exhibit WI-6.

Officials actions has hurt Brown's pending civil cases in which much of his Exhibits went miss for case Brown v. Phillips and Brown v. Whitside in which he was unable to adequately response to discovery and motions from defendance lawyers. Also look at Misconduct # D051229 pursuant to the force write up Brown got from Sgt. Moore after LT. Younker told this Sgt. "write him up for disobeying orders and threatening a staff. Brown never had a hearing for this write up, although the threatening a staff claim was dismiss Brown was still found guilty of disobeying order and was force to do hole time.

Brown next meeting with LT. Younker was on 2-3-16 when he was refused to go into a cell with an enemies Plaintiff expressed his concern to this LT. and why he did not want to go into cell 108. Younker asserted "We know who you are Chip and dip, or should we say Miss Brown." Brown was force into the cell and LT. Younker witness an assault on Brown at the hand of his cellmate, and did nothing to protect Brown because he claim Brown was a rat. Brown was later sexually assaulted by this inmate. The courts should be aware that Brown also brings claims of retaliation against Property Sgt. Flow for conspiring with officials in which Brown's legal record center boxes and commissary missing.

Apparently Sgt. Anders was one of the staff member written up after Brown made his claims of sexual assault known to the State Police. On 10-23-17 when Brown first got to SCI Huntingdon, during an inventory of his Property Sgt. Anders asked Brown why he talked like a girl and walked how he walked Brown made him aware that he was a homosexual. He asserted "O you was the one that got fucked at Camp Hill?" He then walked off. Sgt. Anders and Plaintiff did not meet again till the night after Brown was put in a cell with inmate Allen. Anders came to the cell door and started to yell at Brown asserting "why was you giving my staff a hard time, you need to be a man not a bitch fucking homo!" Plaintiff made his concerns he knew, that he had already suffs an assault at the hand of this inmate. Anders asserted "stop crying and clock on Allen's click. Don't act like you don't want to, Miss Brown." "You should love jail it's all guys in here!" He then asserted "You wrote a grievance on us saying we put you in a cold cell remember?" "Stop ratting on us before you start asking for favors homo!" "You will day in this cell!" Plaintiff again meat with Sgt. Anders on 2-6-15 Plaintiff made Anders aware that he was getting assaulted by inmate Allen, and that Allen is claiming he will sexually assault Brown if officials did not move him. Anders asserted "Power to the people and let the guys live on" then he started to laugh and point a finger at Brown.

Brown made Anders aware of the situation in the block that Anders should move him into one of the cells. Anders asserted "You rated on us, their is nothing I can do for you! Later that night, Anders told the two inmates asserted to Allen "do you want this rat's their share!" Allen took Plaintiffs tray in front of Anders in which Brown did not eat. Allen also assaulted Brown in front of Anders and Anders did nothing and walked off as if nothing happened. Anders then hurried and put Plaintiff into the open cells, that night Brown suffered an assault at the hand of Allen when he checked Plaintiff off the top bunk. On 2-7-18, Brown was sexually assaulted at the hand of his cellmate in which the attack started while C.O. Johnson was at the door. C.O. Johnson then came back to the door asserting "damn it looks like an animal got slay in there, look at all the blood!" We know, whats going on but Sgt Anders, Lt. Vauiller, and Lt. Dinkle wants you in this cell." C.O. Johnson then walked off and came back asserting "Sgt. Anders wants me to collect everything with blood on it! Plaintiff Boxers briefs, jumpers even socks, was collected, Plaintiff was crying out for medical attention C.O. Johnson asserted "I told them but i think that called medical and medical might not want to get involved.

Sgt. Anders came on the block with C.O. Fechtman, another inmate called Anders to his door, this inmate was very concern that inmate asserted to Anders I have been down 10 years, I have never seen anything like this, why dont yall move he foo kid out of 108 with that monster?" C.O. Fechtman asserted "because he's a rat Anders followed up. "do you know what happen to rats?" They get fucked over and have lots of rats, like Brown!" Brown called Anders to the door in which he was only next door, and he called Brown a rat and Blaine started laughing and did nothing. Sgt Anders actions clearly showed retaliations Brown suffered adverse action at the hands of Anders after engaging in constitutionally protected conduct.

Brown brings claims of Retaliation against C.O. Weyant and C.O. Garlik and C.O. Smith. Apparently these officials are in charge of inmates going to yard and showers on most days. C.O. Weyant and C.O. Garlik jobs to come around with the Shower and Yard list, they sign inmates up. With in an hour of signing inmates up they come back with C.O. Smith with hand cuffs in which is policy to take these inmates to shower, or yard. Brown was called a rat by C.O. Weyant C.O. Garlik and C.O. Smith on multiple occasions. On 2-8-18 Garlik was one of the officials along with Weyant that he was sexually assaulted by his cellmate and did not want to go back into the cell after he was let out for showers, he was then written up for being assaulted, these three actors then started to call Brown by a new name, "Gayman!" After Brown meet with the State Police Pursuant to his rape claims, he was harassed by these three actors. They would come to his door and call him "gayman!"

All three C.O's then started depriving plaintiff for showers and yard, they will come around with the yard list and shower list, Brown will be standing at his door they would stop and assert "Gayman! You are not showering, "Gayman! You are not going to Yard! Before 3-17-18 they might take Brown to the shower once every 4 days, with in doing so they would deliberately take Brown to the Unit of his attacker, this move was motivated by the facts that they was aware Brown walked yet narces and threats from his attacker and gang member friends. They would never take Plaintiff to the yard in which is policy five times a week, on 3-9-18 C.O. Weyant and C.O. Smith, came to Plaintiff's door for showers. Plaintiff asserted "are you guys going to really take me out for showers" they said "ok Gayman", Plaintiff then made his concerns he knew to both C.O's, that he did not want to go next door for showers because inmate Allen and his gang members would send death threats at him and harass him during showers, in which they was aware of Brown's cooperation with the State Police.

Plaintiff then showed both actors a note as C.O. Garlik walked up, Plaintiff told all three C.O's that the note was tossed to him by another inmate, in which asserted that Brown will be killed by Allen and his gang member friends if send to population because he was cooperating with Lt. Maxwell and State Police Pursuant to his sexual assault claims. These actors ignored that Plaintiff had showed them and still took him next door for showers after a open shower was on his block, Brown was then subject to death threats and harassment. Inmate Allen started to yell at Brown "their he is "killer" and "mudera" "their he is, we are going to kill you fucking rat!" Any were you go in this jail you will be send out in a body bag, you fucking homosin I had, you face down ass up in this cell" "your ass hole sucked all the cum out of my dick. And I know you liked it!" "fuck you and the State police, put him in here!!" C.O. Smith even asserted "Gaymian" they are talking to you fucking rat!"

These three actors came to Brown cell door short time after and asserted to Brown he will not see another shower or go to Yard as long as they are the ones to come around with the Yard and shower sheets. Apparently it has been the case. From 8-17-18 everytime co Weyant, co Smith of Huntingdon and co Garlik do the shower list or Yard sheet they pass Brown's cell asserting "Go-man, Garman" "No Yard no shower!" Brown has made the unit Manager aware, his counslor, and sgt. that aware of this conspiring act, but nothing has been done. Brown has not gone to Yard over 100 days. Brown has not had a shower in over 120 days. See Exhibit Z 1-6.

Plaintiff brings retaliation claims against Psychologist Goss, Psychiatrist Cousin and Eric Parsons, all members of SCI Huntingdon Psych team. After Brown was Admitted to SCI Huntingdon, he meet with a Eric Parsons a member of the Psych team; Brown is unsure if he is a Psychologist or Just a Cunso. Brown predicated that he was having multiple mental issues and that he had been a rape victim while at Camp Hill. Parsons asserted "I know who you are, if you want to get out the cell and talk I can get you out, but I can't do nothing for you." "I was told by my bosses that you like to file lawsuits, and you are a 'whistle blower,' so I can not refer you for treatment, they will not let me." Brown then asserted to Parsons that he was already diagnose at Temple Hospital and a follow up at Harrisons Huse with Bipolar and Schizophrenia, and P.T.S.D. and while he was in a county Jail he was diagnosed with depression. He made Parsons aware that he was not on his medication.

Risptal, wellbutam, depakote, and that his symptoms were getting worse sence his sexual assault. Parsons did nothing for Brown in which he again asserted I can't treat you or refer you to get treated because by bosses told me you whistle Blow through litigations. Nothing was done to treat Brown because he was alleged to be a whistle Blower through litigations. Plaintiff againe meet with Parsons on 12-4-17 after he was Admitted into the R.H.U. for refusing a celly. Plaintiff againe asserted to one Parsons that his symptoms was getting worse to the point that he would sleep under his bunk out of fear and hearing voices. Againe Parsons asserted to Plaintiff "We have a system here but it's nothing I can do for you, they wouldn't let me help you."

Plaintiff againe meet with Parsons on 1-25-18 while playing and eating his own feces. Parsons asked Brown, "why are you eating shit" "It's all over you. Also "why are you sleeping under your matt?" Plaintiff asserted to Parsons "I keep hearing voices." Parsons asserted to Brown, all this is an act to file a lawsuit, we do not give Z-code or treat people that sued us," then told me all about you!" Brown againe meet with Parsons on 2-5-18 while in cell 108 on G-A with an inmate "Allen." He told Parsons that he had been assaulted, that he did not feel safe in the cell with "Allen" and that he was "suicidal." Parsons asserted "We your still alive" and did nothing. Parsons claimed his bosses will not let him treat or refer Brown for treatment because he likes to litigate, in which he did not follow any D.O.C. regulations.

Brown First wrote Cousin a request slip after finding out from another inmate that she was the one that prescribe him psych medication. This was around 10-26-17. Cousins wrote back asserting that Brown would hav to see a Miss Butterbaugh She then signatured the request. At the time Plainti asserted very serious concerns or symptoms and was unaware Butterbaugh was only a counselor with no psych training. Plaintiff meet with Butterbaugh asserting his concerns. Miss Butterbaugh asserted that she was muddle with Cousins and Goss keep referring inmate they did not want to deal with to her, because she had no training to know what's going on with a inmate. She asserted it was a system that SCI Huntingdon had so they wouldn't have to diagnose inmates that do paper work.

Miss Butterbaugh also predicated that she never refers inmates to Cous. out because my symptoms was very serious, she would have to refer Brown be to Cousin, because she wanted nothing to do with depriving a inmate treatment. Brown then wrote a grievance see Exhibit A-A1-6. Brown meet with Cousin's and Goss on 12-5-17. After being sent to the R.H.U. for refusing a cellmate; He asserted to Cousin's his medication was not being given to hi, that his symptoms was getting worse after he suffered a rape assault at Camp Hill. He asserted he was not being treated that he was feeling down and gray, sweating his heart rate was beating faster when other inmates came close to him crying, fear of being harm to the point of sleeping under his bunk, he was

not leaving or shutting his calls. Plaintiff also asserted he would not stop shaking to the point that officials started to call him "shake and bake." Plaintiff asserted he was hearing voices that was telling him to hurt himself and others, and that he would become short of breath when another inmate brush pass him, that he was loosing wright from not eating, was having nightmears, and was very emotional.

Plaintiff told Cousins and Goss that he was already diagnose by a county Jail doctor and an outside doctor and or psychiatrist. Cousins then asserted "I don't know who you are." Brown Predicated yes you do, you referred me to a miss Blitter laugh after I wrote you in Pursuant to my symptoms worsening from a sexual assault at camp Hill." "You even sign off on the request." Cousins then asserted somebody else signature for him. Brown then asserted did you know that's a federal offense? Cousins then flated out yelling "OK smart ass we do know who you are, your not getting shit, Sue Us!" "If you claim your homicidal or suicidal, you have to act it on it, you cant just say your hearing voices or thoughts Act it out!!" "your not deting treatment or medication from us, I don't care if Dr. Phill had already diagnosed you!!" she and Goss then walked off. see Exhibits A-B 1-6.

Plaintiff agane meat with both, Cousins and Goss, on 1-17-18 Brown asserted that his mental needs was not being meat, and that his symptoms was worsening. she asked Brown to spell symptoms." Brown also told her that he was homesexual and the fear for his safety that his cellmate was retaliatous against him. Goss then asserted just because your a homosexual their is nothing with in the D.O.C. Policy that says we have to accommodate you with a z-code single cell. Cousins then cut Goss off and asserted People that Put in Paper work don't get medical from us, you have a better Chance suing!!! "I have been in this business for a while I don't treat inmates that sue people!"

On 1-25-18 Cousins and Goss was called down after they was told Plaintiff was in the camera cell eating his own faces, Cousins and Goss told Brown "you just doing this for attention or to get a z-code and medication your not getting shit!" After Brown was sexually assaulted by his cellmate the officer wrote Cousins this time she fail to respond. Plaintiff then meat with a member from the PSYCH department name Bell. He made his concerns aware to him's Bell told Brown he was like Miss Blitterbaugh, all he could do is refer him to Cousins and Goss, that it does not maim that the PRT members would see him but he would Put in the referral because he thinks Browns issues are very serious. Both Cousins and Goss fail to see Brown and or diagnose him.

On 4-30-18 while Cousins and Goss were doing their rounds in the R.H.U. seem another inmate that was cells down from Plaintiff him raised them over. They both came over and told Plaintiff to get a court order to set as before they would look into getting him medication.

Sgt. J. Rhodes and Sgt. Moore are in charge of legal copys. Its a custom that they come around or send a c.o. to Pick up legal copy every Thesday and Thursday. They then take the legal work to the bubble and it sit's till the next day in which it's tooken to the law library to make copys. Both Sgt Rhodes and Moore Picked up Plaintiff legal copy on 2-19-18, they came back to Brown cell asking him Questions about his legal cases and Pending grievances against other officials. They told Brown they did not like the fact that he was writing so many other official. They also started to ask Plaintiff about his sexual assault claims. Plaintiff would not say anything, they then told Plaintiff that they read all the legal copys inmate summit that's why it go's into the bubble. They asserted to Brown if he dose not stop with his grievances and claims against their officials that they will make his life a living hell. The next day C.o. Garlik did trays, Put the tray into Plaintiff box but did not slide or open the window so Brown could get his tray. When Brown asked him to open the window he asserted "Moore and Rhodes said you do not eat!"

On 2-22-18 agane both Sgt Rhodes and Moore Picked up Browns legal work, inclose was a motion for appointment of councle for one of Browns civil cases, a motion in Opposition. Some grievances directed to officials. Plaintiff legal copy was agane tooken to the bubble and agane officials came down to Brown's cell and Rhodes started to ask Brown about the grievance he wrote, and a opposition agane. Brown did not want to talk about it. Brown was deprived of his dinner tray by Sgt. Rhodes on that day. On 2-24-18 when Rhodes and Moore passed back legal copys his motion in Opposition was missing. When Brown asked Moore and Rhodes what happened o his motion they told Brown to suck a dick.

... Brown this would not have happen. Plaintiff had his medical dosage to be change because he was being retaliated against. Nothing was done by Kauffman and Housl. On 3-2-18 again Plaintiff legal copys was picked up by both Sgt. Moore and Rhodes. They took it the bubble Rhodes came back to Plaintiff cell and asked what did I tell you about these "grievances". Plaintiff told Sgt. Rhodes that he did not want to talk about it's at dinner time. Plaintiff was deprived of his dinner tray by bad actors. On 5-2-18 Sgt. Moore and Sgt. Rhodes again came around for legal copys, and they refuse to pick up Brown legal copys, this was not the first time. Plaintiff asserted he had 6 motion due with in the courts for Brown v. Phillips and that it would be late if he could not make copys, they told Plaintiff to "hand it up".

Or 5-9-18 legal copys was picked up by a co-length a short time after Sgt. Rhodes came out to Plaintiff cell and told him "how lucky we already did trash or else you would had been deprived of your tray." He asked Plaintiff to drop his Cia. against Co. Plc in nik see Exhibit XI-7. The next day Garlik did trans and deprived Plaintiff of his tray. Plaintiff talked to Unit Manager Kendrick and nothing was done. Plaintiff then spoke to Rhodes he called him a "homosexual rat". Plaintiff against was missing legal work when he get his legal copys back, Brown have retaliation claims again both Sgt. Moore and Sgt. Rhodes for their actions.

## Count V Municipal Policys

Plaintiff is bringing Municipal Claims against The Dorina, John Wetzel, Medical Provider Wexford, P.A. John Doe at Graterford, Paula Price, Kauffman, Unknow Medical Provider at Camp Hill, for Policys of asking inmates to obtain a court order for treatment or to see a Specialist. Plaintiff also brings Municipal Monell Claims, for Customs of inadequate treatment, failure to train, Discipline and Supervise, against other Policymaker's Dr. Kevin Kollman, Dr. Nelada, Dr. Shaikhi, Andrew Dancha.

In this case the Plaintiff alleged that the defendants knew that medical care was was necessary but simply refused to provide it. This Complaint established the defendants concluded that Brown would need to see or get evaluated by a Specialist pursuant to his heart condition, the recurrance of his acute Asthma attacks, and other severe injuries suffered from multiple sexual assaults. Such as symptom that could be link to a Sciatic condition, sharp pain passing down the hip through the back of the thigh causing neuritic as in inflammation. Neuralgia Pain and or severe pain along the nervous system, numbness along the leftside of the head, acute Scoliosis ... Defendants refused to treat Plaintiff. Instead they place the burden on Brown to obtain a court order for the very Examination that he believed necessary.

Their reason being lack of funds. The D.O.C. is responsible for providing funds o insure that the medical needs of the inmates are properly met. The limited funds provided by the Delmay have contributed to deliberate indifference shown to the serious medical needs of Garbo Brown. The state and local governments have the obligation to provide medical care to incarcerated inmates. See Estelle, Supra. The duty is not absolved when the D.O.C. contract with an entity. Such as Wexford. Attaching an entity like Wexford or other medical providers has contracted to perform an obligation owed by D.O.C. and the State, the D.O.C. and State is still liable to any constitutional deprivations caused by the Policys or customs by the official of the medical provider, see Wilson v. Taylor 733 F.23 1539 (3rd Cir 1984)

A municipality that consciously fails to train, supervise or discipline it's officials may have a Policy or custom of deliberate indifference to it's citizens constitutional rights. While a Plaintiff cannot recover from a municipality on a theory of respondeat superior, they can recover if they show that a municipal Policy or custom directly caused constitutional violations. A Pattern of deprivation may imply deliberate indifference on the Part of D.O.C. Policymakers to the need for training, discipline, & supervise. in a Particular area.

A Plaintiff in order to meet this standard for directly subjecting a municipality to 42 U.S.C. 5.1983 liability, must present specific-like evidence of indifference on the Part of a Particular policy custom, or Policymakers, which generally connotes some culpable state of mind, including the Policymakers deliberately indifferent acquiescence in a custom or policy of inadequate training, supervision or failing to discipline employees, when the need for more or different training supervise or disciplineing is very obvious.

Under *Monell v. New York Dept of Social Services*, 436 U.S. 658 (1978), a local government entity or private entity acting as a state actor may not be held vicariously liable under 1983 for the action of its agents unless the plaintiff proves the entity's policy or custom is the "moving force" behind a constitutional violation. *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006). "policy is made when a "decision maker possessing final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. *Pembaur v. City of Cincinnati* 475 U.S. 469, 481 (1986).

A custom is a practice of government officials that, although not authorized by law, is "so permanent and well-settled as to virtually constitute law". *Monell 436 USA* 690 accord *Andrews v. City of Philadelphia*, 190 F.2d 1063 1067 (3d Cir 1986).

Brown was admitted into the D.O.C on ~~6/26/17~~ 6/26/17. He made medical officials aware, that he was suffering from a variety of medical symptoms including an occurring heart condition in which he was diagnose with on the street warning him acute severe pain sensitive sharp pain. Brown asserted that he lost while he was hospitalized on the streets, his Cardiologist told him that his heart was not pumping enough blood to supply the body tissues adequately in which put him in a state of cardiac arrest. Brown predicated that the D.O.C institution was not giving him medication or even electrocardiogram in which his injuries worsen.

Brown also made officials aware of his Asthma attacks in which only a right dose of medication through a respirator could some what control the attacks. Brown also asserted he had been stabbed in the A.C and as the results of officials deliberate indifference he has a stigma in the lens of his eyes causing distortion or prevent of his light rays causing poor eyesight and sharp pain double vision. An X-ray was conducted by an unknown medical official. Day later Plaintiff met with PA Jane Doe at Fraterford. He predicated all his concerns then asked for the results of the graph tooken of his heart. She asserted "it looks bad, you would have to see a specialist on your eyes, your heart is chronic asthmas attacks." she then asserted Because the D.O.C or medical department was under funded I would have to be just about dead before, her bosses would approve a visit to an outside specialist to get diagnoses but if you get a court order then would have to act to comply with the court order.

Plaintiff concerns was ignored and he was deprived of grievances and could only write sick calls; in which was ignored. Plaintiff was transfered to SCI camp Hill on 8-9-17 in which at the door he asave told officials at Camp Hill all his issues. Pursuant to medical. Officials Claimed they sign plaintiff up, for an Asthmas chronic care clinic, On the contrary Brown 7's days he spend at camp Hill he never attended this clinic. None of Brown other serious concerns was meet See Exhibit A-C 1-2 medical officials asserted to Brown that his issues were very serious but he would need a court order to see a specialist or get treated.

Brown then stoped a Dr. Shaikh while in the hallway, he asserted to Dr. Shaikh that he was just Newly admitted into the D.O.C, and that he was not on any medication that his Neurologist Prescribed and my symptoms was worsen - also asserted I was in pain and it was hard to see and my asthma was never addressed in which I was housed on the old side of the Jail with no ventilation because it was a mid summer it was hotter then the ozone layer in the cell making it hard to breathe. Brown asserted other injuries he was suffering from. Dr. Shaikh went to his computer and looked up Brown's medical file and asserted his back, nose, leg and asthmas was documented, but there was nothing about his occurring heart condition or eye condition. He then stated this was a custom that alot of times nurses or PA would not log serious injuries or issues unless you had a court order to get treatment.

Plaintiff also asserted to Dr Shaikh that he had Just passed out in his cell on 08-22-17 and hit his head because it was so hot in the cell in which his chest pain got worse and he could not breathe. On Several walking if he told a Sgt. Zimmerment that he needed medical attention but nothing was done. He then wrote requests that was ignored in which was follow up with a grievance; because he was deprived of Sick calls. Dr. Shaikh told Brown he could not evaluate Brown because it was policy that he would need a court order. Nothing was done to address Brown's issues.

On 10-1-17 and 10-4-17 Plaintiff was a victim of a brutal sexual assaults. Brown started to ask medical personnals for treatment from his injuries suffered. Plaintiff ask a nurse Jennifer although he could not express all his injuries through the door as the attacker was sleep, he asserted that he was bleeding from the anal and in alot of pain that I had been raped, that I had symptoms of a fracture ribs, and nose, along with ankle pain hood neck and my injuries was not being treated. This nurse asserted "We have to Pull him out, could lose my Job if we don't." The C.O asserted we have orders that he stays in his cell

Plaintiff also asserted the medical personals would not help by his cell door. These medical personals would not address Brown's injuries. At no time did any officials pull Brown out the cell to evaluate him although his injuries were clearly obvious. Plaintiff than wrote a sick call on 10-7-17 and a follow up on 10-16-17 asking medical for help. Brown then had an Asthma attack on 10-18-17. Brown press the stress bottin, in which a C.O. came to the door and Brown asserted I can't breathe, this co. walked off. Brown was transfer the next day after getting out the batch with no medical treatment.

The Court should note that is not the only inmate with the D.O.C. system being or, was deprived of medical treatment. Brown is claiming this is a clear Practice. A inmate Mike Dilura Mitrzus cellmate by the name of Osive Johnson was denied medication and treatment causing death. Johnson was suffering from Charcot Syndrome a serious but treatable complication from diabetes in which the bones disintegrate, while Johnson was given housed at camp Hill he was repeatedly refused or deprived treatment in order to save money. Johnson condition deteriorated during the nearly two years he was held at the camp Hill institution. He then developed a life threatening and ultimately life ending bone infection.

Another inmate Chavlon Walter was a mental health inmate, officials were not addressing his mental health issues, at SCI Graterford he received a Court order that was asked by him from the jail before he could receive anti psychatic medication, the Court order also, asserted that he be transferred to a jail with better mental health treatment or units. A Sergant observed Walter striking and inflicting injury on himself, medical refused to evaluate him because his injuries were self inflicted By Policy Security can not Put you in a restraint chair if you are clearly by medical with nad vires. Walter was strapped in a seven point restraint chair around both ankles and wrists as well as over the hip and both shoulders for 46 hours, siting in his own urine and feces. He died less then an hour late after they let him out the chair. This was after medical evaluated him and asserted he was ok.

Toxicology report conclued that Walter did not have any anti psychotic drugs in his system when he died. The cause of death was intra pulmonary embolism likely caused by 5-centimeter, blood clot found during the autopsy. According to the National Institutes of Health that type of embolism usually begins as an clot in a leg vein before traveling to the heart, and can be caused by long-periods of sitting.

Brown was required to SCI Huntington on 10-23-17 in which he told officials at the door that he was not ok, any medication and was a rape victim. Brown also asserted that he had not been evaluated. He asserted all this to two medical personnals one being a nurse Nickie Emish. Again medical officials aloud a Prison guard Lt Maxwell without any medical training to provid a medical screening on Brown. Maxwell asserted because Plaintiff claims were weeks prior, that he would not need x-rays or to to get evaluated at a hospital or a jail doctor. No medication was given to Brown for any of his ongoing injuries.

Brown was seen by PA King on 10-24-17. Brown made King aware that he was suffering from a variety of medical symptoms including an occurring heart condition in which he was diagnosed with on the streets causing him acute and severe pain. Brown asserted that the last time he was hospitalized his cardiologist told him that his heart was not pumping enough blood to supply the body tissues adequately in which put him in a stage of cardiac arrest. Brown predicated that the last institution was not giving him medication in which his injuries worsen. Brown also made King aware that he was suffering from acute Asthma attacks and, that he was not even on medication for that. Brown also asserted he had been stabbed in the eye and it was left untreated in which was causing distortion and sharp pain and poor eye sight. Brown then addressed his injuries suffered from two sexual assault while at Camp Hill. Brown asserted he was still bleeding from the anal and suffer from internal bleeding, had symptoms of fracture ribs in which the pain was so intense he could not eat or sleep. Also had symptoms of a fracture nose, making it hard to breathe leaving him in excruciating pain. Brown also asserted he had numbness on the left side of his head that will not go away down to his right shoulders through his right hand. Brown asserted he was feeling sharp pain from his herniated disc area, and groin area to the point that he would have to force himself to walk or sit. Brown also predicated that his left ankle was still swelling and his acute scoliosis that he was also diagnosed with was causing him intense pain. King asked Brown to sign a cash slip. Brown asserted he was indescent that he did not have any money on his inmate account, King forced Brown to sish a cash slip or money on his inmate account, King forced Brown to sish a cash slip, or he would have to leave her office. Brown sign the cash slip. She asserted that they were under funded, that inmate would have to pay to get any treatment. She then told Brown that she would only be evaluating his ribs area and that he would need a court order to see a specialist because they was low on funds.

of Miss King also contacted or made contact with Dr. Brown's nurses, because it happen somewear else; that Brown would be getting answered back to camp Hill so they can address his issues. King started to feel around Plaintiff's ribs, in which he started to Yell M'laim his King then predicated "it they are fractured they would heal on its own". Miss King then told Brown that he did not have money on his inmate account for pain medication. So she could not Proscribe him any. Brown was left in pain.

See Exhibit A-D-1-6

King Actions clearly reflex on her trainings or lack of in which Policy-makers such as Paula Price, Dr. Kollman, Andrew Dancha are aware that medical staff regularly deprive inmates treatment or medication in which they gave either failed to train or discipline these officials. This failure caused Brown's injuries to worsen and emotional distress; the Court held, "delayed medical treatment did not constitute deliberate indifference unless it exposed he detainee to 'undue suffering or the threat of tangible residual injury or to interminable delays and outright denials of medical care," see Monmouth County correctional institutional inmates V. Lanzaro, 854 F.2d 326 (3d cir. 1987)

Brown was agane deprived medical treatment after he was transferred back to camp Hill to talk to state police pursuant to his sexual assault claims. Brown was subject to a seven hours bus ride in full restant including legs chain, wrists and waist. Brown was deprived of using the bathroom in which he was force to sit in his own urine and feces. During a screening at camp Hill Brown told unknowing medical personnel that he was injured and also injured from the seven hour bus ride in which he also suffered cut around the legs and wrists from the cuffs. Brown then asserted that he was force to sit in his own feces and urine for hours. One official asserted "that's why you smell like shit, did they write you up for that?" Brown was told he would be called down to medical to get evaluated.

On 11-1-18 Plaintiff suffered a busted nose from his cellmate, in which Brown nose would not stop bleeding. Brown was send to medical, at one point an unknewn inmate asserted to Brown "damn it look like you just got in a fight with a U.F.C. Fighter!" Plaintiff spoke to a nurse Jennifer, she looked very worried and quickly called Dr. Steeve and Edwards telling them "his nose will not stop bleeding, he's got blood all over him." Brown predicated to both doctors that he had been assaulted by his cellmate and weeks before this he was sexually assaulted while in the R.H.U. and his injuries was never attended too. Dr. Edwards then asserted, we knew who you are, and we are aware of your medical chart. Dr. Steeve left and got on the phone in a room close by. Dr. Edwards started to ask Plaintiff, if he had medical ensurance? Dr. Steeve came back and looked upset asserting "Edwards are you trying to get us in trouble, that's the law suit guy Huntingdon said they already treated him."

A Sgt. or LT. Frances was called and this actor forced Brown back to his housing unit with out evaluation. Brown was assaulted the next day by this same inmate and this time he was deprived to go to medical by Sgt. Peleix. Brown was then transferred back to SCI camp Hill exdue camp Hill, Brown was send back to SCI Huntingdon with no treatment what so ever. Plaintiff wrote a sick call on 11-15-17 Plaintiff was seen by a P.A. Gomes. Gomes asserted that Brown could not be seen untill he sign a cash slip, e sent Brown back to his housing Unit. Brown Gane submitted a cash slip and was seen agane by P.A. Gomes. Brown asserted to P.A. Gomes what he had asserted o P.A. King weeks prior, he also asserted that he had just been assaulted Gane while at camp Hill. In this meeting Paula Price was also the send. P.A. Gomes expressed to Brown that he had alot of issues and that he was unable s address them. He also asserted that they were under funded that the Jail did not even have a medical bed lay in; that inmates with serious medical condition like Brown would have to go to "rockview" a different Jail down the street. He told Brown its a policy that he get a court order, because they did not have the tools to adiquatly evaluate Brown, it must a rectum exam and x-rays could be conducted thats it.

Brown made Gomes aware that an anal or rectum exam would cause him more pain. An rectum exam was conducted against plaintiff will. This exam was conducted in an open room with other inmates and female medical staff watching. P.A. Gomes did not have gloves on his hand nor did he take his time in conducting the exam; causing Brown pain.

Gomes rectum. P.A. Gomes looked muddle, he agaim Put gel like lotion on his finger and agaim thrusted into Brown in which Brown agaim started to Yell, this was infront of other inmates and medical Personnals, some were females. Gomes finger was agaim covered with blood. Gomes then told Brown that his evaluation was dome after, ascerting to Brown "we are not responsible for this, camp Hill should had took You to a hospital" Gomes then Predicated "I can order X-rays to see how bad Your scoliosis is. Gomes then asserted there is nothing we can do about the numbness You are feeling on the left side of Your head through Your right shoulders, he claims a MRI would be needed and other tools the institution dose not have. Gomes also Predicated that Brown's heart issues could not be addressed by the Jail, that he would need an court order to see a specialist.

Gomes did assert that the Jail has asthma respirators, but he would not to Pay for the respirator. Brown asserted while at camp Hill officials there had referred him to an Asthmas Chronic care clinic because of his, concerning after he asserted Brown was lying because it was never logged See Exhibit A-F 1-2 official at camp Hill referred Brown to an Asthmas Chronic care clinic. Although Gomes condu an rectum exam, Brown is claiming it was contrary to Policy, Gomes did not use glove and conducted this exam infront of females and other inmate in an open area which violated Brown's Privacy. After Gomes was away Brown was bleeding from the anal, he did nothing for Brown. Gomes did not address Browns acute Asthmas attacks, Brown serious heart issues, nor did he address the fact that Brown claim his leftside of his head was numb gomg through his right shoulder and hand.

Brown meat with a Dr. Kelada on 11/30/17 agaim Brown told this doctor all of his injuries. He told Dr. Kelada that he had Passed out in his cell Just days Prior to the meeting after feeling week, dizzey, sharp Pain in his heart area that was so months he could not move or breathe. Officals found Brown on his cell on the floor. They then conclued that he was taking an heart attack for lawsuit reasons. Guards with out any medical training was Providing medical screening. Brown also told this doctor about his acute asthma attacks, his scoliosis, his eye, and the numbness on the side of his head down to his right shoulders. Dr. Kelada Predicated to Brown although his concerns was very serious or sympts that Brown was under founded and that he could not evaluable Brown because he was not a specialist nor did the institution have the tools to diagnos Plantiff's injuries or syntoms. He also asserted its very feet cases that would get confirmation to see a specialist in those cases inmates would have to be real bad dead. He asserted that Brown would need a court order to get these issues addressed.

He then stated that he could do X-rays of Brown's hip, Pelvis, spine too, see if any boon was sticking out or severe fractures. Dr. Kelada refuse to address Brown ribbs Pain, his nose bent, although P.A. Kim found him in the floor area. Brown should had gotten X-rays there. Kelada then claims their was no boon stickhis out, although there was inflammation around Brown knee, and his spine was curved, that his scoliosis looked serious that his hospec will not let him send Brown out to get evaluated with out an court order. Plantiff then asked Dr. Kelada for medication he asserted "You can get that off commissary" Dr. Kelada then forced Brown to sign a cash slip.

Brown meat a inmate Chambers while on A-B at SCI Huningdon Brown was muddle why Chambers was Paralyze, so he started to ask Chambers about his medical condition. Chambers told Brown to his cell and started to show him Paperwork. Apparently Chambers had seen, P.A. Kim, Dr. Kelada and Dr. Kollman after he was feeling sharp Pain in his air or around his head area and fused out in his cell, after he was discovered he was toplin on to, medical in a weel chair, he was looked at by Dr. Kelada, Kollman and P.A. Kim. They asserted their was nothing wrong with him, that he had our had a stroke. They asserted the reason for the stroke was his meuts work out in which was causing interruption of normal blood flow to the brain. Chambers than asserted that he dose not work out. He was send back to his cell, chambers asked to see a specialist and they asserted he would need a court order. The next day while chambers was watching T.V. in his cell he could not breathe because of sharp Pain from his heart, agaim chambers Passed out. This time he was not acting up around request. He had to be rushed to the hospital. During evaluation chambers was now aware that he was at the hospital and started to ask chambers why had'nt the Jail tooken actions in bringing him to the hospital after the heart attack the day Prior, chambers asserted it couldn't be time that P.A. Kim, Dr. Kollman & Kelada had told him it was only a mild stroke, in which they blood started to joke with him to stop the intents were in

The specialist to chambers the arrived to defibrillate him a acute heart attack. This left chambers motionless. He also explains that they brought him to tools in which they just discovered that chambers had had a heart failure which him in a stage of cardiac arrest. chambers was left paralyzed. chambers case is currently being litigated and was just recently offered 300,000. At no time was P.A. King, Dr. Kollman, and Dr. Kalada discipline for their actions.

Another case was with a Luke Tomas, an inmate currently housed t SCI Huntingdon. After Tomas was admitted into SCI Huntingdon he made Dr. Kalada and Kollman aware that he had epilepsy, that his seizures was very serious he needed medication to control the rate in which he would have them. Tomas was also concern that the institution did not have medical block on 12-16-17 while in the RHU. in which Brown was doors down Tomas fell out and hit his head from a seizure. Dr. Kelada and a nurse Emish was called. Dr. Kelada told this inmate if he didn't get up and cuff up he would tell security to O.C. him. The medical department was aware that this inmate was dianosed with epilepsy and other serious medical condition. Tomas did not get any medical treatment that day or get his head injuries evaluated. At another date while on the same housing unit as Brown. A-A Block while next to Brown. This inmate fell out and started to shack intensely while on the ground. Tomas seen Dr. Kelada and spoke with Paula Price, the y asserted that he did not need treatment because it was "K-2" then order Tomas to take a piss test in which he passed. Mr. Thomas passed out again hitting his head and shaking while in redline attempting to protest for medication for his condition, this was on 1-6-18. P.A. King told officials that Thomas had already been seen by medical rat it was nothing, but mild seizure and he was given Aleeve. An unknown C.O. then conducted a medical screening although he had no medical training und determine Tomas was faking. He then wrote Tomas up. The write up illeged that Tomas was faking his seizure, and that he might be on related K-2 like durg. Again SCI Huntingdon has nobody to supervise the medical officials to make sure they are doing their job in evaluating inmates for their serious medical condition. Another inmate "Jubilee" was surffering from a serious heart condition. He was admitted to a hospital on 4-21-17. this inmate was then released a week later with insturation from a Physician to keep this inmate a medical block on medical lavin under intensive observation. "Jubilee" meet with Paula Price and Dr. Kelada. He asked to be transfer to rockview because SCI Huntingdon did not have medical lavin or a medical block. Dr. Kelada asserted he was ok. their was nothing to worry abouts that the hospital Doctors did not know what they was talking about.

They even clear inmate" Jubilee to go back to population to his same cell and unit in which he was housed. On October 1st 2017 "Jubilee had a heart attack while in his cell and died. Dr. Keladai and N. Kollman was called after this. inmate would not wake up. While outside the cell Dr. Keladai Order-ed "Jubilee's" Cellmate "Frederick Brooks ML8061 to conduct C.P.R. on the dead body. Frederick Brooks was held in the R.H.U. under Murder charges. until autopsy reports concluded that he had suffered an heart attack in the middle of the night. Again no medical personal was discipline for their actions Pursuant to Jubilee death. Officials was aware that SCI Huntingdon was an old jail in which did not have medical block to accommatate "Jubilee" that inmates like him could not be housed at SCI Huntingdon, they would have to go if the street to SCI Rockview. Paula Price and Dr. Kelada refused this inmates request to go to SCI Rockview after his Physician at the hospital made the institution aware that his condition was very serious, that he would need to be under constant observation. See Exhibit A-G 1-7

The courts should note these are not cases of self-diagnosis. These are all inmates that suffered from a very serious medical conditions in which was brought to defendants attention. at no time did those inmates self-determine that they needed treatment other then offered to them. See White v. Napoleon. 897 F-2d 103, 110 (3d cir 1990) In those cases Brown is claiming that non-medical defendants like Kevin Kaufhman and Paula Price had actual knowledge that Prison Doctors or their Assistants are mistreating or not treating Prisoner in which would withstand the sci enter like re. quirement of deliberate indifference. See Spruill v. Gillis, 372 F.3d 218, 236 (3d cir 2004) "If a Prisoner is under the care of medical experts, a non medical Prison official will generally be justified in believing that the Prisoner is in capable hands."

Brown is also alleging medical officials or adult medical staff mistreated or failed to treat him in which non medical officials had actual knowledge; Brown is also alleging that he was not the only inmate subject to this custom. Brown's next meeting with medical personal was while he was in the RHU. Brown meet with P.A. King and told her Prison offier had hold him in a cold cell naked. P.A. King asserted "You was getting blessed", this punishment tool is so common it has a nickname, blessing in which King was already aware. King did nothing for Brown on going injuries suffered.

Brown againe meat with a nurse Hallie on 1-24-18 while he was on the grou after an Asthma attack in asserted he did not have a respirator in which could self control his attacks; she asserted to Brown that he would need to sign a cash slip before she could have Brown told this nurse he is indigent. This nurse then told Broun there is nothing I can do for you, then walked off. On 2-7-18 a co Johnson came to Brown's cell door and watched his cellmate attack him, this co ran of when Johnson came back to the door he notice Brown was in bad condition and bleeding from the knee, nose, head, and other parts of his body, Brown then told Johnson he was sexually assaulted by his cellmate. Johnson walked away againe and came back asserting he had called medical, but they asserted they did not want to get envole; he then forced Brown to give him his sheets and cotting that had blood all over it.

A medical personnal came by hours later to give another inmate his medicadion Brown then told this person, but nothing was done to see what Brown's injuries were also Brown claims those were ignored or disregarded till 2-11-2018 when Brown seen a nurse Trice. This nurse told Brown that because it was in the middle of the night, that a doctor was not on, but first thing in the morning that a doctor will see Brown. Brown told this nurse the had suffered His sexual assaults attackes from his cellmate and his injuries was as follow; abdominal pain, bleeding and bruises in and around his anal, neuralgic pain, inflammation of ankle, pain in nose making it hard to breathe, Chronic back pain, sciatic pain in his hip and thigh, he was still feeling numbness along the left side of his head; from when he was sexually assaulted at camp hill he asserted he had a big bomb on the other side of his head from the sexual assault suffered on 2-7-18 and bruised ribs. The next morning Brown was called down to a strip cell and a nurse Nicole asserted "I am only here to take pictures!" She took pictures and told Brown he would need a court order to see a specialist or go to a hospital. See grievance # 721081, Exhibit A-H1-5

Nothing was done for Brown and he was also deprived from medication. Brown againe put in another sick call, and a P.A. Eric came to Brown's door on a different day. Brown predicated to P.A. Eric that he was a victim of sexual assault and he was getting deprived medical attention and that he was not even on pain medication. Eric told Brown there was nothing he could do for him because, this would be a reason for another one of his law suit. Eric then walked away. Brown againe put in another sick call and meet with Paula Price, P.A. King, and Dr. Kollman on 2-22-18 Plaintiff againe asserted all his symptoms, and that he was still bleeding from his anal and that his condition was worsening. They asserted if they order x-rays and their was something wrong with Brown that he would need a court order to see a specialist because there was under founded. Paula Price asserted "being that you are who you are, if we treat you or attempt to you are still going to sue us!!!! You sue everybody", so it's best we don't get envlive."

Nothing was done to treat Brown or even see what was wrong with him. defendants left Brown in pain, even making him sign a cash slip, on 2-25-18 Brown suffered an assault while in the porperty room at the hand of two prison officials. Againe nothing was done to treat Brown. Plaintiff suffered an asthm attack days later while in his cell and was unable to get C.O.'s attention because there are no stress buttons with in any of the cells, when Brown spoke to nurse Nichole she did nothing to address is issues. After Brown meat with the prison society on on 2-28-18 he explaine that he was getting deprived of medical attention. Mis Carion y Linslow who is a retired nurse herself same very concern, in which she will be a a witness in this matter. Brown, was called down to Superintendent Kauffman office and he was harassed by Kauffman and Paula Price, they asserted that Brown should stop talking to the prison society and filing grievances that he will not get any medical treatment at SCI Huntingdon, because they are not liable for homosexuals getting raped.

The D.O.C and its officials are clearly liable pursuants to Brown's claims. Brown has alleged that the D.O.C and its officials has engaged in a pattern of behavior or has in place a custom of failing to train, disciplane, supervise it's officials; this directing such behavior or custom has unlawfully deprived Brown of his constitutional rights.

From 2012 when Human Services in which is 289 deaths was blamed on improper supervision or inadequate care by private jail medical providers such as Wexford. The D.O.C. also has a history of changing medical providers once every four years because of this. Also the court should note that this regulation or negligence pursuant to the number of inmates that had died within the state institution from 2012 does not include inmates that died in the hospital. The regulators only require to report these deaths to the Health and Human services if it occurred while in custody. So if a inmate was in bad condition but was alive when he left the jail then died at the hospital he or she will not be included.

Officials' lack of training is "one thing that run through a lot of the deaths, which the recent jail deaths totaled among the highest in the 26 years since the state began tracking them. This pattern tells a story that officials are not addressing as in Policymakers.

# Municipal Policy #2

Their is nothing within the DC - ADM 008 "Prison Rape Elimination Act addressing homosexuals safety or accommodating them pursuant to housing if they have claims of or a history of being sexual assaulted. The policy is clearly discretion base in which their is a link between Brown being liable as Whistle Blower and officials abusing their discretionary in housing Brown.

Regulaters should have a straight policy they would have to follow if a homosexual is admitted with in one of their many state institution and has claims of being sexual assaulted or a history. Brown is bringing Municipal claims against these Decaile and Policy makers Kauffmann, Mandy Sipple, Lt. Max Well for the lack of in the DC - ADM 008 "Prison Rape Elimination of not addressing homosexuals safety or accommodating them pursuant to housing if they have claims of or a history of being sexually assaulted. These claims are also under Monell's. Plaintiff is also bringing his claims against John Wetzel.

To hold a municipality liable pursuant to 42 U.S.C. 1983, a plaintiff must allege that the municipality had in place a policy, practice or custom that caused the deprivation of a constitutional right. See Monell, 436 U.S. at 691. Liability premised on 42 U.S.C. 1983 cannot be based on a theory of respondeat superior. A plaintiff must establish that the government policy or custom was the proximate cause of the injuries allegedly sustained by the plaintiff. Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996) Alleging or proving one incident of misconduct, however severe, cannot in and of itself engender municipal liability Oklahoma City v. Tuttle, 471 U.S. 808, 823-824 (1985). A plaintiff's complaint must "put defendants on notice of the essential elements of plaintiff's cause of action and raise a right to relief above the speculative level. Bell Atlantic Corp v. Twombly, 550 U.S. 544, 555 (2007)

A pleading that offers "labels and conclusions" or a formulaic recitation of the elements of a cause of action will not do" Ashcroft v. Iqbal, 129 S. ct. 1937, 1919 (2009) The complaint must contain "more than the defendant - unlawfully-harmed-me accusation". There is a difference between alleging an entitlement to relief which i by, itself, is not sufficient and showing through factual allegations, that the entitlement exists.

To establish a legitimate claim, the plaintiff must plead 1) the municipality had a policy or custom that deprived him of his constitutional rights; 2) the municipality acted deliberately and was the moving force behind the deprivation; and 3) plaintiff's injury was caused by the identified policy or custom. Bd of the County Comm'rs v. Brown, 520 U.S. 397, 403-04 (1997)

Plaintiff was admitted to the D.O.C. on 7-26-17 in which at the door he told officials that he was an homosexual inmate, that has been subject to harassment, and assaults from other inmates. Although plaintiff did not have any altercation while at SCI Graterford. Then he got to SCI Camp Hill for classification reasons. Plaintiff again made officials aware that he was a homosexual inmate and had been subject to harassment and assaults from another inmates. Plaintiff then told officials. In fact their was an inmate name "Weav or Diwoo" that was going through classification, that had assaulted him in the County jail after months of harassing him. Officials told Plaintiff he would be going to the hole if he did not take a cellmate in which his cell was doors down from this inmate. Officials also told Brown that it was over crowded so they could not accommodate with a single cell.

On 10-27-17 Brown was assaulted by his cellmate while in the R.H.U. at Camp Hill. An L.T. Gildea deliberatly put Brown in with a "strong" after he was aware that this inmate had a history of assaulting and sexually assaulting his cellmates. Plaintiff apparently made Gildea aware of his concerns of being housed with other inmates while in the RHU. His request was dismiss or denied as Gildea asserted "We don't accommodate fags!" Lawsu Man!" Gildea again asserted that "CampHill was not the place to act up. You need to read up on our history i use don't give a fuck about gay rights or your dam ass lawsuits!" Gildea then asserted "I am celling you up with Strong, he's got 12A1 assaults and he loves homosexuals!" Gildea took Plaintiff out of one cell and put him with this inmate because he claim Plaintiff was in a cancil ass.

It was also transparent that Brown was a homosexual because he swuls his hip when he walks, sound like a girl when he talks, and has other feminine characteristics, brown also wears eye linder. Brown has a constitutional rig to be free from cruel and unusual punishment analyzed by the Eighth Amendment retaliation analyzed by the first Amendment, Brown also has a right to be free from assaults and sexual assaults, Brown is puting into context and defining the conditions of the federal rights that was violated.

After Brown was admitted into SCI Huntingdon, he made aware after meeting with a CPREA) L.T. Maxwell and Mandy Sipple. He asserted that he had concerns of his safety and privacy pursuant to his housing because he was a homosexual and that he was sexually assaulted at camp Hill by(at cellmate two times. L.T. Maxwell asserted that he was aware and that he use to work at camp Hill and that his friends was under allot of heat because of Plaintiffs claims, he then stated that he was not happy wit Brown because of that. Miss Sipple then asserted that policy does not require that Brown be given a single cell just because he is a homosexual and a rape victom. In which she is right, there is nothing with in the DC-ADM 008 that address such issue.

Sipple also stated to Brown "you can't have your cake and eat it too it Seems to me. Your trying to attract men so don't screem rap!!" This was after Plaintiff had asserted that he fear for his saffy and that he would again be a target because of his, feminine characteristics in which he swuls his hift when he walks and he talks and Sound like a girl, and weass eye linda Plaintiff was then force to write and sign a statement that he did not have any enemies in population although he was unawaer of who was in Population because he was new to the jail. He was then put into a cell with a inmate with a histroy of selling drugs and Violence, Brown again told Officials on his housing unit of his concerns after a C.O. passed his cellmate "Jackson" a legal mail, and a copy of a grievance response Pursuant to him being a victom of Sexual assaults. Brown also cryed out to his counselor that he fear for his safty and Privacy but nothing was done. Again Brown was told it was over crowded and their was nothing with in the DOC asserting that he could not be housed with other inmates. Brown was assaulted by his cellmate "Jackson" and was forced to put money on Jackson and a inmate "Allen" books because they did not like Brown. Brown again made his concierge aware to Kaufman, maxwell, and Sipple and asked them to look for any alternatives. Brown claims were denied.

On 1-22-18 Brown was written up and send to the RHU. Brown was wroten up while in the RHU. for refusing a cellmate. Brown again meet with L.T. Maxwell and Miss Sipple asking them to accommodate him with a single cell. Brown even made them aware that on his way to see them he was sabted to threats and harassment because officials had come to his cell and asserted out loud "your going to see L.T. Maxwell and Sipple. Inmates started to yell out "O that's the fagit boy that Jackson said got fucked at Camp Hill in the RHU. "Hatie" somebody going to Fuck him him down here. YOU fucking rat!" Aging nothing was done for Brown Maxwell asserted to Brown You would have to go into the cell with the every we want you, to go in the cell with no cares will he ucked. Brown has already alleged through his complaints that after he was force into the cell with an inmate "Allen" he was assau and sexualy assaulted two times in which officials conspired to keep him in the cell.

Brown is claiming their is no policy with D.C.-ADM 008 which dose not address homosexuals that has been sexually assaulted or has sexual assault claims. This lack in policy in failing to accommodate victims or inmates with such claims called Brown's injuries. Their is also a link in overcrowding and officials abusing their discretionary.

Brown counselor told him at the time a vote sheet did come around asking did he think Brown was saft to be housed with other inmates. He then asserted the participants for the voting sheet was members of P.R.C. and P.R.T. as well as Kauffman. So Maxwell, Sipple, Cousins, Goss and others. He stated every one voted in favor of Brown being housed with other inmates, so it was custom that he could not vote against his co workers even though he felt differently. In other words he told Brown "it's fucked up what they are doing to you but I could do anything about it." officials clearly abused their discretionary. They was aware Brown had a history of getting sexually assaulted, they was also aware that Brown would most likely be a target to other base on the fact that he wore eye linder and was a homosexual with feminine characteristics.

There has to be a policy protecting Brown in giving officials less power in abusing their discretionary. Officials also looked or label Brown a "whistle blower." So it would not be far-fetched to draw the inference that their actions might be deliberate or bias and motivated out of retaliation pursuant to accommodating Brown and protecting him. Kauffman himself called Brown a whistle blower. Maxwell asserted that he use to work at camp hill and that Brown claims had his friends under allot of heat in which he was not happy with Brown. Contrary to what took place with the vote sheet, their are times were the same participants voted for an inmate to be accommodated with a single cell just because he looked young. See Exhibit A-G 1 a statement from Shae DelGrosso LR6121 in which state he was given a single cell Z-code in which he did not even want, simply because he looked young.

Another inmate Quan Abbernathan was housed at SCI Smithfield he was caught on camera grabbing a nurse "ass" in which the nurse said nothing he was transferred to SCI Huntingdon and given a Z-code single cell. The court should also note at no time did Brown get a chance to object to this recommendation pursuant to the voting sheet. The D.C.-ADM 008

Subsection is-h reads "The transgender or intersex inmate shall be informed of the GRC'S privacy and housing recommendations with in 48 hours of the GRC meeting, and be permitted the opportunity to concur or object to the recommendation." 59 "In deciding whether to assign a transgender inmate to a facility that is consistent with his/her gender identity and in making other privacy, housing and programming assignments the Department shall consider, on a case-by-case basis, whether, a placement would ensure the health and safety of all impacted inmates and whether the placement or accommodation could potentially present management or security problems. (28 C.F.R. 115.42(c))

In reading this you could conclude that its directed to transgender inmates and not homosexuals in which, at best it's still discretionary based. It talks about the GRC and housing and programming assignments to ensure safety. It's still to the power of to consider. If an inmate that is a homosexual and has a history of getting sexually abuse their should be no discretionary based policy, that inmate should be accommodated with a single cell at the door at any institution he goes to. And if for some reason over crowding is a issue in accommodating this inmate then he should be put on A/C; and transferred to one of many of the D.O.C. state institutions, unless that inmate wants to stay at that institution and cell up with a friend in which he feel safe with.

The only discretion base to this policy should be in officials choosing one of it's many institution to house this inmate. It's apparent that their are always concerns in or pursuant to inmates abusing this policy or saying they are of homosexual or was sexually assaulted just to get accommodations with that being said the concerns dose not outweigh the violation of these homosexual inmate if officials abuse their policy or discretion pursuant to housing these inmates. Brown is not alleging that he was the only inmate subject to his was rights getting violated because officials chose to abuse their discretion, pursuant to his safety and housing. Another inmate "Denny" also subject to officials housing him with other inmates when he was admitted into SCI Huntingdon. After this inmate was admitted into SCI Huntingdon, he made officials at the door

aware that he was a homosexual and had a history of being sexually assaulted. He told Manuel he was very concern pursuant to his safety. He too like Brown switched his hips when he walks and had other feminine charteristics. Prison officials ignored Penny's concern and housed him with a inmate that was knew for fighting his cellmates. With in 48 hours Penny was raped by his cellmate. Penny then told officials that he was sexually assaulted, they deprived him medical atten and housed him with another inmate that did not want a homosexual as a celly.

This time Penny was not sexually assaulted in was beaten half to death and tied up in the cell. Officials found Penny under the bunk tied up. In Penny case he was lucky he did not lose his life. Penny was transferred out the jail. Another inmate by the name of Kayn Brooke is currently an inmate at SCI Huntingdon. He has a mental health history and is also a homosexual. When he was admitted to SCI Huntingdon he made officials aware that it was his first time in jail and he was a homosexual. Brooke was concern because of how little he was. He expressed this to both P.R.C. and P.R.T. making them aware that he was vulnerable and might be a target to others.

Like Brown this inmate also were Bye linder and has other feminine charteristics. Brooke was ignored by both P.R.C. and P.R.T. they housed Brooke on A-A. The same housing unit that Brown was housed, Brooke had a cellmate that did not care that he was a homosexual. Brooke started to get harassed by other inmate, in which he made officials aware, but they did nothing telling him "Man up." A Goon next door started to ask Brooke for money and that he would protect him. Brooke started to call his family and asked them to put money on this Goons books, telling them he's a friend. After a while Brooke family started to call the jail asking why this guy was asking Brooke for money. Officials started to lock into what was going on. Officials then seen this guy forcing Brooke into his cell but did nothing. Although Brooke was not rape by the Goon it took a note from this Goon threating and asking for sexual favress even then officials told Brookes he was lieing. Brooke could had to go up to security and telling them everything and how this Goon was now asking for sexual favers.

Againe officials failed to act, Brooke family then called the jail assertint a civil lawver was coming to see Brooke. Brooke was then mov to a single cell unit. Officials then also lived this Goon Z-code and housing him next to Brooke. Brooke then try committing suicid. A civil lawver came to see Brooke the next week, officials then transferred the Goon to another jail. Brown puting in context and is defining the contoures of the right he is alleging were violating, Brown has pled the necessary elements to establish municipal liability against policymakers. Brown has showed that officials also violated other inmates constitutional rights through abusing their discretion. Brown has alleged that the municipality has a policy or custom that deprived him of his constitutional rights, and that the municipality acted deliberately and was the moving force behind the deprivation and Plaintiff's injury was caused by the identified policy or custom see Bd: of the county Comm'rs v. Brown, 520 U.S. 397, 403-04 (1997)

# Municipal Policy # 3

Pursuance to DC-ADM 803 Mail and incoming Publications Procedures Postage and copying. Section 1 of this policy pursuant to Anticipated Postage for indigent inmates and corving, this section of the policy discriminates against indigent inmates and put a restraint on adekate research. It also violates these inmates equal protection in which Brown can show a link to injuries suffered in his ending cases because of this policy. Plaintiff is asking for a Preliminary and Permanent Injunction

The policy reads; 1) an indigent inmate may anticipate on his or her account, postage for legal mail to include exhaustion of grievances, and copying charges of up to $10.00 per month. Under no circumstances, shall the Business Manager/designee, approve requests in excess of $10.00 per month. An inmate is responsible for managing his or her funds and monthly postage allowance to meet his or her legal needs.

First Brown is an inmate fighting a criminal appeal Pro se and multivle civil cases also pro se. Brown is constantly fieing grievances. Brown is an inmate working from the RHU. in which policy is a inmate in the RHU. should be admitted no less then 2 to 4 hours of law library time every week. Where a inmate has petition he has to restonse to he could requre more time:

In Brown's case officials are deterring Brown from even denying him access to the unit law library, Brown files about 10 grievances a month. It's say officials response to these grievances which is not the case. Brown would spend $1 allowance in 10.00 just addressing grievances that month. $5.00 to occur copys of the grievance he wrote, a copy of the Mital review response, a copy of his response, a copy of the facility manager response and a copy if his response to send to sectiary's office and another $3.50 in postage to mail the grievances. In which was the case in February of 2018 for Brown.

The courts could also draw the inference "Brown you don't have to file so many grievances exspecially if officials are not addressing your concerns in which you would be able to show good Cause." Brown slowed down on the grievances. The court should note that Brown would have to respond to around Five different law firm in the month of march through court orders or response to motions. Diorio & Sereni LLP at 21 West Front street P.O. Box 1789 media, Pennsylvania 19063, Holsten & Associates at 1 S. olive street Media PA 19063, Gold & Ferrante, PC at 261 old york rd, Suite 20 Jenkintown PA 19006, Lamb McErlance PC at 24 E. market St, P.O. Box 565, west Chester PA 19351, City of Philadelphia law Dept. at 1515 Arch st withBrow Philadelphia PA 19102.

First Brown had to file a Application For Extension To File Appellant's Brief see Commonwealth of Pennsylvania VS Gartor Brown No. 2759 Ed 6 2017. Brown had to file this on recuest slip paper because he ran out of white printing paper, Brown filed the extension of time because he did not have his legal box with him and he could not request case law from the law library for reasons of researching because he did not have any $10.00 allowance left. Nor was Brown able to make the copys needed by the Courts.

Brown had to respond to a Meghan claiborne motion to dismiss from the law Dpt. of the City Of Philadelphia in Brown V. Warden John Doe 16-CV-588 in which was 25 pages, Brown would also have to make 25 copys for himself and 25 copys to send to the Courts. That would cause him $5.00. Brown would have to respond to a motion from Holsten & Associates in which was 20 pages, again Brown would have to make 20 copys for himself and 20 copys to send to lawyers. By then Brown had ran out of allowance. The prison law library was telling Brown they could not make copys for him because he had ran out of money, in which was policy.

Brown could not respond to dicloyns request from lawyers from Diorio & Sereni LLP Pursurcuits to Brown V. Phillips 16-CV-0561c or another motion from Diorio & Seren Pursuant to case 16-CV-0706 Brown V. Savadoga in which defendants Warden Byrans, Hermny slex, sgt Sabraimo theif which was all dismiss as defendants. Because Brown was unable to respond to defendant motion on time. Brown was then unable to file a Writ of Certiorari Pursurant to case 17-5174 Brown V. Moore in which Brown had appeal and was dismissed for lack of jurisdiction because the District Judge order entered September 11, 2017 had not dismiss all the defendants in that case in which 28 USC. 1291 Provies the courts with jurisdiction over appeals from final decisions of the district courts. See coopers & Lybrand V. Livesay, 437 U.S. 463 467 (1978) but were it is not a final decision the court would have the discretion in lacking jurisdiction.

In such case Brown could file a Petition for rehearing or file a Petition for writ of Certiorari. Brown could not file his petitions because of lack of research. Brown did not have any allowance to get the case law's needed to adequatly address all issues in that case. Brown did'nt even have paper, or his legal box. Even if officials was giving Brown his 2 to 4 hours a week in law library time, Brown would still need copy of case laws in his cell to help with research. The policy puts a serious restraint on Brown at no point could Brown fight his cases adequatly with such restrain of $10.00 a month for copys and postage and only 100 sheet of paper a month. The Courts are clearly aware Brown is a different case in which must inmate admitted to the D.O.C do not have as much legal issues to address throught the courts the policy is directed to those inmates and is discriminating against a inmate like Brown. The court should not Brown only addressed the month of February and March 2018 in this litigation in which it might take 50 pages if Brown addresses the lack in this policy from the time in step foot into the DOC Brown is well backed up in responding to his legal issues and has have defendants dismiss in some cases because of this policy.

Brown has an Alternative to this policy so a Inmate like Brown is indigent; he should be able to show good cause by submitting a request to the Business office asking to duble his $10.00 allowance to $20.00 for copying and postage and also duble the no cost stationary. This would give this inmate more to work with; officials are not even giving inmate Carbon paper anymore as required by policy. Brown has showed the courts that this Policy has insured his access or put a restraint on his ability to conduct adequate research while indigent and working out of the R.H.U. The Alternagee to this policy will also make it harder for an inmate like Brown to bring claims like this in the court. Their is no alternative to this policy Inmate should not be treated differently from other inmates because they lack funds on their accounts in which policy makers such as Kauffman and the D.O.C. is clearly liable.

## Municipal Policy #4

The Legal mail, Personal mail, Grievance, request and legal copys system. Brown is bringing his claims through Monell, and failure to discipline; John Wetz Brown is identifing these policy makers Kauffman, Unitmanager Kendrick, Brec L. Maxwell, Mandy Sipple, LT. House, LT. Younker, Sgt. Rhodes Sgt Moore The supreme court held that a municipality that consriously fail to train or disci line its agents may have a "policy or custom" of deliberate indifference to its citizens constitutional rights, and may therefore cause the resulting constitutional violations. The court held a pattern of constitutional violations may imply deliberate indifference on the part of policy-makers to the need for training or disciplining in a particular area, see Simmons V. City of Philadelphia, 947 F. 1042 (3d Cir. 1991). A plaintiff, in order to meet the deliberate indifference standard for directly subjecting a municipality to Section 1983 liability, must present scienter-like evidence of indifference on the part of a particular policy maker or policymakers.

This "scienter-like evidence of indifference" generally connotes some culpable state of mind, including the policymakers. A complaint that alleges that a policy-maker knew about the need to discipline or training ignored this need and thereby caused the injury at issue, it sufficiently alleges "scienter-like evidence" of indifference and can withstand a motion to dismiss. see Black v. Stephens, 662 F.2d 181, 189 (3d Cir. 1981) 1983 does not permit respondeat superior liability, an entity may only be found liable when injured result from the execution of a policy or custom of that entity. Monell v. New York City Dept of Soc. Servs. 436 U.S. 658, 694 (1978) see. Natale v. Camden Cty Corr. Facility, 318 F.3 575, 583 (3d Cir. 2003).

Overruling Monroe v. Pape as having been based on an erroneous interpretation of the legislative history pertaining to 42 USCS 1983; that local governments, municipal corporations, and school boards were persons subject to liability under 1983; and this were not wolly immune from 1983 syits; (2) that as "persons" subject to liability and 1983, local governing bodies could be sued directly for monetary, declaratory, or injunct relief where the action that was alleged to be unconstitutional implemented a policy statement, ordinance, regulation or decision officially adopted by that body's officers, or where constitutional deprivations were visited pursuant to governmental "custom" even though such custom had not received formal approval through the body's dicisionmaking channel

The U.S. mail legal and Personal mail are given to officials along with Grievance responses and request slip request, these officials then pass out these documents to each inmate but has a name and inmate number on them. This custom could be abused in Brown's case wear he is liable, as a "Whisle Blower rat", and homosexual." Policy-maker have a custom of having any C/O in which you wrote up or had a verbal argument with pass out these paper work. While on A-A Block, C/O Kovach never passed out Personal, legal, or inhouse mail. On 12-29-17 plaintiff made his concerns be known to Kovach that he fear for his safty, plaintiff asserted that his cellmate, Jackson Keap asking if he was gay and was making fun of the fact he was wearing eye liner. on L-7-18 plaintiff got into a verbal argument with Kovach in which Kovach then called him a fagit. Plaintiff they called the P.R.E.A. hot line refering what took place, and also wrote a grievance. see Exhibit D-1-4. After this C/O Kovach by Policy should had been removed from the block in which is stamped in the DC-ADM pol and DC-ADM 008, never the less policy makers such as LT. Younker and LT. Maxwell ignored plaintiff's claims and directed Kovach to start Passing out Personal, legal, and in house mail.

On 1-13-18 CO Novack stole inmate Jackson personal mail of Plaintiff pursuants his sexual assault claims at camp Hill while Plaintiff was watching T.V. in the day room. also told Jackson that Plaintiff was cooperating with the law pursuant to him being raped at camp Hill. Inmate Jackson then told a friend that Plaintiff was a "rat and had been raped". His friend name was Allen. This friend to later sexually assaulted Plaintiff while on the RRU. Plaintiff also suffered an assault at the hands of Jackson on 1-15-18 and he was force to put money on both Jackson and Allen's books. See Exhibit D-1-4.

On 12-10-17 while doing the trays in the RHU Plaintiff got in a verbal argument with CO Ciotti, this Ciotti then called Plaintiff a "house sexual monkey." Plaintiff reported him to Unit Manager Kendrick, Kendrick then directed Ciotti to start denying personal, legal, and inhouse mail. This CO then passed another inmate Montgomery 9:7617. a personal grievance response from camp Hill pursuant to sexual assault with Plaintiff's name and inmate number on it. Montgomery then asserted "this is not for me." C/O Ciotti asserted "I know I read it then flush it." This act exposed Plaintiff to be targeted by other inmates.

Around 2-15-18 after Plaintiff gave official kendrick and maxwell a written acknowledgement of what took place between 2-2-18 - 2-8-18 Plaintiff notice officials he claimed was responsible started to toss out trays, legal, personal, and inhouse mail. on 2-20-18 official CO Plocinik put Plaintiff grievance in the mail box. See Exhibit VI-0. Apparently there are different boxes for grievances, sick calls, and mail. It is policy that inhouse mail, out going mail and sick calls do not get mixed up, because different people pick them up. Plaintiff grievances and sick calls were not getting responsed to, because officials like CO Delon and Plocinik was putting them in the mail box. Plaintiff asked C/O Plocinik why he was doing what he was doing, and he asserted "because your rat and now you got the look not. For 15 business days your grievances and sick calls will go missing if we put it in the mail box." "The mail lady works for us!" Plaintiff then wrote a grievance and told Sgt. Heacler, in which Heacler called Plaintiff a rat and to snitch a razer.

Because of this custom Plaintiff started sending out certified mail and return receipt after he notice he was not get personal mail from family, legal mail was delayed and was being directed to "camp Hill first", his out going mail was matched his prison account statment. Brown send out tracking # 70153060001134835116, in which were motions asking for court order to have his legal paperwork in the cell with him and to get a legal phone call to call his Criminal lawyer, and also to send his status sheets of his current cases. It is policy the courts send you your status seat when requested. Plaintiff never got a response. Plaintiff got a court order stambing that defendants were dismiss from a case see Brown v. Wilkes-Barre Police of 6-2255 because he had fail to respond to defendant's motion to dismiss. Plaintiff removent sending an answer out back on 1-22-18 while in a camera cell. Plaintiff then send out a one page letter certified directed to the Judge on 2-26-18 in which should only cost $6.67 for postage and certified return receipt when a letter weights less then a ounce it is only $.47.00 in postage in which 1 sheet of paper is. The tracking # was 70153060002413183522. Plaintiff was deprived his return receipt he payed for. When Plaintiff got his monthly statment it showed he was charged $11.77 for a one page letter. In which was proof that something els that had some weight was send with the one page letter on 2-26-18 see Exhibit II-1-0, also see Exhibit II-0.

On 5-24-18 CO Plocinik was told to pass out mail in which was a motion a dismiss from a civil case 14-3587. Apparently every other page was missing from his motion, causing a delay in response. Brown is claiming that this same custom is causing injuries pursuant to legal copys and law library. Sgt. J. Rhodes, and Sgt. Moore are in charge of legal copys. It is custom they come around every Tuesdays and Thursdays, they then take the legal work to the bubble and it sits for dak before it is taken to the law library for copys. This custom exposes Brown legal work to be read, or go missing.

Both Rhodes and Moore picked up Brown's copys on 2-19-18 they came back to Plaintiffs cell asking his questions about his legal cases and sending grievances against other officials. They told Brown they did not like the fact he was writing so many grievances. They also started to harass Plaintiff about his sexual assault claims against other officials. They asserted to Brown they had alot of information because they was reading his legal paper. They then asserted they would make Brown like a living hell if he did not stop rating.

The next day on 3-21-18 c/o Garlin did take deprived Plaintiff of his tray because he was told to do so by Moore on 3-22-18 Plaintiff again Plaintiff legal papers were picked up for copying and locked to the bubble, and again he recieved treats from Moore and Rhodes. Brown was then deprived of his dinner tray, on 2-24-18 when Brown legal papers were passed back he was missing a motion in opposition, when Plaintiff ask both Moore and Rhodes were his opposition was they told Brown to "suck a dick!!"

Brown then told LT. Honce and Mr. Kauffman that the policy needed to be Change because he was getting retaliated against, but nothing was done, on 5-29-18 C c/o Fochman passed back Plaintiff's legal copys and he was missing an opposition addressing Grove Hill defendants in a civil case. This raised a delay in Plaintiff's case. Their was also grievance missing. Plaintiff then told the unit Manager Kendrick this after told Brown "your lucky you even getting any copys back "raf" Plaintiff has yet to attent the law library in which is hurting his cases. Plaintiff has been to the law library one time in 150 days. This is hurting his ability to research in both his cevil and criminal appeals.

A inmate Jackson CF3191 another Jackson meat Plaintiff in the R.H.U. he was also subject to his personal mail and legal mail being confiscated. This inmate was litigating the jail for excessive force. He was also fighing a criminal appeal. His criminal appeal was denied because of lack of research. He was denied of the law library. He would have other inmate write his family and they would response, but when he wrote them they claimed they letter, got his letter. Another inmate Blair tole grievances on officials. Blair filed a grievance agens c/o Fochman for spitting in his tray, he was then deprived of trays because the same is was left to pass out trays.

Plaintiff has an alternative to the unlawful custom of having c/o's pass out legal personal and inhouse mail, as well as grievances, requests and ack ralls; in which officials inmates are writing up are passing their paper work out, as well as trays. All legal mail while in population or in the RHU should be handed out by a high ranking member and also responsible member from the security department that does not work the units. This could stop or give the officials that do work the blocks less power in using an inmate legal mail as a tool to retaliate. If you have a pending write up or harassment case against a officials they should not be made to pass out trays or touch any personal or inhouse mail that has your name on it.

Grievances, request slips response while in the RHU can be handle by your counselor or unit manager because inmates have a lot of personal infow on the grievances and requestes in which alot of time a grievance is written against officials that are working that block, their would be no need for officials thats working the block to handle the grievances. Pursuant to the law library and legal copys, A worker from the law library should come and grab the legal copys and the inmate that need the copying, a copyer shoul be put in the mini law library, were a copy or copys could be made infront ll inmate; that way the inmate would be sure their are not reading of his legal even nor would inmate's legal work go missing. Their should be a legal helper that come down every week to answer questions and make sure inmates are getting to the mini law library. that would clearly protect the inmate.

Plaintiff is claiming because of officials failer it is arduous to keep up with his cases in which he can clearly show injuries.

# Count X Inadequate Access To The Courts

Plaintiff is bringing his claims of inadequate access to the Courts against Policy makers Unit Manager Kendrick, Kauffman, Sgt. Moore, Sgt. Rhodes. The Supreme Court established that prisoners have a fundamental right to access the Courts in a series of important cases. Johnson v. Avery, 393 U.S. 483 (1969) Bounds V. smith 430 U.S. 817 (1977). this right allows prisoners to file a section 1983 or Bivens claim, habeas petitions, or to work on pending criminal cases. The right is so fundamental that it requires a prison to fund a way for you to have meaningful access to the court, the right however has one very serious limitation that Comes from a Supreme court case called Lewis V. Casey, 518 U.S. 343 (1996). This case states that a prisoner cannot claim he was denied his right of access to the courts unless he

Shows an actual injury. Prison Officials has a custom in which inmates is force to hand over legal papers for copying. These papers then go into the bubble were ficials are free to read and make their own copys or even confiscate legal papers. This policy is putting an impairment on Plaintiff. Defendants are gaining an clear advantage in reading Plaintiff's legal materials, see. Cody v. Weber, 252 F. 3d 764, 8th cir. 2001. By reading Plaintiff's legal papers defendants would know what and when to confiscate his legal papers. Like on 2-24-18 when Plaintiff Opposition went missing causing multiple defendants to be dismiss in case Brown v. Savado 9016-4706, because Plaintiff ran out of funds for copying, and paper to write on in which he was unable to write another motion on time to prevent injuries to that case.

Plaintiff is claiming his access to the courts is also limited because of, defendants Policy DC-ADM 803, section 2 of the policy pursuant to Anticipating postage for indigent inmates and copying, this section of the policy discriminates against indigent inmates, and put a restraint on Plaintiff's ability to file Petitions and conduct research. see. And in Benjamin v. Kerik, 102 F. suff. 2d 157 (S.D.N.Y. 2000 the court found actual injury when a prisoner could not locate, cases cited by defendants in the Prison law library, and thus could not fully respond to his adversary's motion. In Brown's Case this policy reads, An inmate indigent may anticipate on is or her's account, postage for legal mail, to include. Exhaustion of Grievances, and copying her's of up to $10.00 Per Month. "Under no circumstances, shall the Business manager designee approve requests in excess of $10.00 Per Month."

Because Plaintiff is Pro se in an criminal appeal and multiple civil litigations, this policy has him limited and under restraint from filing motions, researching, and conducting discovery. Plaintiff is caught in the middle of responding to adversary's motion at any given time from 5 to 7 different law firms. This policy also only permits 100 sheet of paper a month Plaintiff had to write an extension of time motion on request slips, for his criminal appeal case because he had ran out of paper. Plaintiff is unable to conduct discovery for both Brown v. Phillips 16-cv-2566 and Brown v. Moore 16-7778, the Jail denied Plaintiff copying and case laws. Plaintiff was unable to make copies of his Production of documents motion, his interrogators motions because he had ran out of allowance.

Plaintiff was also unable to put together an adequate motion for appeal for Case 17-3174 because of lack of research. In which defendants were dismissing stemming a summary judgement. Although all the defendants were not dismiss Pursuant to that case, Plaintiff was unable to research other cases, were defendants had appealed District Court's order too, summary judgement, although it was not a final decision of the District Courts. All because Plaintiff had ran out of allowance for the month. Plaintiff appeal was dismiss for lack of jurisdiction see, roders & Lyb and v. Livesay. 437 U.S. 463, 467 (1978). Plaintiff was then unable to file a Petition for rehearing in the month, of, February 2018 because he had ran out of allowance. Plaintiff was also unable to file for writ of Certiorari.

On 5-28-19 Plaintiff asked the law library for 62 copys through an Indigent request to Anticipate money for Photocopying charge. Inclose was motion in opposition directed at Diorio & Sereni LLP Pursuant to defendants Moore, Carter, Byrans .... Plaintiff explain that he only had 14days to respond to this motion in which was up, he was denied copys from the law library. That denial caused a delay in that case. Defendant Raymond Brown and Jeffery Sobel was dismiss as defendants stemming from an court order on 5-23-2018. As uncontested, apparently Brown again ran out of postage copys ... Pursuant to DOC DC-ADM 803: Brown was unable to make copys to send out, an motion in opposition to his adversary's motion. Brown was also unable to research Pursuance to his motion in, opposition. The Business office started to conspire with officials in fixing Plaintiff's Monthly Account Statement. Plaintiff Monthly Account Statement from 05/01/2018 - 06/01/2018 dose not show his transaction, for $25 copys on 5-8-18. The Monthly Account Statement makes it look like Plaintiff still had allowance left for Postage and Copying.

On 6-4-18 the Business office refuse to send out Plaintiff's Manila envelope in which inclose were answers to defendants motion to dismiss for case 17-1158 Brown v. Chester county their, reason being Plaintiff account was in the red. They claim that Plaintiff had use most of he postage's, allowance for the month of June 2018. This refusal to send out Plaintiff motions is the U.S. District Courts caused a delay and could cause another dismissal in Plaintiff's case.

Plaintiff first trip to the RHU while at SCI Huntingdon, he was deprived his legal box from 12-1-17 through 12-28-17 in which Plaintiff did not have any of his legal work with him during that time. Plaintiff was unable to contest summons for case # T-1135 in which delay the case. Plaintiff had just goten summons of the USM 285 form the form used to for summons. See Exhibit S1-S. Plaintiff was deprived his legal papers or box because he would not sign the inventory sheet while in the property room because he notice he was missing some legal property. See Exhibit B1.

During Plaintiff's next trip to the RHU. 01-22-18 plaintiff again was deprived of his legal boxes. Plaintiff did not get a property exchange untill 2-15-18. Plaintiff notice he was missing two boxes of legal work see Exhibit W1-5. Brown then denied legal papers from the one box he had left in the property room because he did not bring out legal papers to exchange; this was the same time Brown, was afraided by co-plocinike Brown two legal boxes that was missing had a lot of Exhibits from his Criminal appeal, and Exhibits of many of his civil cases including Statements, grievances and medical records, alot of information that would help him at trial.

Plaintiff is also asserting his access to the courts is limited because he is being deprived of the RHU law library. Plaintiff has only been admitted to the law library 1 Time and has been in the RHU going on 300 days in which is impairing his ability to file claims and preventing Petitions from being ruled upon. see Coley v. Chester Police Dept. 2003 U.S. Dis LEXIS 15474 (E.D. PA, July 30, 2013) or Trujillo v. Williams, 465 F.3d 1210 (10th cir. 2006). This denial of access is affecting my pending litigation, and impairing my ability to research answer to adversary's Motions because of lack of research. See Brown v. Cit. 16-1640 defendants motion to dismiss was granted stemming from a court order dated May-22-2018, Brown is unable to research numerous case laws and primary reasons for the case being dismiss with out prejudice. This has imposed atypical and significant hardship on Brown in relation to the ordinary incidents of Prison life.

Prisoners have a Constitutional due Process right to access to the courts. This right of access must be adequate, effective, and meaningful. It requires Prison authorities to assist inmates in preparing legal materials by providing assistance from individuals with legal training, access to a law library, or some combination of both. Further, to bring a successful claim, the Plaintiff must show that the denial of access affected his impending litigation in some manner.

# Count XI Procedural Due Process

Plaintiff brings Procedural due Process claims against Policy makers John Wetzel, Kauffman, and hearing examiner S. Ellenberger, P.R.C.

For a prisoner, a deprivation of a legally cognizable liberty interest occurs when the prison imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Lesser restraints on a prisoner's freedom are deemed to fall within the expected perimeters of the sentence imposed by a court of law. If the Prisoner has no protected liberty interest in remaining free of disciplinary custody, then the state owes him no Process before placing him in disciplinary confinement. Sandin v. Conner, 515 U.S. 472, 484, 132 L. Ed. 2d 418, 115 S. Ct. 2293 (1995).

In deciding whether a protected liberty interest exists under the Sandin standard the court considers the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. See Shoats v. Horn 213 F. 3d 140, 144 (3d Cir. 2000) In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court found that, when Prisoners lose good time credits because of a disciplinary offense, they are entitled to 1) written notice of the disciplinary violation; 2) the right to call witnesses at their hearing; 3) assistance in preparing for the hearing; 4) a written statement of the reasons for being found guilty; 5) a fair and impartial decision-maker in the hearing.

Plaintiff is claiming officials at Camp Hill forced a write up on his on 9-28-see class 1 #35 refusing to obey order and #15 threating an emplovee, all because he had filed complaints or grievances against SCI Zimmerman and Smith, Brown's Procedural Due Process were then violated; officials ignored Plaintiff injuries in which his hand a stuned on the gate by "Myers" the same actor that write Plaintiff up for, alledgedly threathning him and having an "aggressive stand". Although Brown was only in the RHU for 29 days; Brown was defrauded witnesses at the hearing, assistance in preparing for the hearing the hearing was conducted through the door; the hearing officer then lied Pursuant to what Brown told him about the write up.

0958

Prison officials "imposed atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life. See Sandin V. Conner 515 u.s. 472, 84, 132 L. Ed. 2d 418 115 S. ct. 2293 (1995) Brown was subject to two sexual assaults at the hand of his cellmate after official LT. Gidea Put Brown in one cell then took him out and put him in a cell with an inmate Biter a history of violence and sexual assaulting his cellmates all because in LT. Gidea words Brown was a fagit litigater rat, and a smart ass!" Brown suffered serious injuries that was ignored by security and the medical department.

Lesser restraints on a Prisoner's freedom are deemed to fail "within the xpected perimeters of the sentence imposed by a court of law. If Brown had no rotected liberty interest in remaining free of disciplinary custody, then the state owed him no process before placing him in disciplinary confinement.

Plaintiff next write up was on 12-1-17 at SCI Huntingdon. class 1 #35 refusing to obey order and #17 Threatning another person. Plaintiff was written up after official attempted to take him out of a single cell and put him with a cellmate because he was filing grievances on members of security for forcing him to write a statement asserting he will be safe in population and also forcing Plaintiff to sign a bubble bunking sheet. Plaintiff accepted on 12-1-17 he was having mental issues after the last sexual assault he suffered while at camp Hill in which he was having suicidal and and homicidal thoughts out of fear of being a victim or another sexual assault See Exhibit P1-16. Plaintiff was deprived the right to call witnesses at the hearing an assistance in preparing for the hearing. Plaintiff was written up this was two days later while in the RHU for the something See Exhibit P1-16. At no time did Plaintiff refuse a cellmate, at that time he assetly to remove that he was having no mental issues and his symptoms of hearing voices, homicidal and suicidal thoughts. Both hearings was held together. Plaintiff was given 30 days for each write up in which were concurrent. Plaintiff appealed both write ups to P.R.C. and Superintendent Kevin Kauffman, then to central office. All appeals were denied. During this time Plaintiff was put in a cell for dayts in which he was niked and the air was turn all the way up. This custom is so popular it has a nakename "Bluesing." After this Plaintiff was put in a cell by Kauffman and other officials in which he was subject to deplorable condition their was human waste all over the floor and smeared all on the wall. Plaintiff was also deprived of his trays during this time. Plaintiff was force to stay in this cell for over 20days. Plaintiff complained to prison officials about the conditions, but they did nothing.

Plaintiff is also challenging his next few write ups under Procedural Due Process. On 1-22-18 Plaintiff was wroten up by N. Moore for refusing to obey order and Threatning an employee, Brown is claiming this was another false, write up in which officials lied just to get Brown back to the RHU because he was writing grievances and was a "Whistle Blower". See Exhibit D1-4. Officials then denied Brown of his hearing, or to call witnesses, and his right to prepare for the hearing with an assistance. Plaintiff was found Guilty for disobeying order and the threatning an employee charge was dismissed. See Misconduct #D081229. Officials imposed a 30day sanction on Plaintiff. Exhibit A - I - 6.

On 1-25-18 Plaintiff was written up again for refusing a cellmate. Plaintiff was deprived of an hearing, and a chance to call witnesses, and an assistance to prepare for the hearing. A 15 day sanction was imposed consecutive to his current law. See Misconduct #D031736. Plaintiff was subject to assaults and sexual assaults at the hand of his cellmate while in the RHU. Officials were aware that Brown was a homosexual and would be a target because of his feminine charcteristics. Not only that Officials were aware that Plaintiff Cellmate "Allen" was on his enemie list. Brown was force in a cell with this inmate, Brown was then assaulted infront of officials when he was put in the cell because inmate "Allen did not want him as a Cellmate, the assaults dont stop. From 2-3-18 through 2-8-18, Plaintiff was subject to multiple sexual assaults and assaults in which officials conspired to keep Plaintiff in the cell with this "monster".

Allen attemted to rape Brown on 2-6-18, Brown told officials but nothing was done. on 2-7-18 Plaintiff was sexually assaulted and officials was aware but they did nothing to remove Brown away from his attacker in which was Contruary to Policy. Brown was again sexually assaulted later that night or in the middle of the night. In Sandin V. Conner, 515 u.s. 472 (1995) the court found that

Unless Hardship on the inmate, in relation to the ordinary incidents of prison life, then there is no right to the five procedures laid out in Wolff. Brown is claiming he was treated differently than the way most prisoners were treated, and the treatment was ass. awful.

Plaintiff next write up was Misconduct DO31777 see Exhibit I-6 on 2-8-i Brown was written up by K. Myers class i #35 Refusing to Obey an order. Apparently told B. Harris and other c/o's that he was not going back into cell 108 because he had been sexually assaulted and the actor asserted their would be more assaults if he came back into the cell. Plaintiff was told to go back into the cell after or during showers in which he refused and made officials aware of why he refused. Although Brown had a hearing for this write up he was denied a chance to call witnesses and to have a assistance help him before the hearing. Plaintiff was found Guilty after the hearing examiner asked him if he refuse to go in the cell, in which he stated "Yes" then told him why. At no time did Brown Plead Guilty or Plea Guilty. Plaintiff was given 30days. Consecutive to the time he was already doing.

Although Brown was put into a single cell during this time he was deprived medical attention and left in pain and was deprived of Pain production for his injuries. Brown was also subject to death threats and was harassed by other inmates after he meat with the state police pursuant to his claims. Officials keep Brown on the same unit as his Attacker, and inmates would beat on Brown's wall all hour of the night calling him a "gay rat". Officials deprived Brown of his trays. Durin this time inmates that was in a gang with the Attacker Allen, was sending death threat directed at plaintiff, asserting "If you go back to Population we was send you out in a body bag". Plaintiff told his counselor and other officials this, but nothing word

Brown next write up was on 2-13-18 by CO. Piorinik see Misconduct # DO31797 Brown was charged with class 1 #35 refusing to obey an order after Piorinik ask him to take a cellmate in which Brown refused. Brown was refused a hearing, Brown was denied the right to call witnesses. Brown was denied assistance in Pretaring for the hearing. Brown was foun guilt on the write up in which 30days was imposed. Brown Appealed this a Gain see Exhibit I-13. P.R.C. and superintendent Kauffman claimed their Policy does not require Brown to be given a single cell because he was sexually assaulted, apparently there was nothing wrong wi co. Piorinik write up. Brown appealed to central office. The DOC then wrote Brow asserting he Plea Guilty to both Misconduct DO31777 & DO31797. Apparently Brown never had a hearing for Misconduct # DO31797. he was found guilty with out going to a hearing. he was never asked to go to a hearing.

Brown next write up was on 3-21-18 when C/o Fachtman told Brown he would be going to Population on A-A to cell up with Allen. Brown Refuse. The court should note that C/o Fachtman was away of Brown's sexual assault claims because he was one of the officials that conspired to keep Brown in the cell with inmate Allen. After Brown was sexually assaulted on 2-7-18 he came to the cell door asserting "We don't make 'courtesy moves'". This CO was also aware that Brown was getting death thearts from other inmates asserting if he go's to Popula he would be send out by in a body hag". This official was away that Brown meat with state police and members of Allen Gang and Allen did not like that! CO Fachtma came back to Brown's cell door asserting "I was (scribbled) Joking Allen is not in Population yet, but, you will be getting a cell, in population, on the block you came from. Brown a gang told Fachtman he could not go to Population berouse of the death threats he was getting from Allen's gang member friends. Not only that, that inmate Jackson Brown's old cellmate, in which was on Brown's Enemie list was on that same block and was in Allen's gang. See Misconduct # DII3453 or Exhibit WI-5 Plaintiff was given a class I write up #35 for refusing to obey an ord Because he refuse to go to Population, the same block he left in which he had an enemin. Again Brown was denied a hearing. Brown was deprived to call witnesses or assistance Prepaing for the hearing. Brown was deprived Appeal Pakers to appeal his write up. Brown was given 30days D.C. time by hearing Examiner S. Ellenberger.

Brown next write up came on 4-1-18 when CO. Zowinsky told him he would be going to Population on A-A block. This C/o also told Brown that inmate Allen was no out the hole and was on A-A block. Brown refuse teg go to Population and he was written up see Misconduct # DO48747 or Exhibit WI-5 class 1 #35 refusing to obey an order. Again Brown was deprived a hearing, and denied a right to call witnesses, and

he was denied these rights to call witnesses or appeals Expers. Brown then attempted to appeal this write up after he was given 30days and he would not get a response from P.R.C. or Kauffman.

Brown next write up came from LT Maxwell on 4-26-18 for class 2 large 42 Ying to an Employee. Apparently Maxwell claimed he conducted a P.R.E.A investigation and the investigation was "Unfounded". Maxwell did not give any details of how or why his alleged investigation was "unfounded". He did not put any witnesses down, see Misconduct # D08010. Brown was again deprived of a hearing, a right to call witnesses or appeals Expers to appeal the write up. Brown was given 30days DC. Time... Brown is claiming that these right ups were contrary to policit and was violating his due process by way of procedural. The write up's from 1-22-18 through 4-26-18 were clearly forced on Brown out of retaliation in which will effect his good time, and is also a way to keep Brown in the RHU on DC. status.

Brown is claiming his Procedural Due Process Rights were violated under Wolff v. McDonnell 418 U.S. 539 (1974) and under Sandin v. Conner 515 U.S. 472 (1995). Under Wolf the Supreme court found that, when prisoners lose good time credits because of a disciplinary offense, they are entitled to 1) written notice of the disciplinary violation, 2) the right to call witnesses at the hearing, 3) assistance in preparing for the hearing, 4) a written statement of the reasons for being found guilty, and 5) a fair and impartial decision-maker in the hearing.

Brown did not have a fair and impartial decision-maker in the hearing because Hearing Examiner S. Ellenberger was aware Brown was being deprived the write up. After these hearing to defend himself and nevertheless in ignored the fact and imposed sanctions on Brown. When Brown was given the chance to attend the hearing, he deprived Brown's witnesses, he also deprived Brown from assistance in preparing for the hearing. Brown had a liberty interest to not only to be in the hearings but also to call witnesses and also a fair decision-maker at that hearing.

Brown is claiming that there is a link between the hearing examiner's inadequate customs at these hearing and Brown getting deprived to attent the hearing to Brown's 189 days and counting stall on Disciplinary custody, in which Brown is being deprived of things inmates on Administrative custody or in mates in population have access to; such as food, Visites, Cigaretts...
see Mitchell v. Horn 318 F. 3d 523, 2003 U.S. APP. LEXIS 4533.

The second important supreme court case is Sandin how-ever Sharply limits the decision of wolff and sets a higher standard that an inmate have to meet to show he should have more liberty interest. see Sandin v. Conner 515 U.S. 472 (1995). The courts in Sandin found that, unless the punishment received caused "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" then there was no right in the five procedures laid out in wolff."

Brown is claiming he was subject to hardship, from his first write up with the DOC. on 9-28-17 in which he was subject to sexual assaults while at camp Hill in the RHU and getting deprived of his trays. To Brown's next write up on 12-1-17, Plaintiff was subject to being put in a cold freezing cell for days while in i-cell, this custom is so common it has a nakename "Bluesing." Plaintiff was then put in a cell that was smeared with feces. Brown next few write up's caused him an extended stay in the RHU under Disciplinary Custody. Plaintiff was wroten up on 1-22-18 in which he was falsely charged with a misconduct out of retaliation. Plaintiff was then put in a camera cell as his mental health issues were ignored. It was then subject to other write up's in relations to refusing a celly. Plaintiff was forced in a celly with a known enemie in which he was subject to brutal assaults and sexual assaults from 2-3-18 through 2-8-18 causing him physical and mental injuries.

Officials failed to attend to Plaintiff injuries after conspiring to keep him with in the cell. Brown was subject to more write up's for refusing a celly after he was broken away from his attacker on 2-8-18. During this time Brown was subject to retaliation after he made state police aware of his claims. Officials deprived Brown of many trays, recreation, showers. Plaintiff was also subject to excess force while in the property room causing him injuries. Brown's physical injuries surfered could support his emotional injuries. Brown is alleging officals actions stemming from his write up on 9-28-17, 12-1-17, 1-22-18 and through his 189 day stay in the RHU after 1-22-18 in which he was also subject to deprivation, Pain in which all put his "life and Health in jepard!!"

Brown is claiming he has an liberty interest to be from from such regulations and prison conditions while in administrative segregation. Prison conditions in Brown's case clearly imposed on atypical and significant hardship, on Brown.

Brown is claiming his 14th Amendment was violated by P.R.C. or Program Review Committee. Brown is asserting that the Program Review Committee did not fulfill it's mandate to "interview him every 30 days pursuant to his disciplinary custody cases, in which it's a commonwealth of P.a. Dep't of corr. Disciplinary and Restricted Housing Procedures. See Policy Statement DC-ADM 801 VI (A)(9)(Sept. 20 1994).

The same group called other inmates from Brown's Housing Unit for interview every 30 days, like a inmate flowers that was next door to Brown. Plaintiff is claiming this move was deliberate and motivated by Unit manager Kendrick. Kendrick was aware Browns claims against him. Kendrick is also the Unit Manager and P.R.C. member. Plaintiff asserted to Brown, through the doors, that he would make sure P.R.C. dose not meet with Brown to adress his issues. Plaintiff also wanted Brown to go to population after he was aware that Brown had inmates sending him death threats, in which they were members of a violent gang called the "LIFERS" they all had life in which one of the members, Allen had sexually assaulted Brown.

Brown gave his counselor Richeals, a death threat letter from one of the gang mbers to make copys, with a statement from an inmate Ivan Castillo LS3066, in which this inmate wrote that members of the gang told him that Brown is a rat and if he was raped by Allen and if he go's to population he would be attack by inmate who murder "Killa" Allen and other gang mbmembers. Brown Counselor confiscated both letters on 2nd of may and told Brown that Kendrick and maxwell had it. Brown role both cartors asking for copys, both cartors would refuse.

Brown is claiming the P.R.C. were conspiring not to meet with him so that officials could force write up's on him for not taking a cellmate and going to population. See Misconduct # DO31736. also see DO31777 Brown was written up after he told officials he would not go back in the cell because he was sexually assaulted. The Program Review Committee failed to interview him, then he was notified of a hearing and found guilty. Also see Misconduct DO31797, on 2-13-18 a Plocinit wrote him up for dis obeying order after he refused a cellmate; this was days after he was assulted by another inmate in the BHU. P.R.C. fail to interview Brown. Brown was also denied of a hearing. Also see Misconduct# DISUSS or Exhibit WI-8 Plaintiff was given a clock one write up for refusing to obey order to go to population. Or see Misconduct # DO18747 or Exhibit WI-8 after plaintiff gave his counselor Richeals two different notes pursuant to inmate planning an attack on him these notes were confiscated and so Zchinsky wrote Plaintiff up for not going to population. P.R.C. failed to interview Brown pursuant to Procedure Policy DC-ADM 801 VI Dq. Also see Misconduct # 19824II on 6/19/18 plaintiff was asked or told to go to population. Plaintiff then asked what block, officials stated Block A. A life are Housing you with inmate Allen Brown refused and told official that was the same actor that raked him. Brown is claiming these inside ups and tread and PRC is violating his Procedure due process.

# Count XII Substantive Due Process

Plaintiff is bringing Substantive Due Process claims against P.R.C. Kauffman, Counselor Richeals, G.Green, Unit Manager Kendrick, C/O Plocinik, Lt. Gomes, Lt. Grifea, superintendent Harry.

"The Protection of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity" Albright V. Oliver, 510 U.S. 266, 272, 114 S. Ct. 807, 127 L. Ed 2d 114 (1994) "Every violation of a Person's bodily integrity is an invasion of his or her liberty" Washington V. Harper, 494 U.S. 210 237, 110 S. Ct. 1028

Plaintiff is claiming he has an federally Protected liberty interests, under the Due Process clause. Plaintiff is claiming conditions while in the RHU. Violated his substantive Due Process. Conditions that are reasonably related to a penal institution interest in maintaining Prison security typically Pass constitutional muster. the RHU. is a segregated housing unit where inmates may be place for either administrative or disciplinary reasons. Inmates are confined in Solitary or near-Solitary conditions in a six-by-eight foot cell for 23 to 24 hours a day with little or no opportunity to interact with other inmates. They face reduced access to medical care, sensory deprivation, and increased suicidal tendencies.

Administrative or disciplinary detention in the RHU can occur for a variety of reasons. from a write up, or if an inmate presence in the general population poses a serious threat of life, property, self, staff or other inmates or the security or orderly running of the institution.

58

Plaintiff transfered in the D.O.C from a county Jail on 9-28-18 Plaintiff was admited into Camp Hill RHU from a forced write up. Plaintiff made LT. Gildea aware he was a homosexual and feared to be housed with other inmates. Plaintiff was force in the cell with an inmate with a violent history of sexual assaults. Plaintiff was sexually assaulted on 10-1-17 in which was witness by L.T Gildea and another C/O. Plaintiff was sexually assaulted again on 10-4-17 in which he suffered more injuries and was deprived medical attention. Plaintiff was also deprived of trays and showers during this time. Plaintiff also suffered emotional trauma, fear, and shock.

Brown is also alleging he was falsely charged with misconduct out of retaliation for filing grievances and he was known as a litiuator; because of this he was subject to violence in the RHU and deprivation. See Smith v. Mensinger 293 F.3d 641, 653 (3d Cir 2002) Brown had a protected liberty to be free from punishment while in the R.H.U.

Brown was transfered to SCI Huntingdon; then transfered back to camp Hill is talk to state police. During this time Plaintiff meet with superintendent Harry and asserted his concerns pursuant to being a homosexual and being house with other inmates. Superintendent Mr. Brown aware that his claims were causing a lot of heat in her prison. She was also aware that Brown cellmate told this superintendent and other officials he did not want to be housed with Brown, because he was a rat & a homosexual; in which he asserted "I will send him to medicin with his shit open!" Brown was force in this cell and was assault. Brown was deprived medical attention and suffered another assault after he made Harry and Frances aware.

Plaintiff meet with P.A Gomes and Paula Price on 11-15-17 he made both actors aware of his on going injuries suffered at camp Hill, fracture rib, bleeding from the Anal and external bleeding, numbleness on the left side of the head, pain in her rib area...... Gomes conducted a rectum exam against Brown's will after Brown told him he was in too much Pain that the exam would cause him more Pain and bleeding in which was the case. Gomes did not use gloves and conducted he exam in front of female and other inmates. The invasion was intrusive and it created a substantial risk of permanent injury. See Washington V. Harper 494 U.S 210 237,110 sct 1028. Brown's right to bodily integrity was violated in which this should withstand the "Physical and intellectual demension to liberty".

Plaintiff was admited into the RHU on 12-1-17 for refusing a cell & again Plaintiff was retaliated against after falling a grievance on LT. House and another staff member. Plaintiff was forced in a cell with to freez this custom is so comment it has a nickname "bluesing." Plaintiff was then put in another cell that was infested with O.C and another inmate's feces by Kauffman because he was a whistle Blower. Plaintiff was subject to sleep in this cell in which officials deprived him of his trays, legal mail and papers, showers and recreation. Plaintiff left the RHU on 12-26-17 and return 1-22-18 after offical moore forced a write up on him of threating a staff and disobeying order, or though the ating a staff was dismiss. Brown never had a hearing for this write up and was found Guilty.

Plaintiff then meet with LT. Maxwell, unit manager Kendrick, sipple, guffman and others and asserted his concerns, that he suffered from fear and shock and C/O Plonick was attempting to put him in a cell with an enemie that was also part of an violent gang called "The Liters." This inmate was extorting Brown in population with help from his friend Brown's celly inmate Erickson, the reason being because Brown was a rat and a homosexual. Officials forced Biqum in the cell with this inmate around 2-3-18. Brown was subject to multiple sexual assaults and assaults at the hand of inmate Allen during his stay in this Cell. Officials like Plonick, Kendrick, Kauffman, Dunkel teaster, Younker, Fochtman and others all conspired in Keeping Brown in the cell although they were aware and witness Brown get assaulted.

Plaintiff is claiming his liberty interest was not protected through officials action Kauffman and Kendrick was aware and Maxwell of the risk that Brown would face by being but in a cell with a violent gang member that was extorting him in population. Plaintiff also made them aware that the fact of he was a homosexua would make him a target; Brown faced strict restriction outside the context of protected liberty interest. see shoats V. Horn 213 F.3d 140, 144 (3d cir 2000)

During this time Brown wrote countless grievances in which official C. Green and LT. Maxwell failed to conduct and investigation on those matters. Green and Maxwell fail to distipline officials for their actions in which involved officials like C/O Plocinik to retaliate against Plaintiff. This C/O would deprive Brown for his trays and spit in his trays, or put his grievances in the

mail Box so he could check the cameras in relation to grievances assertions and dates of official actions, asking Green or Maxwell to check the cameras on the block. Brown request would be denied. In one grievance # 731066 Plaintiff asserted, co Plocinik came to his door and started to harass Plaintiff while he was useing the bathroom. He then told Plaintiff to rsuck on his thumb as, if it was inmate Allah's dick then stick it up his anal, after Plaintiff eat the tray that this co gived him he passed out and his his head. Inmate Ivan Castillo LS3066 wrote a statement for Brown asserting he heard this co harrsing Brown, he also wrote another statement asserting other inmates from the 'lifer gang' and told him Brown was fared and that he is a rat. This grievance was never investigated by C. Green's.

Brown grievance was denied and was told it's a P.R.E.A. grievance Brown wrote Maxwell and ask him to investigate the matter in which he refused. Brown then gived the note / statements to Counselor Richards to make copys. This Counselor then told Brown that Maxwell and Kendrick had confiscated Brown statements that if he gos to population he would be attacked and the statement in which another inmate heared co Plocinik sexually harassed Brown.

On 2-25-18 Plaintiff was subsed to an assault at the hand of C/o Plocinik and Lt. Eberling these officials cornored Plaintiff during a porperty exchange. They then started to ask Plaintiff about his sexual assault claims. Brown was then hit with an elbow to the back Plaintiff was then hit in the stomach and he started to bleed. He was hit by Plocinik with a swinging mace cani this official then started to tell how he hate homosexuals and niggers, he then grabed Plaintiff nuts and pulled on it. The act of violence Plaintiff suffered out of retaliation was never addressed by Miss Green through the grievance system, nor was it adressed by Brown's counsel Richards, or Maxwell. Brown did not get a responce from his grievances in which mo tovated C/o Plocinik, to keep depriving Brown for his trays, and other official like C/o Garlik, C/o Weyant, C/o Fochtmen to deprive Brown for food, showers rec, and to harass Brown.

Kendrick is the Unit Manager in the RHU, and is a P.R.C. Member. Brown's claims in condition of confinement claims and continue abuse in retaliation is motavited by Kendrick and P.R.C. not conducting regulations P.R.C. is failing to meet and interview Brown after his time is up from his Disiplinary write ups. This is so they can not adress Brown's issue Brown put in an order for Potectivo custody in which were ignored by P.R.C. and Kauffman. Officials actions has caused hardship in relation to the ordinary incidents of prison life.

# Count XIII Deliberate Indifference
# Count XV Negligence
# Count XX Medical MalPractice

Plaintiff is bringing claims of deliberate indifference to his serious medical need, negligence, medical MalPractice against PA. Gomes, Dr.shaikh, Kevin Broshears, Nurse Jennifer, Dr. Edwards, Dr.steve, PA. King, Nurse Nikie, Nurse Trice, Nurse Hallie, Dr. Kevin Kollman, Paula Price, Cousin, Goss, Bob, Lisa Beth. As a general matter, the Supreme court has determined that failure to provide adequate medical treatment violates the Eighth Amendment only when it results from deliberate indifference to a prisoner's serious illness or injury. Estelle v. Gamble, 429 U.s, 97, 105 (1976). In order to state a claim that the medical care provided by the defendants violated his constitutional rights, a prisoner must plead that his medical needs were serious and that prison officials were deliberately indifferent to those needs. Inmates of Allegheny County Jail v. Pierce, 612 F.2d, 751, 762 (3d Cir 1976). A medical need is serious if it is "one that has been diagnosed by a Phikician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Woloszyn v. County of Lawrence, 396 F.3d 314, 340 (3d Cir. 2005)

To state a complaint must establish 1) the violation of a right secured by the Constitution and laws of the United States; and 2) that the alleged deprivation was committed by a person acting under color of law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 affords no substantive rights to Plaintiff, but instead, merely "Provides a remedy" for deprivations of rights established elsewhere in the Constitution or federal laws." Kopec v. Tate, 3 61 F.3d 772, 775-776 (3d Cir Pa 2004).

The Eighth Amendment Prohibits "deliberate indifference" to a Prisoner's serious medical needs. Estelle v. Gamble, 97 S. Ct. 285, 291 (U.S. 1976). To state a cognizable claim under 1983 the Plaintiff must allege (i) a serious medical need, and (ii) acts or omissions by Prison officials that indicate deliberate indifference to that need." Natale v. Camden County corr Facility, 318 F.3d 575, 582 (3d Cir 2003). Mere allegations of medical malpractice are not sufficient to state a claim under 1983.

Under Negligence and Medical Malpractice, Pennsylvania law on negligence and in particular the law on breach of a duty of care is explained in detail in the case of E.J. v. Tri-County Big Brothers/Big Sisters Inc. 692 A.2d (Pa. Super 1997). The elements of a cause of action based on negligence are a duty, a breach of that duty, a causal relationship between the breach and the resulting injury, and actual loss. Burman v. Golay & Co. Inc. 420 Pa. Super 209, 616 A.2d 657 (1992); Casey v. Geiger, 346 Pa. Super 279, 499 A.2d 606 (1985). When considering the question of duty, it is necessary to determine "whether a defendant is under any obligation for the benefit of the particular Plaintiff, and, unless there is a duty upon the defendant in favor of the Plaintiff which has been breached, there can be no cause of action based upon negligence." Hoffman v. Sun Pipe line Co. 394 Pa. Super 109, 114, 575 A.2d 122, 125 (1990).

To prove a duty for ordinary negligence or medical malpractice, plaintiff must show that the defendants had a duty to the Plaintiff under the circumstances and breached that duty.

On or around 08/09/2017 Plaintiff was admitted to camp Hill; he meal with an unknown medical official in which he asserted his on going medical condition; nothing was done for Plaintiff. Plaintiff was then housed on the old side of the jail where there was no ventilation to blow air in the middle of the Summer. Plaintiff asserted his concerns to an unknown nurse around 08/18/20 telling her it was hotter than "Ozone Layer" in the cell and he was having a hard time breathing. Plaintiff concerns were ignored.

On 08/22/2017 Plaintiff had symptoms of a heat stroke as he attempted to walk to the gate he collapsed. Apond awakening Plaintiff noticed he had chest and head pain, he then told a sgt. Zimmerman he needed medical attion again his request were ignored. While Plaintiff was walking the hall on the way to his cell he ran into a Dr. Shaikh. He told Dr Shaikh that he was just admitted, the D.O.C. and that he was not on any medication, he also assured that he had an concurring heart condition in which he was diagnosed with while on the street; Brown claimed his condition was causing him acute, servere pain and or sensitive sharp pain through the heart area; Brown also asserted the last time he was hospitalized his cardiologist told him that his heart was not pumping blood or enough blood to supply the body tissues adequately in which put Plaintiff in a stage of cardiac arrest; Brown predicated that the last institution he was in was depriving him medication for his condition and consistant electrocardiogram as required, making his injuries to worsen.

He also made Dr. Shaikh aware that he suffers from chronic asthma attacks and that he did not even have a respirator. Plaintiff then stated that he had been stabbed in the eye and, as a result of, officials deliberate indifference he has a stigma in the lens of his eye causing distortion, or preventing light rays causing poor eyesight and sharp pain, double vision, and that officials at Brakerford did nothing for him. Plaintiff asserted to Dr. Shaikh that he had old officials at the door at Camp Hill but nothing was being done, in which on 08/22/2017 he suffered a heat stroke like attack, falling and hiting his head; aI pond awakening he told a sgt. Zimmerman and he was deprived medical attention. Plaintiff made it clear that his head was still in pain see EXhibit: A-C-1-2

Dr. Shaikh went to his computer and looked up Brown's medical file and asserted asserted that his back, nose, leg and Asthma was documented, but there was nothing in the computer about a heart condition or eye condition. He then stated that it was custom that nurses would not log serious injures or condition unless the inmate had a court order or outside medical insurance to get treatment.

Dr. Shaikh then told the Plaintiff his medical issues were indeed serious that he would need a court order to get treatment. Dr. Shaikh did nothing for Brown, not even putting him down to see a nurse for pain medication. Plaintiff's head pain was never examined. Dr. Shaikh actions showed deliberate indifference. Dr. Shaikh was also negligence to Brown's injuries in which he had a duty to treat Brown and left Brown's injuries untreated asking him for a court order.

Around 10/5/17 Plaintiff meat with a nurse Jennifer through the door while in the R.H.U. at Camp Hill. She asked why Plaintiff was talking low in which he replyed; I was sexually assaulted by my cellmate and I told cos about nothing is being done and the attacker is currently sleep I don't want to wake him up!" Brown stated his on going symptoms pain in ribs, and nose, ankle pain head and neck pain. She then told the Clo"? can see contusions on his face; we have to pull him out!" He then told nurse Jennifer that he was bleeding out the anus and it would not stop. She again told the Clo "we have to pull him out"

The Clo then asserted we have orders not to; This nurse then told Brown I can't help you and walked away. Plaintiff again meat with nurse Jennifer was on 11/1/17 after he was assaulted by his inmate "Willson" Plaintiff told nurse Jennifer that he had come back to camp Hill and was housed on Rblock and that he was sexually assaulted and just suffered more injuries because he was forced in a cell will an inmate that did not want a homosexual inmate in the cell with him. She stated she remember Brown; She then asked it all the blood on Plaintiff's colthing was his blood in which Plaintiff asserted yes.

Apparently blood was still pooring out of Plaintiff's nose and would not stop. Jennifer then ran off and grabed other officials, in which they all conspire and deprived Plaintiff medical attention. At no time did nurse Jennifer take the time to evaluate Brown's injuries. Plaintiff was send back to his housing unit still bleeding. Brown is bringing count XIII, Count XV and count XX against nurse Jennifer for depriving him treatment.

Plaintiff also meat with both nurse Bob and nurse Lisa while in the R.H.U. at Camp Hill. Plaintiff first meat with Bob after he had meat with Jennifer, telling him he was being deprived medical attention and the his on going injuries were from a sexual assault at the hand of his cellmate. Again Bob asked the officials to pull Plaintiff out the cell in which they refused! Nurse Bob then cming back to Plaintiff cell door again asking what his injuries were and he asserted nubless on the left side of his head, and he was bleeding from his anal in which he was in so much pain he was unable to sit. Groin pain, Hip Flexcor pain, back pain, ankle and leg pain.

Although Bob wrote all this down he did nothing for Plaintiff. Before wal ing off he asserted "Sorry Bud theres nothing I can do for you!" "this is a bad place to be and one of the worse in the state!" Again Brown was deprive medical attention by nurse Bob leaveing him in unwanted pain. Plaintiff then wrote a sick call on 10/7/17 see Exhibit A-E1-2. Plaintiff next meeting with a medical staff was with nurse Lisa. At this time Plaintiff was in the cell by himse he told Lisa what he had told Bob and Jennifer. He asserted he was in alot of pain and would like medimation. Lisa told Brown "I really want to help but they wouldn't let me. Again, another medical personal did nothing for Plainti.

Because Society does not expect that Prisoners will have unqualitied access to health care; deliberate indifference to medical needs amounts to an Eighth Amendment violation, only if those need are serious." Hudson v. Mcmill, 100 U.S. 1251 S. ct. 995, 1000 (115,1992)(citing Estelle, Supra) Brown told Lisa and Bob both his serious Medical issues that he had suffered an sexual assault at the phand of his cell'/ not one but two. Both, Bob and Lisa, were free to ignored Plaintiff injuries, because Security told them he's find. Officials actions showed Deliberate indifference.

Plaintiff also meat with Dr. Edwards while in the R.H.U. through the door. At this time, Plaintiff was in So much Pain he was crying. Edwards asserted that Jennifer had told him about what happened but, it was a custom that it's Security over treatment while in the hole; that they can't really treat inmates while they were in the R.H.U. He told Brown, he could do nothing for him until he gets out the hole. Plaintiff told Edwards all his Pending injuries in which Edwards seemed concern but did nothing to follow the medical regulations; pulling Brown out the cell to evaluate him. Plaintiff told Edwards that the nubless on the left side of his head, would not go away; this was from hiting his head. Plaintiff also told Dr. Edwards he could not sleep or even sit because of his pain and symptoms; nothin was done for Brown.

next meeting with Dr Edwards and also with Dr. Steve this was 11/1/17 Brown also meet with Deb At this that Plaintiff asserted to Dr. Edwards, Dr steve, and Deb that sgt. S.t. Leleux had send him down after n assault at the hands of his cellmate willson. They asserted Jennifer just told B. Brown then asserted that he was the inmate that was sexualy assaulted while in the RHU, and that he got transfered to SCI Huntingdon while he came back to talk to talk to the state police.

Plaintiff also predicated that on the bus ride back to camp Hill he was force to sit in his feces for hours and had suffered cuts on, his ankle and hand in which he told medical Personals at the door but they did nothing. Plaintiff told officials that the out cut had gotten infected See EXHIBIT R-1 , Plaintiff then asserted all his injuries from his back pain, to the nubbss in the back of his head, and that he was still bleeding out the anal, and had Groin and hip hip pain, and ribbs pain. At this time Plaintiff nose was still licking with blood. At one point a unknew inmate asserted "Damn did you get in a fight with a UFC fighter?"

Plaintiff was told to sit down as all the medical staffs walked in to a room next door. Plaintiff could here "Mary Beth" on the Phone; he could then here Jennifer and Edward and Steve talking; "are you trying to get us in trouble? hat's the lawsuit guy, we cant treat him" An LT Frances and Superintendent could now here Frances and Harry talk to the medical officials. After the talk Frances came out and told Plaintiff he has to go back to his housing unit in pain, with no medication and nose still bleeding bad!

At no time was Plaintiff evaluated by MaryBeth, steve, Jennifer, or Edwards. Plaintiff injuries were obvious and he was denied medical attention. For this reaso, Plaintiff injuries worsen causing him more pain. A medical need is only considered "serious" if it is "one that has been diagnosed by a Physician as requiring treatment or one that is so obvious that a lay Person would easily recognize the necessity for a doctor's attention." Monmouth County Correctional Institutional V. Lanzaro, 834 E.2d 326, 347 (3d cir 1987). A medical need may also be serious if it can be reasonably said to cause "wanton and unnecessary infliction of pain, or result in permanent disability or loss.

In a recent unpublished opinion in Brown v. N.J. Dept. of Corrections, 2014 WL 4975579 (D.N.J. October 2, 2014), the United States District Court for the District of New Jersey hold that allegations that a Plaintiff hurt his arm, and back when he fell from a broken chair were not sufficient to demonstrate a "serious medical need." This is not the case. Plaintiff suffered two sexual assaults and was transfered back s Camp Hill, in which he suffered another assault at the hands his cellmate; Plaintiff then sent to medical with his nose hanging off his face and blood all over his clothing in which he was deprived medical treatment by defendants. In order to be considered serious the defense's condition must be such that a failure to treat can be expected to bad to substantial and unnecessary suffering injury or death. Plaintiff K also asserts defendants actions showed negligences and or medical malpractice. Defendants had a duty to treat Brown and clearly breached that duty.

Plaintiff first meet with P.A. King on 10-24-17; Brown made King aware that he was suffering from a variety of medical symptoms see Exhibit A-D-C, including an ongoing heart condition in which Plaintiff was Plaintiff stated to P.A. King, the lst time he was hospilalist his Cardiologist made it clear that his heart was not Pumping enough blood to supply the body tissues adequately in which had Plaintiff in a state of cardiac arrest. Plaintiff Predicated that while in the county jail and at camp Hill he was getting deprived medication. in which his injuries worsen. Plaintiff also made King aware that he was suffering from acute Asthma attacks and that he did not even have an inhaler. see Exhibit A-C-1 Plaintiff has never chronic Asthma clinic but was never called down Brown to get evaluated. Plaintiff then told King that he was a victim of a stabb assault to the eye, and it was left untreated in which was causing him distortion and sharp Pain and Poor eye sight. Brown then asserted while at camp Hill he had suffered four sexual assaults in which the attacker was his collri and that the pain was so intents he could not eat or sleep. Plaintiff claimed he had nose bleed making it hard to breathe, and numbness to the lest side of his head that would not go away stemming from the sexual assaults. As well as right shoulder pain, through the hand, sharp Pain in and around the herniated disc area and groin area to the Point he would have to force himself to walk.

Also his left arm had an overall tightness causing him a lot of pain. King asked Plaintiff to sign a cash slip. Brown asserted he was indigent that he did not have any money on his account at the time. King forced Plaintiff to sign the cash slip or leave so Brown sign. She then asserted that they were under funded, that inmates would have to pay to get any treatment. She then stated to Plaintiff, that she would only be evaluating his ribbs area and that he would need a Court order to see a specialist.

P.A. King then asserted that Sgt. Huntingdon was not responsible for his injury because it did not occured at Huntingdon. King started to feel around Plaintiff's ribbs; Brown started to yell in pain. P.A. King then asserted "if they are fractured, they would heal on it's own!" P.A. King then told Brown that he did not have money on his inmate account so he could not get x-rays or pain medication. Plaintiff was left in pain and his injuries wa seen.

Brown again seen P.A. King after he was put in a coil niket to freez for days. Brown was unable to walk. Miss King told Brown it was only "bluing" that he will be ok. King failed to even evaluate Brown. Plaintiff again meaf with P.A. King on 2-22-18. He asserted to P.A. King that he was a victim of multiple assaults and sexual assoult and that on 2-7-18 medical was called but told a co Johnson that they did not want to get involve. Plaintiff state all his injures such as abdominal pain, bleeding and bruses in and around the anal, neuralgia pain, inflammation of ankle and knee, brooken nose, chronic back pain, sciatic pain in his hip and thigh, numbness was still along the left side of his head and a big hoomh on the head along with ribbs pain. P.A. King told Brown he would need a Court order to see a specialist that she was unable to do anything for him. See Grievance # 724081

In finding multiple bruises might not constitute as serious medical need see Stroud v. Boorstein, civil no.10-3255, 2014 WL 2154499, 9 (E.D Pa. May 20, 2014) Brown is claiming he had very serious symptoms, and P.A. King ignored them; King was deliberate indifference to Plaintiff on going serious injuries. Plaintiff internal bleeding and abdominal pain did not stop. King fail to even give Plaintiff pain medication. Plaintiff head injuries were never evaluated by King; Plaintiff still has numbless around his head.

Brown is also claiming negligence and medical malpractice. Duty in any given situation is predicated upon the relationship existing between the parties at the relevant time. Zanine v. Gallagher, 345 Pa. super 119, 497 A.2d 1332, 1336 (1985). Plaintiff meat with P.A. Gomes on 11-15-17 Brown asserted to Gomes that he had just came from Camp Hill and he was a victim of sexual assault in which he was being deprived medical attention. Plaintiff asserted to Gomes that his on going injuries was bleeding from the analian on going heart condition, and acute Asthma attacks; nubless on the left side of the head in to the right sholders and hand hip flexer pain and groan pain, ribbs pain.... Gomes failed to address Plaintiff's injure he then told Plaintiff he would be conducting an anal exam. Plaintiff made Gomes aware that it would cause him more pain nevertheless Gomes conducted the anal exam against Plaintiff's will. The exam caused Brown more pain and bleeding.

Gomes did not even use a glove to conduct the exam. The exam was also conducted in the open in front of other inmates and female nurses. The injusion caused Plaintiff alot of pain and more bleeding. After the exam Gomes did not prescribe Plaintiff any medication nor did he evaluate Plaintiff head injure or other injure Plaintiff war left in pain. Gomes told Brown the best he could do is x-rays and that his injure did not have anything to do with Sgt Huntingdon. Gomes was deliberate indifference to Plaintiff injures and then depriveing him pain medication see Exhibit A-E-1-4. Gomes was also negligence and medical malpractice. Gomes breach of duty put Plaintiff at risk in which was unreasonable.

Plaintiff brings claims of Deliberate indifference, negligence, and medical Malpractice against Nurse Nikie, Nurse Trice and P.A. Eric. Although Plaintiff meat with nurse Nikie, Trice and P.A. Eric on different dates, the out come was the same. Brown first meat Nikie on 10-23-17 when he was transferred from Camp Hill and that while in the RHU he was subject to two different sexual assaults in which the attacker was his celli. Nurse nikie told Brown she would prescribe him some medication. Brown then told nurse nikie his on going injuries, Groin pain, Hip flexer pain, numbless on the left side of his head, his on going Asthmas attacks, his leg injures and ribbs, heart condition, his eve or vistion issues and that he was bleeding from the anal. Nurse nikie did not order the pain medication she told Brown she woul order. Nurse nikie did not evaluate Plaintiff's injures leaving him in pain. Plaintiff did not got a chance to see nikie again because he was transferred back to Camp Hill.

Plaintiff next interactions with nurse was not till around 2-15-18 after he was subject to another sexual assault this time in SCI huntingdon RHU. Plaintiff first meet with nurse Trice on the night of 2-14-18, and told her he was getting deprived sick calls and medical attention. That on 2-7-19 medical had refused to see him. Plaintiff told nikie the same thing he would tell nikie the next day. That he was already suffering head injuries and that on 2-6-18 his celly had pulled him off the top bunk in which he hit his head causing a bump. Plaintiff told both Trice and nikie his current injuries which were bruses in and around the anal, Neuralgia Pain, Inflammation of the ankle and knee, broken nose, Chronic back Pain, Sciatic Pain in hip and thigh, numbness along the left side of the head going to his right shoulders and hand.

Bruised ribs.... Base on D.O.C. medical Policy, Brown should had been ush to a hospital because Huntingdon dose not have the tools needed to deagnose Plaintiff. Nurse Trice told Plaintiff on the night of 2-14-18 he would see a doctor the next day because it was really late. On 2-15-18 Brown was called down to a strip cage and was told there was a doctor waiting to evaluate him, apparently it was Nurse nikie with a camera. she did not ask Brown to take pictures and started to take Prictures. After she was done she did nothing for Plaintiff, teling him to put in a sick call and that he would need a court to get treated see Exhibit A-E1-8. Plaintiff was send back to his cell, with out being evaluaded or given Pain medication. As Plaintiff was walking out nikie then asserted we don't think you got raped and if you did and we was to treat you without a court order, then we would be seting our selfs up for a big lawsuit. "We know you like to suit People!"

Plaintiff put in a sick call because he was in alot of Pain. A P.A. Eric came to his door on 2-17-18 Brown asserted all his on going injuries and that he was not getting treated. A claim for deliberate indifference in violation of the Eighth Amendment requires more then an allegation of mere medical malPractice, a prisoner must allege actos or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs "see Estelle v. Gamble, 429 U.S. 97, 105-06 (1976) This standard requires both a serious medical need and deliberate indifference to that need by Prison officials. Monmouth CtY. Corr. institutional inmates v. lanzaro, 834 F.2d 326, 346 (3d cir. 1987).

The "Knowledge of the need for medical care, accompanied by the intentional refusal to provide that care," is sufficient to meet the deliberate indifference standard. Brown is claming defendants Nurse Trice, Nurse Nikie and P.A. Eric refused to treat him or log him in for treatment. Eric told Brown there was nothing he could do for him with out a court order. And that inmates did not have any Privacys, Eric then walked off done nothing to evaluate Brown. Plaintiff is also claming defendants were also negligence to his injuries and or medical malpractice.

Plaintiff also brings count XIII, XV,XX against Dr. Kevin Kollman, Dr. Kalada and Paula Price. Plaintiff meet with Paula Price around 11-15-17 during a meeting wit P.A. Gomes. She asserted that she was the Health Care Administrator. Brown told mrs Price that he was very concern Pursuant to his health; that his heart issues were never adressed at Camp Hill not only that he had suffered sexual assaults on 10-1-17 and 10-4-17 while at camp Hill, in the RHU after officials housed him with a violent Inmate.

Price then asked Brown why he haden been treated at camp Hill and Plaintiff told her they had deprived him medical attention for reasons he was not all the way sure off. Brown also asserted they had asked him for court orders to adress some of his medical issues. Plaintiff then told mrs Price that he was bleeding from his anal, he still had r was feling numbness on the left side of his head down to his right shoulders and hands, back and hip Pain, left Pain in he had some eye vision issues. She cut Plaintiff off and asserted the Gomes would only be adressing his bleeding from the anal because she did not believe that he was bleeding in that area. An anal exam was conduct in which infact it showed Plaintiff was bleeding from his anal. Paula Price did nothing for Plaintiff. Although he was evaluated by way of anal exams, they did nothing to treat Plaintiff maltreatedness after being aware that he was bleeding from his anal, Plaintiff asked for Pain meds but was denied.

The liability of non-medical Prison officials for inadequate medical treatment received by an inmate is limited by the natural division of labor within a Prison. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Officials without medical expertise are entitled to rely on the Judgment of the staff with that expertise. Thus, a non-medical official does not act with deliberate indifference by failing to respond to

of the prison's medical staff. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) That was not the case. Brown is claiming that Paula Price had reasons to believe that he was getting mistreated by the medical staff. Spruill .372 F.3d at 236. Miss Price her self told Brown that only a anal exam would be conducted. Brown did not even agree to this exam that Gomes conducted in front of cellmate and inmates with no gloves.

Price asserted she did not believe Brown was bleeding from the anal; once Gomes conducted the exam and found that Brown was bleeding from his anal like he predicated Plaintiff was douted medication or treatment; Price was aware that officials fail to evaluate Plaintiff's head injuries in which they would have to send him outside the bil because SCI Huntingdon dose not have the tools to evaluate such injuries. At no time was Brown given an EKG, electrocardiogram to see what is going on with his heart issues in which is another medical regulation Miss Price, ieaspierave officials was not complying with.

Plaintiff meat with Dr. Kalada on 11-30-17. This Dr. told Brown this was not an evaluation i that he was directed to do x-rays just to make sure Plaintiff did not have a broken bone sticking out. Plantife told Dr. kalada that he was in alot of pain; that the numbness on the left side of his head would not go away down to his right shoulders in which was left untreated. Plaintiff asserted that Gomes conducted an anal exam in which findings were he was bleeding from his anal but he was never given any medication. Dr. Kalada asserted to Brown their was nothing he could do for his injuries; that to edaqingly evaluate him he would have to go outside because they did not have the tools; and that would not be up to him. He asserted that Brown would need a court order to get his head and heart issues ad

Againe another medium official did nothing to evaluate Plaintiff, Plaintiff asked Dr. Kalada for pain medication because he could not sleep; againe Dr. Kalada refused. This Doctor then told Brown we know you are trying to litigate and put us in lawsuits, "we can't help you hurt us." Dr. Kalada then kicked Plaintiff out his office. Plaintiff wrote a grievance but nothing was done.

Plaintiff meat with Dr. Kollman around 2-20-18, againe Brown told Kollm his symptoms were geting worse; that he had just suffered a sexual assault at the hands of an inmate name Allan. Kollman asserted "dam how many times are you going to get sexualy assaulted, it seem's like you like it!" Brown asserte his injuries were abdominal pain, bleeding and bruises in and around his anal, Neuralgia pain, Inflammation of ankle and knee, brooken nose, Chronic back pain. Brown asserted he has just suffered an Asthma attack and nothing wor dor to call medical and he did not have a inhaler for his Chronic attacks. Also sciatic pain in his hip and thigh, numbness along the head down, to his shoulders, and a bomb on the head and bruised ribbs; Kollman and king contested that if they order X-rays and anything was wrong that Plaintiff would need an court order to see a specialist, because that were under funded.

Dr. kollman also told Plaintiff, "Being that you are who you are we really don't want to get envole because you suit everybody. He then asserted, the myst we can do is order aspirin only if he sign a cash slip. Plaintiff then said he was indegent and he was deprived of pain medication.

Plaintiff meat with Kollman againe this time Paula Price was also in the meeting. Plaintiff asserted, he had just past out in his cell from inpcits chest pains, and that because their was no stress button with in the cells he was unable to get medical attention hiting his head and making his injure worsen. Plaintiff asserted he had been having chest pain more and more and that he was not on any medication for his heart issues. Plaintiff then asked for an E.K.G. and he was denred by both officials. Plaintiff then asserted his on going injures had not been treated and he had anal pain and chronic back pain along with his other injures they told Plaintiff that he would need a court order to get evaleated. See Grievance # 724081. Their are genuine issues of material fact as to whether these defendants violated Brown's constitutional rights by depriving him medical attention. Prison medical staff violate the Eighth Amendment if they "deny reasonable requests for medical treatment and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injurys" Westlake v. Lucas, 537 F.2d 857, 060 (6th cir. 1976)

Brown also brings these claims against Nurse Hollie. Brown meat with this nurse around 1-26-18 while in a camera cell having an asthma attack. Hollie came to the door as Brown was on the ground telling her "I can't breathe" "I can't Breathe" Brown ask for an inhaler or for help before passin

out his nursing career, Hallie did nothing to help plaintiff with his asthma attack. Plaintiff again meat with Hallie on 6-9-18 he told her he was having intents pain in the chest irea and that his heart issues were never adressed by the medical department. Plaintiff then droped to the floor hiting his head; Hallie quickly walked off. On 6-11-18 plaintiff again meant with Hallie telling her he hit his head from the heart pain on 6-9-18 and asked why she walked away. She then asserted don't you know your on a black list, nobody's going to treat you because you like to sue people. Plaintiff again asked for an E.K.G. because we was feeling sharp pain in the heart and he was on medication in the streets after a cardiac arrest. Plaintiff was ignored.

Plaintiff again meant with Hallie on 6-17-18 asserting he was still having back pain and scatic pain in his hip and thigh and the numbness on the left side of his head would not go aleat; And his acute asthma was not being adressed. Hallie told Brown "You need an court order to get your heart issues adresed it would cause our provider alot of money to treat that!" She ignored Brown's other claims and walked off. The knowledge of the need for medical care is acompanied by the intentional refusal to provide that care. deliberate indiference is manifested. Lanzaro. 834 F.2d af 346 claims of negligent and medical malpractice can only be found in the instance of a dutty is owed to the plaintiff which is breached see Regan v. Town ship of Lower Merion. 36 F. Supp. 2d 245, 251-58 (E.D. Pa 1999)

Brown is an inmate that was already diagnosed at Temple Hospital and follow up at Hurricon House with Bifolor and Schizophrent and P.T.S.D. While in the county Jail at George W. Hill Plaintiff was diagnosed with depresstion. Plaintiff was on Risptal, Wellbutom and depaote. Plaintiff first wrote Cousin a request asking to evaluate him explaining what medications he was on And what he was diagnosed with. One 10-26-17 Cousins wrote back asserting Plaintiff would have to go through a Miss Buttebaush. on 12-5-17 after being sent to the RHU for refusing a cellmate Brown meat with Cousins and Goss. Brown told both defendants that his medication was not being given to him and that he had suffered a rape assault at SCI Campbhill and his on going Symptoms were geting worse. Brown asserted he was feeling down and gray, Sweating nore and more in which his heart rate was beating faster when other inmates came close to him Crying and fear of being harm to the point of sleeping under his bunk he also predicated to Goss and Cousins he was having panic attacks just from the thought of coming out his cell, and he could not stop shaking to the point that officials started to call him shake and bake, Plaintiff also asserted that he was hearing his attacker voice and it would not stop. Defendants denied Plaintiff of PSYCH medication; defendants told Brown "OK smart ass we know who you are your not geting shit; sue us, "if your claiming your sperridal. you have to act on it!" see Exhibit A-B.1-6 Plaintiff again meat both cousins and Goss on 1-17-18 Brown asserted his mental needs were not geting meat and his Symptoms iwear worsening. Cousin asserted "spell symptoms!" At no time did cousins who is the head Psychiatrist and Richeal Goss the head Psychologist of the institution treat or evaluated Brown from his on going symptoms. Both defendants deprived Plaintiff of Psych medication while at SCI Huntindon although aware Plaintiff was already on Risptal wellbutom and depaote, Brown is claiming both defendants were deliberate indiference to his Psych needs.

In addition to deliberate indiference, the Plaintiff must show that his need require attention, or have been previously diagnosed by a doctor as needing treatment. Nicoletti v. G.V. of Law rence. 396 F.3d 314, 320 (3d cir 2005) Plaintiff symptom had manifestated to the point he would sleep under his bunk out of fear; because of officials actions Plaintiff was subject to substantial and unnecessary suffering see colburn v. Upper Darby Twp. 946 F.2d 1017, 1023 (3d cir 1991)

# Count XXI Intentional Infliction Of Emotional Distress

Plaintiff is claiming that defendants actions caused him intentional infliction of emotional distress. Under Pennsylvania law is (1) that the defendant's conduct was intentional or reckless (2) that defendant's conduct was extreme and outrageous; (3) that defendant's conduct caused emotional distress; and (4) that the resultant emotional distress was severe see Brown v. Ilderen Law offices. P.C. 2011 WL 4011411 af 5 (E.D. Pa. sept. 9, 2011)

from deliberate indifference of a medical provider, inmate deliberately telling him he was 12A1 assaults and likes homosexual in which Plaintiff suffered two sexual assaults and injuries. To officials at camp Hill depriving Plaintiff medical attention after his nose was busted up and he was bleeding all over; Plaintiff was also subject to sexual assaults at SCI Huntingdon when officials forced him with an unknown enemie, and then conspiring to keep him in the cell after witnessing and being aware that he was getting assaulted and sexual assaulted. C/o Plocinik and LT. Eberling assaulting Plaintiff during property exchange; also c/o Myers and Tombly and Zimmerment actions were outraged when they also Cornered Brown in assaulting him.

Plaintiff was denied Showers and rec for over 189 days in which was down deliberatly. Brown is also claiming negligent infliction of emotional distress in which the medical department refuse to treat him at both camp Hill and SCI Huntingdon, Brown suffered injuries from the sexual assaults, heat stroke, heart Pain and asthma attacks and was never Put on Pain Medication for non of this. Cousins and Goss also deprived Brown of treatment althous aware of his on going symptoms in which he was diagnosed by other Psych Doctors. A claim for negligent infliction of emotional distress can only be found in this instance if a duty is owed to the Plaintiff which is breached. See Regan V. Township of lower merion, 36 F. Supp 2d 245, 251-52 (E.D. Pa 1999).

A cause of action for negligent infliction of emotional distress exist in only two circumstances 1) where a close family member experiences a contemporaneous sensory observation of Physical injuries being inflicted on another family member, or 2) where the Plaintiff nearly experiences a physical impact in that he was in the zone of danger of the defendants tortious conduct" Plaintiff is claiming defendants intentionally engaged in extreme or outrageous conduct that caused severe emotional distress" Hunt ex rel. Desombre V. state, Dept of safety & Homeland sec, Div. of Delaware state Police, 69 A. 3d 360, 367 (Del zo) "Outrageous behavior is 'conduct that exceeds the bounds of decency and is regarded as intolerable in a civilized community." "It is for the court to determine, in the first instance, whether the defendants Conduct may reasonably be regarded as so extreme and outraeous as, to permit recovery. If reasonable minds may differ, the question of whether the conduct is extreme and outrageous is for the jury. The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other which gives him actual or apparent authority over the other, or power to affect his interests. Fanean v. Rite Aid corp. of Delaware, 984 A.2d 812 818 (Del supe Ct. 2009).

# Count XXII   Assault & Battery

Plaintiff is bringing claims of Assault & Battery against sgt. Tombly, sgt. Zimmerment, c/o myers, c/o Plocinik, LT. Eberling

On 9-15-17 Plaintiff wrote a grievance on c/o Zimmerment, sgt Zimmerment would later fish Plaintiff grievance out of the grievance box, on 9-18-17 Plaintiff was called to a back room with no camera. As Plaintiff entered the room Tombly, myers and Zimmerment cornered him, Plaintiff walked into a Punch from sgt Tombly, he was then hit again, then kicked in the back by myers. After Plaintiff feel all three after Started to hit him, causing injuries, on 9-28-17 Plaintiff was told to lock in after he had asked Tombly about a make Up hair cut. As Plaintiff was walking back to his cell he was slammed on the gate by c/o myers, in which his hand was caught on the gate and c/o myers slamed his hand on the gate. Plaintiff suffered a deep cut on his hand.

On 2-25-18 Plaintiff was tooken to Porperty exchange. C/o Plocinik and LT. Eberling started to ask Plaintiff about his sexual assault allegations with a smirk on his face. Plaintiff was then hit with an elbow to the back. Plaintiff then fell to his knees he was then hit with a mace, ranjwhile Plaintiff was cuffed. He was then kicked by LT. Eberling in the stomach as it he was a soccer ball. Plaintiff was then hit across the face and started to bleed, Plaintiff was hit in the ribs and then c/o Plocinik grabbed his balls and Pulled on it.

Generally battery is any harmful or offensive contact with a Person that is done intentionally an assault is an act that is intended to cause and does cause a reasonable fear, that a battery is about to occur. See Bock, v. city of Pittsburgh 89 F.3d 966, 974 (3d cir 1996) See Johnson V. Glick 481 F.2d 1028 1033 (2d cir 1973)

Any intentional and different result with the Plaintiff's sentence or punishment attached to it. The assault and battery standard, which focuses on what is "reasonable" and "necessary rather than on what the officer intended, appears similar to the Fourth Amendment "objective reasonableness" standard applied to uses of force but it is more favorable to prisoners then the Hudson V. McMillian Eighth Amendment standard, which requires the Plaintiff to prove malicious intent see Polizzi V. Trish 154 So. 2d 84 85 (La App 1963)

## Extention OF Due Process For Damage Of Property

Plaintiff brings damage of Property claim through due Process and Access To the courts against LT. Younker and Property Sgt. Flowers Plaintiff also brings extent of these claims against Mailroom J. Neumann and Mailroom Mrs. Stone. On the way to the RHU on 1/22/18 LT. Younker told Brown "remember my fucking name, your not getting out of your Property you fucking rat!"

During the inventory of Brown's Property Brown notice a lot of his legal Property missing including his commissary, so he did not sign the Property sheet. LT. Younker and Flowers were called down both defendant started arguing with Plaintiff pursuant to his missing Property. They then stated to calling, a "whistle Blower" also saying inmates that litigate get their Property confiscated. Plaintiff then wrote a grievance see Exhibit WL_6. Officials actions has hurt Brown's pending civil cases in which most of his Exhibits went missing for case Brown v. Phillips and Brown v. Whitside. it has been hard for Brown to respond to Discory motions and conduct discory because of all the information and Exhibits and documents brown is missing.

It has also been hard to respond to adversary's motions. This has also is a restant Pursuant to his Criminal appeal. Although Brown has one criminal appeal with in the courts he has been unable to file an appeal to his other criminal case in which he is missing his transcripts; Carroll V. Sielaff 514 F. 2d 415. Brown is claiming this was more then simple negligence on the Part of defendants brown has establish a Prima facie case of deprivation of liberty protected by the Fourteenth Amendment; and Access to the courts; Lynch V. Household Finance Corp. 405 US. 538 v 542-522 31 L.Ed 2d 424 92 S. Ct. 1113.

Brown is also bringing this claim under state law for the lost of his Property. Brown is also bringing these claims against J. Neumann of the SCI Huntington mail room and Mrs. Stone. These actors actions are violating Plaintiff's access to the court and due Process. If defendants are claiming Procedure then Plaintiff is claiming the Procedure as lacking due process. Brown has been subject to bot Mrs. Stone and J. Neumann rejecting his federal mail from going out because he is indegent. On 6/11/18 Brown filed a motion for leave to file a amended complaint Pursuant to Brown V. C.E.C. 16-4690 stamped from a court order on 5/22/18. Brown also filed a Production of document pursuant to Brown v. Phillips 16-226. sending it to defendants lawyers and the federal courts. Defendants denied Plaintiff mail from going out see Exhibit A_1 They claim that Brown did not have money for postage and it's regulation that he only get $10.00 a month for Postage; this $10.00 also inclues copying cost. Pursuant to their Procedure Brown can not send out mail till 7/1/18 because he is indegent.

Brown again try to send out mail to the federal courts this time it was a request asserting that he had Given his status sheet for case 16-5587 and for case 17-1138 in which it show that defendant's lawyers filed a motion to dismiss for Philadelphia county, Abiello, and Sgt Muldchird, and also the c/o Rendlement had filed a answer on the same docket. Apparently Plaintiff did not get any of these motion and had 14 days to respond to them. Plaintiff did not reicive them was denyed by the Jail's mail room asking Philadelphia's county lawlers to resend their motions because he and miss stone. These defendant were dismiss because his mail could not go out telling the court's and defendants later he did not recieve their motions

Plaintiff also attempted to send out a Production of document for another case 16-cv-3487 on 6-17-18 and his request was denied by mrs stone

The court should note that this mail room allowed Brown to send out over $135.00 in postage from 02/01/18 — 03/02/2018 see Monthly Account Statement Dated 02/01/2018 — 03/02/2018. Brown is showing injuries to his cases, see Myers v. Hundly s101 F.3d 542 (8th cir 1996). The right to access to the courts has a very serious limitation, that comes from a supreme court case called Lewis v. Casey, 518 U.S. 343 (1996). This case states that a Prisoner cannot claim he was denied his right of access to the courts unless he shows an actual injury. "To show actual injury, you have to prove that Prison officials or prison policy stopped you from being able to assert a "nonfrivolous claim," This is the case.

Officials are claiming that they can stop Plaintiff federal mail and petition because he is indigent in which he is only intital to $10.00 a month for postage within that $10.00 it includes copying causes. Plaintiff is claiming he cant even edequatly fight grievances with $10.00 a month.

# Count XV Negligence

Although Plaintiff had only addressed his negligence claims against the medical defendants, Plaintiff is claiming the court's should also apply his negligence claims and standards against those defendants in which Plaintiff has already explained there actions although the complaint. Brown is claiming all these defendants had a duty, and breached that duty. LT. Gildea, c/o Harris, c/o D.L. Hill jr, c/o Sposito, sgt. Zimmerment, LT. Maxwell, sgt. Leleux, LT. Frances, L.T. snyder, c/o Piocinik, c/o crawford, c/o Hariss, Erice Partsons, c/o Johnson, Sgt. Ander, LT. Dunkel, LT. Younker, c/o Fochtman, LT. WE House, Unit Manager Kendrick, Mandy Sipple, superintendent Harry, c/o Kovick, LT. Suimi, sgt. Tombly, c/o Myers, LT. Eberling, Kevin kauffman, c/o Wevant, Cousin, Goss, c/o Garlik, sgt. Rhodes, Property sgt Flowers, Mail room sgt J. Neumann, Mrs Stone, S. Ellenberger, Counselor Richeats, John Wetz, sgt. Smith, P.A. Jean Doe at Grinterford, C. Green, c/o smith, c/o myers, PA sgt. Heater,

The elements of a cause of action based on negligence are a duty, a breac of that duty, a causal relationship between the breach and the resulting injury, and actual loss. Burman v. Golay & Co., inc. 426 Pa. super. 209, 616 A.2d 657 (1992) when considering the question of duty, it is necessary to determine "whether a defendant is under any obligation for the benefit of the particular Plaintiff ... and unless there is a duty upon the defendants in favor of the Plaintiff which has been breached, there can be no cause of action based upon negligence." Hoffman v. Sun Pipe Line Co. 394 pa super. 109, 114, 575 A.2d 122, 125 (1990)

The court is aware that duty, in any given situation, is predicated upon the relationship existing between the parties at the relevant time, 345 Pa super ... where the parties are strangers to each other, such a relationship may be inferred from the general duty imposed on all persons not to place others at risk of harm through their actions. Plaintiff has sworn under penalty of perjury that everything in this complaint is ture!



**Integrated Offender Case Management System**          6/1/2018 8:09:31 AM

## Monthly Account Statement

**From Date:** 05/01/2018          **To Date:** 06/01/2018

| Housing | Case ID | Offender Name | Location |
|---|---|---|---|
| G-D-1006-01 | NA6401 | BROWN,GARTOR | Huntingdon |

| Batch# | Txn Date | Txn Description | Txn Amount($) | Balance After Transaction($) |
|---|---|---|---|---|
| HUN-029920 | 05/16/2018 | 36 - Library Copies | -4.40 | -87.00 |
| HUN-029931 | 05/17/2018 | 37 - Postage  (First Class Mail) | -1.84 | -88.84 |
| HUN-029977 | 05/23/2018 | 36 - Library Copies | -1.40 | -90.24 |

**Current, Escrow, & Available Balances are as  of 6/1/2018 8:09:31 AM**

| | |
|---|---|
| Current Balance | -90.24 |
| Escrow Balance | 0.00 |
| Available Balance | -90.24 |

FILED
HARRISBURG, PA

AUG 0 1 2018

PER_____
DEPUTY CLERK



Garfor Brown NA6461
1100 Pike Street Huntingdon
P.A. 16654-1112

United States District Cour
228 Walnut Street Harrisburg,
P.A. 17108

USPS

RECEIVED
HARRISBURG, PA
AUG -1 2018
PER ___
DEPUTY CLERK