# In The United States District Court For The Middle District Of Pennsylvania

Gartor Kiki Brown

V.

LT. Gildea, et al.,

FILED SCRANTON

MAR 17 2020

PER _____ DEPUTY CLERK

No. 18-CV-1527

## Brief To Motion For Sanction For Spoliation Of Electronically Stored Information

To establish spoliation, the moving party must show (1) that the missing evidence existed at one time; (2) the alleged spoliator had a duty to preserve the evidence; (3) the evidence was crucial to the movant being able to prove it's prima facie case or defense. Managed Care Solution, Inc. v. Essent Healthcare, Inc., 736 F. Supp. 2d 1317, 1323 (S.D. Fla. 2010)

In December of 2015, Rule 37 of the Federal Rule of Civil Procedure, was amended to address the spoliation of electronically stored information "(ESI)" like the video at issue here. See Fed. R. Civ. P. 37(e). The Rule now provides that if ESI (that should had been preserved in the anticipation or conduct of litigation) is lost because a party failed to take reasonable steps to preserve it and it can not be restored or replaced through additional discovery, the court: 1) upon a finding of prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: A) presume that the lost information was unfavorable to the party; B) instruct the jury that it may or must presume the information was unfavorable to the party; or C) dismiss the action or enter a default judgment, see Sosa v. Carnival Corp., 2018 U.S. Dist. LEXIS 204933, 2018 WL 6335178, at *11 (S.D. Fla. Dec. 4, 2018)

The video at hand is important because, it involves information in relation to Plaintiff's claims. Brown claims from 2/3/18 through 2/8/18, defendant's action caused him to be sexually assaulted in serious harm & injuries. In (Exhibits G & H) officials made it clear that per policy they review a CCTV footage to address inmates complaints. The CCTV is a surveillance recording camera that is put all around the jail. (Exhibit B, C, D, E, F) Shows that Brown filed a grievance on 2/3/18 asking defendants to preserve the tape from the cited date. Defendants would reject Plaintiff's grievance claiming it was not legible (Exhibit C). It contradict the fact that Plaintiff grievance was clearly stated, in which the facility manager would repeat his request. Plaintiff made it clear that it was pursuant to his sexual assault claims & gived dates. Brown put defendants on notice, in which they failed to address because their intensions were to distory the tape.

(Exhibit I) Seems to show as part of the upgrade to Facilities & Technologies Policy defendants are to update monitoring system as consistent with (Exhibits G & H). In considering whether the allegedly spoliative party has a duty to preserve the evidence, the party must have control over the evidence, have an obligation to preserve the evidence at the time it was destroyed, and be on notice of a claim or potential claim at the time. Watson v. Edelen, 76 F. Supp. 3d 1332, 1343 (N.D. Fla. 2015)

Plaintiff would also sent defendants "Notice of Intent To Initiate Litigation in regards to the incidents from 2/3/18 through 2/8/18, in which defendants failed to respond with LT. Maxwell even threating Plaintiff in person (Exhibit K). Pennsylvania's State Police report shows that no tape or video surveillance was provided to the state police as is consistent with CCTV for an adequate investigation.

Even if all three elements are met, a Plaintiff can show that a party's failure to preserve evidence rises to the level of sanctionable spoliation only where the absences of that evidence is predicated on bad faith, such as where a party purposely loses or destroys relevant evidence. If direct evidence of bad faith is unavailable, the moving party may use circumstantial evidence to establish bad faith in which requires (1)

evidence once existed that could fairly be suppose to have been material to the proof or defense of a claim at issue in the case 2) the spoliating party engaged in an affirmative act causing the evidence to be lost, 3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence, 4) the affirmative act causing the loss can not be credibly explained as not moving bad faith by the reason proffered by the spoliator.

Brown claims that defendants deliberately destroyed the video surveillance to prevent him from crucial evidence that would prove his claims, thus the courts should consider the issue at hand in which Brown is pro se.

(Exhibit E) also states "there is no video available for this allegation."

DC-804 (Exhibit B)
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

FOR OFFICIAL USE
_____
GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR Green | FACILITY: SCI H | DATE: 2/2/18 |
|---|---|---|
| FROM: (INMATE NAME & NUMBER) | SIGNATURE OF INMATE: | |
| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: GD 105 | |

INSTRUCTIONS:
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief that you are seeking.

I will like to Preserve all tape recording, from 2/2/18 through this Grievance date, in which will be an important tool in a sexual assault investigation on G block. The Camera will identified all accounts in Grieved act ...

B. List actions taken and staff you have contacted, before submitting this grievance.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____    _____  3/6/18
Signature of Facility Grievance Coordinator             Date

WHITE Facility Grievance Coordinator Copy     CANARY File Copy     PINK Action Return Copy
GOLDEN ROD Inmate Copy

*DC-ADM 804, Inmate Grievance System Procedures Manual*
**Section 1 – Grievances & Initial Review**                    *Attachment 1-A*
Issued: 1/26/2016
Effective: 2/16/2016

Grievance Appeal #721496 To Secretary office
Brown asked officials to Preserve all tape recordings from 2/2/18 through 2/13/18 in which it would be an important tool for his lawyers to investigal pursuant to Sexual assault allegations. Brown presented the Grievance in a timly matter asserted what he wanted the tape see Preserve.
(Exhibit F)

Garfar Brown NA6401
sign

4/1/18

# GRIEVANCE REJECTION
SCI-Huntingdon
1100 Pike St.
Huntingdon, PA 16654-1112

This serves to acknowledge receipt of your grievance to this office. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System," I have reviewed all documents provided as part of the grievance. Upon consideration of the grievance, it is the decision of this office to reject your grievance due to a failure to comply with the provisions of the DC-ADM 804, as specified below.

| Inmate Name: | Gartor Brown | Inmate Number: | NA6401 |
|---|---|---|---|
| Facility: | HUN | Unit Location: | GD-Unit |

| Grievance #: | 721491 |
|---|---|

| Decision: | Rejection | |
|---|---|---|
| X | Your grievance is being rejected for the reason(s) outlined below. | |
| Rationale: | | |
| | 1. Grievances related to the following issues shall be handled according to procedures specified in the policies listed and shall not be reviewed by the Facility Grievance Coordinator. | |
| |    a) DC ADM 008 Prison Rape Elimination Act (PREA) - allegations of a sexual nature against a staff member and/or inmate-on-inmate sexual contact. | |
| |    b) DC ADM 801 Inmate Discipline/Misconduct Procedures | |
| |    c) DC ADM 802 Administrative Custody Procedures | |
| |    d) DC ADM 803 Inmate Mail and Incoming Publications, Section 3, E. | |
| | 2. The grievance was not submitted within 15 working days after the events upon which claims are based. | |
| | 3. Grievance involves matter(s) that occurred at another facility and should be directed by the inmate to the appropriate facility. | |
| | 4. The grievance was not signed and/or dated with correct commitment name or number, contained UCC references, or was not presented in proper format. | |
| X | 5. **Grievance must be** legible, **understandable,** and presented in a courteous manner. | |
| | 6. The grievance exceeded the two page limit. Description needs to be brief. | |
| | 7. Grievance does not indicate that you were personally affected by a DOC or facility action or policy. | |
| | 8. Grievances based upon different events must be presented separately. | |
| | 9. The issue(s) presented on the attached grievance has been reviewed or is currently being reviewed and addressed in prior grievance _____. | |
| | 10. Group grievances or grievances filed on behalf of another inmate are prohibited. | |
| | 11. Grievance disputes previous grievances, appeal decisions, or staff members who rendered those decisions. | |
| | 12. You are currently on grievance restriction. You are limited to one grievance every 15 working days. Last grievance # _____, submitted on _____. | |
| | 13. You have not provided this office with the required documentation for proper review such as a DC153A Personal Property Inventory Sheet, Confiscated Items Receipt, Commissary/Outside Purchase Form, or documents outlined on the DC ADM 005 Notification of Deductions memo and/or the Notification of Amended Deductions memo. | |
| | 14. The publication appeal did not include a copy of the Notice of Incoming Publication Denial form (Attachment 3-B of DC ADM 803). | |
| Response: | | |

I do not understand what your grievance issue is. This appears to be more of a request than a grievance.

| Signature: | *(signed)* |
|---|---|
| Title: | Facility Grievance Coordinator |
| Date: | 2-15-18 |

cc: DC-15
     File

**DC-ADM 804, Inmate Grievance System Procedures Manual**
Section 1 – Grievances & Initial Review                                                                                                                         Attachment 1-C
Issued: 1/26/2016
Effective: 2/16/2016

(Exhibit B)

# Inmate Appeal to Final Review
## GRIEVANCE

| INMATE NUMBER | NAME | FACILITY | DATE | GRIEVANCE# |
|---|---|---|---|---|
| NA6461 | Garfor Brown | SCI H | 2/22/18 | 721491 |

I received my appeal from the Superintendent on _____ and have the following appeal issues.

Refer to DC-ADM 804, Grievance Appeal Procedures, for complete instructions.
Appeals must relate to the issue presented in the initial grievance and 1st level appeal.

Please provide a BRIEF (no longer than two pages) appeal statement.

Brown has stated he would like to preserve all tape recording, from 2/2/18 through this Grievance dated; in which camera will identified all officials brown is claiming was in coerced acting under the color of the state law pursuant to his sexual assault claims, That is all Brown needs to assert see Harris v. Jacobs 2012 USDistrich 134 all cl

INMATE SIGNATURE: _____

DC-ADM 804, Inmate Grievance System Procedures Manual
Section 2 – Appeals                                          Attachment 2-E
Issued: 12/1/2010
Effective: 12/8/2010

(Exhibit 

**Facility Manager's Appeal Response**
**SCI-Huntingdon**
1100 Pike St.
Huntingdon, PA 16654-1112



This serves to acknowledge receipt of your grievance appeal to the Facility Manager for the grievance noted below. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy," the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to me, and any other documents submitted.

| Inmate Name: | Gartor Brown | Inmate Number: | NA6401 |
|---|---|---|---|
| Facility: | HUN | Unit Location: | GD-Unit |
| Grievance #: | 721491 | | |

**Decision:**
☒ Uphold Response (UR)   ☐ Uphold in part/Deny in part
☐ Uphold Inmate (UI)     ☐ Dismiss/Dismiss Untimely

It is the decision of this Facility Manager to uphold the initial response, uphold the inmate, dismiss, or uphold in part/deny in part. This response will include a brief rationale summarizing the conclusion and any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.

**Response:** Frivolous

In reviewing your initial grievance and appeal, I note your original grievance was rejected because it was not understandable. In your appeal to this rejected grievance, you repeat the request presented in your initial grievance. I note in your initial grievance, you request to preserve video; however, you do not present any complaints or issues. I must agree this is more of a request than a grievance, and it is not clear what your issue is. DC ADM 804 does permit you to resubmit a rejected grievance; however, you chose to appeal the rejection instead. I must agree grievance #721491 has been properly rejected.

| Signature: | Kevin Kauffman |
|---|---|
| Title: | Facility Manager |
| Date: | 3-27-18 |

cc: DC-15
    File

DC-ADM 804, Inmate Grievance System Procedures Manual
Section 2 - Appeals                                            Attachment 2-B
Issued: 12/1/2010
Effective: 12/8/2010

D 109



# Initial Review Response
SCI Huntingdon
1100 Pike St
Huntingdon, PA, 16654-1112


(Exhibit G)

06/19/2019 01:39

| | | | |
|---|---|---|---|
| Inmate Name: | BROWN, GARTOR KIKI | DOC #: | NA6401 |
| Facility: | Huntingdon | Unit Location: | G / D |
| Grievance #: | 801572 | | |

This serves to acknowledge receipt of your grievance to the assigned Grievance Officer. The response is as follows:

**Decision: Grievance Denied**

It is the decision of this Grievance Officer to uphold, deny, or uphold in part/deny in part the inmate's initial grievance. This response will include a brief rationale, a summary of the conclusion, any action taken to resolve the issue(s) raised in the grievance, and the relief sought.

**Response:**

I have received and reviewed your grievance, #803011. In your grievance, you state that CO1 Kirsch was receiving mail, on 05/07/2019. You claim that Officer Kirsch asked you what was in the envelope. You then claim that you disclosed the contents of the envelopes. After you disclosed to Officer Kirsch that material in the envelope pertained to an Appeal that was time barred, you claim that Officer Kirsch stated, 'that's because we don't send your grievances out, Why you think all your shit's time bar.' You then state that you also handed Officer Kirsch a second packet with legal mail. As Officer Kirsch was walking away from your cell, you also claim that Officer Kirsch also said, 'that shit with all the exhibits you send to the court of appeals, motion to re-open did not go out too.' (05/05/19) You then state that Officer Kirsch placed your mail on the mailbox without stamping it. You continue in your grievance, stating that Officer 'Johnson' (Johnston) did stamp and staple your mail, then place them in the mailbox. You then claimed that you were overcharged to mail one of your packages. You are bringing Municipal claims against '4 John Does', in their official and individual capacities. You, also, claim negligence, due process, equal protection, retaliation, discrimination, and harassment against Officer Kirsch. You are asking for $200,000 / each defendant in punitive and compensatory damages.

I have queued Officers Kirsch and Johnston, reviewed CCTV footage, and collected pertinent cash slip receipts. Officer Kirsch stated that he did pick up mail on D-Quad on 5/7/19. Officer Kirsch recalled that your envelopes were too large to slide through the door, so he had to open the feeding aperture to retrieve your mail. Officer Kirsch stated that he never did, nor would he, ask you to disclose confidential information contained in your mail. Officer Kirsch denied making any statements about your mail not being handled properly by staff. Officer Kirsch did confirm that he did not have the Cash Slip Stamp on D-Quad. Officer Kirsch asked Officer Johnston, who had the stamp to process your Legal Mail that he had prepared on the D-Quad mailbox. Officer Johnston did confirm that he and Officer Kirsch did discuss about getting your Legal Mail stapled and stamped, prior to Officer Johnston entering D-Quad. I have collected 5 cash slip receipts, (3) for 5/5/19 and (2) for 5/7/19, that can prove that staff collected, stapled, and stamped your Legal Mail properly.

After investigating your claims in your grievance. #801572, I find your grievance . . Denied (Frivolous)

☑ **Frivolous:**
Video displays that staff acted appropriately with your mail. Cash slip receipts display that all the mail packages, that you claim were not sent out, due to staff negligence, did, in fact, get mailed out.

---

DC-ADM 804, Inmate Grievance System Procedures Manual

Section 1 - Grievances & Initial Review, Attachment 1-D                Issued: 1/26/2016  Effective: 2/16/2016

NA6401

BROWN, GARTOR KIKI                                                                              Page1 of 2

11-11-19



(Exhibit H)

# Facility Manager's Appeal Response
SCI Huntingdon
1100 Pike St
Huntingdon, PA, 16654-1112

D102

10/29/2019 12:57

| Inmate Name: | STRONG, JAMES | DOC #: | NQ9909 |
|---|---|---|---|
| Facility: | Huntingdon | Unit Location: | G / D |
| Grievance #: | 820608 | | |

This serves to acknowledge receipt of your grievance appeal to the Facility Manager for the grievance noted above. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to me and any other documents submitted.

**Decision: Uphold Response**

It is the decision of this Facility Manager to uphold the initial response, uphold the inmate, dismiss, or Uphold in part/Deny in part. This response will include a brief rationale, summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.

**Response:**

In reviewing your grievance and appeal, I note your concern with Officer Garlick was appropriately addressed by Lt. Campbell. In your appeal, you claim the following: the grievance officer's response is tactic approval of the actions of CO Garlick, CO Garlick used racial, obscene and vulgar language towards you, you are asking for the video footage of the dates in question to be retained, the video will show your cell light on and your door not covered and will also show CO Garlick making racial slurs and denying you breakfast and lunch. You also state CO Garlick has had a number of complaints filed on him by other prisoners dating back to before you came here.

After reviewing the initial response, I find Lt. Campbell investigated your complaints and his investigation revealed, if your cell light or window was covered in any way, staff were directed to not open the feeding aperture, which is per the 06.05.01 Administration of Security Level Five Housing Unit policy. You claim the video footage will reveal you had your cell light on, door not covered and CO Garlick making racial slurs and denying you lunch and dinner. Lt. Campbell informed you that he reviewed the video and could find no interaction with CO Garlick that substantiated your claim; furthermore, the video footage has no sound, therefore, there is no way to substantiate what was said. Lt. Campbell also interviewed CO Garlick and he denied your allegations. You also claim that CO Garlick has prior complaints filed against him by other inmates, this issue was not addressed on appeal, and furthermore, these other inmates can utilize the DC ADM 804 for their complaints.

In closing, I can only reiterate that I uphold the response provided by the grievance officer. Your grievance is found to be without merit.

| Signature: | | |
|---|---|---|
| Name: | K. Kauffman | |
| Title: | Facility Manager | |
| Date: | 10-29-19 | |

CC: DC-15
File

---

DC-ADM 804, Inmate Grievance System Procedures Manual

Section 2 - Appeals, Attachment 2-B                                    Issued: 1/26/2016  Effective: 2/16/2016

NQ9909    Grievance #: 820608

STRONG, JAMES                                                                              Page1 of 1

(Exhibit K)

Lt Orndorf, who conducted the initial interview with Inmate Brown on the night the sick call slip was discovered, stated "Inmate Brown would not give any details other than he was sexually assaulted by his ex-cellie, FX1504 Allen". Lt Orndorf stated "Inmate Brown alleged his nose was broken, he refused any medical treatment and I did not notice any injuries or abnormalities to Brown's face that would suggest a broken nose".

Lt Orndorf submitted a written statement.

**Subject Staff/Inmate Version:**

FX1504 Allen is serving a Life sentence from Philadelphia County for Murder (1st Degree). Allen is currently housed in the Restricted Housing Unit (RHU).

FX1504 Allen was interviewed on February 14, 2018 in D-2 School by Trooper Lear and Lt Maxwell.

During the interview the allegations against Allen were reviewed. Allen denied the allegations of sexual misconduct against him, claimed Brown is lying and Brown is mentally challenged. Allen stated he never had a fight with Brown or did anything sexual with him. Allen stated he doesn't know why Brown was making this stuff up, he didn't know if he was trying to get out of jail or get a "Z" code. Allen stated he didn't know Brown was crazy until after he was in the cell for a couple days but he didn't really talk to Brown much. Allen stated one day he was laying in his bunk reading and Brown was standing at the cell door and his nose was bleeding. Allen stated "The CO asked if we were fighting and we both said no". Allen further stated "The CO gave Brown a set of clean sheets due to some of the blood getting on them from his nose". When asked if he ever put his hands on Brown physically or sexually, Allen stated "No". Allen was asked if Brown ever pursued him sexually, he stated "No, there was never any contact between the two of us ever".

FX1504 Allen submitted a written statement.

**Review of Documentation/Video:**

A review of the Medical/Dental Sick Call Request authored by NA6401 Brown alleging he was assaulted from February 3, 2018 thru February 7, 2018 and raped on February 7, 2018. Brown alleged he had a lot of injuries.

A review of DC-121 Employee Report of Incident authored by LPN Trice stating she received a sick call slip from NA6401 Brown alleging he was physically and sexually assaulted by his previous cellmate from February 3, 2018 through February 7, 2018.

(Exhibit K)

| SP 7-0051 (12-2011) | REPORT TYPE | DATE(S)/DAY(S) OF INCIDENT | INCIDENT NO. |
| --- | --- | --- | --- |
| PENNSYLVANIA STATE POLICE | ☒ INCIDENT | | PA18-154001 |
| CONTINUATION SHEET ☒ | ☐ OTHER | TIME(S) OF INCIDENT | JUVENILE ☐ | DOMESTIC VIOLENCE ☐ |
| SUPPLEMENTAL INVESTIGATION REPORT ☐ | | | |

ATTACHMENTS:
☐ INTOXICATION WORK SHEET   ☐ MISSING PERSON CHECKLIST
☐ FELONY CRIMES AGAINST THE PERSON   ☐ STATEMENT FORM(S)
☐ VICTIM/WITNESS ASSISTANCE GUIDE RECEIPT   ☐ RIGHTS WARNING AND WAIVER
☐ PROPERTY RECORD
☐ OTHER

DISP.: ☐ CLEARED BY ARREST  ☐ UNFOUNDED  ☐ EXCEPTIONALLY CLEARED- DATE
A ☐ DEATH OF ACTOR          D ☐ VICTIM REFUSED TO COOPERATE
B ☐ PROSECUTION DECLINED    E ☐ JUVENILE/NO CUSTODY
C ☐ EXTRADITION DENIED      N ☐ NOT APPLICABLE   ☐ MULTIPLE CLEAR-UP

1. ORI/STATION

2. DATE OF REPORT

3. OFFENSE

4. VICTIM

5. NARRATIVE

### DESCRIPTION OF SCENE/LOCATION:
The location of this incident is S.C.I. Huntingdon-1100 Pike Street, Huntingdon PA, 16654-Smithfield Township/Huntingdon County. The scene of this incident is RHU Cell GA-1008 at SCI Huntingdon.

### SYNOPSIS:
On 02/14/18 LT MAXWELL contacted PSP Huntingdon to report an alleged assault and rape at S.C.I Huntingdon. LT MAXWELL stated Inmate#NA6401 Gartor Kiki BROWN reported to medical staff he was assaulted (physically beat up) by his cell mate Inmate#FX1504 Raheem ALLEN from 02/03/18 until 02/07/18. BROWN reported he was raped by ALLEN on 02/07/18. BROWN initially refused medical attention but later allowed pictures to be taken.

### PHYSICAL EVIDENCE:
None

### INVESTIGATIVE DETAILS:
On 02/14/18 at approximately 1300HRS I arrived at S.C.I. Huntingdon and spoke with LT. MAXWELL about this incident. I requested interviews with the victim, the alleged actor and all D.O.C. staff having contact with Inmate BROWN/knowledge of this incident. LT. MAXWELL provided a brief description of the reported assault and rape. Lt. MAXWELL provided reports prepared by LT. ORNDORF and LPN TRICE. LT. MAXWELL related no video surveillance of the alleged assault or rape was available.

### INTERVIEW: Victim
On 02/14/18 at approximately 1345HRS I interviewed the victim at S.C.I. Huntingdon in the presence of LT. MAXWELL. PYLE, Administrative Officer 1, transcribed this interview. The victim related the assaults took place as soon as he was placed in the cell with "Adam". It should be noted the victim is referring to being placed in cell GA-1008 on 02/03/18. The victim was housed with Inmate#FX1504 Raheem ALLEN. The victim alleges "Adam" began swinging on him as soon as he got into the cell. The victim stated "Adam" told the C.O.'s he didn't want him in there. The victim stated he and "Adam" both talked to PARSONS (PSS-Psych Services Specialist) on 02/05/18 and requested they be separated due to being enemies. The victim told PARSONS he was suicidal. The victim stated his requests were no granted. The victim reported "Adam" talked to LT. KENDRICK and threatened to "kill him or fuck him". "Adam" was allegedly given the option to move from the cell but refused as this was "his cell". The victim alleges in the middle of the night on 02/06/18 "Adam" tried to rape him but was unsuccessful.
CONTINUED

| 6. OFFICER'S NAME/SIGNATURE | BADGE NO. | 7. INVEST. RECM. | 8. SUPV. INIT./BADGE NO. | 9. ☐ CONCUR ☐ NONCONCUR | 10. PAGE |
| --- | --- | --- | --- | --- | --- |
| TPR. LEAR/ | 8698 | ☐ CONT. ☒ TERM. | | | 02 |

STATION

DEF000141

( Exhibit L )

statement. LPN Trice was interviewed and submitted a written statement. COT C Johnston was interviewed and submitted a written statement. Lt Orndorf was interviewed and submitted a written statement. FX1504 Allen was interviewed and submitted a written statement. DOC summaries, Cell Histories and Misconduct Histories were obtained and reviewed. DC-457 Medical Incident/Injury Reports were obtained and reviewed. Guard 1 Report for the Pipe station located at GA1008 cell were obtained and reviewed. Inmate Cumulative Adjustment Records for NA6401 Brown were obtained for review. Pennsylvania State Police were notified of the allegation. No evidence was collected due to time between the alleged incident date and the date the alleged incident was reported. There is no video available for this allegation.

## SUMMARY OF FINDINGS:

### Inmate Victim/Complainant Version:

NA6401 Brown is serving a 2yr to 4yr sentence from Chester County for Aggravated Harassment by Prisoner. Brown is currently housed in the Restricted Housing Unit (RHU).

NA6401 Brown was interviewed on February 14, 2018 in D-2 School by Trooper Lear and Lt Maxwell.

During the interview Brown was asked to explain details of his allegations. Brown stated "It started on the 3rd when I was taken out of the camera cell and placed in a cell with Adam. When Brown was asked who Adam was he stated "my old celly". Brown was referring to Allen as Adam. Brown continued to refer to Allen as Adam throughout the interview. Brown claimed he told CO Plocinik that he don't get along with Allen, and was put in the cell anyway. Brown stated "Assaults started right when I got in the cell and CO Plocinik just said to have fun with Allen because he's a kid toucher". Brown alleged he told several staff on several different dates he needed moved because he and Allen were not getting along. When asked to identify the staff members he told, Brown stated "Mr. Parsons, CO Plocinik, Mr. Kendricks, a Sgt and other CO's". Brown was asked to describe the details of the alleged assaults. Brown stated Allen attempted to pull his jumpsuit down while fighting. Brown alleged at this time he hit his head off the cell and continued to fight Allen. Brown alleged Allen was attempting to rape him but became tired and gave up. The second time Brown alleged he and Allen were fighting and Allen was attempting to pull his jumpsuit down again. Brown stated he got tired and didn't fight off Allen. Brown alleged Allen then "put his dick in my butt and raped me". When Brown was asked why he waited so long to report the allegations, Brown stated "because the same CO's were on the block who kept ignoring me".

NA6401 Brown refused to submit a written statement.

### Inmate Witness Version:


(EXHIBIT)

DC-ADM 008, Prison Rape Elimination Act (PREA) Procedures Manual
Section 2 – Sexual Abuse/Sexual Harassment Prevention and Training

    (7) the number and placement of supervisory staff;

    (8) facility programs occurring on a particular shift;

    (9) any applicable State or local laws, regulations, or standards;

    (10) the prevalence of substantiated and unsubstantiated incidents of sexual abuse; and

    (11) any other relevant factors.

b. In circumstances of non-compliance with the staffing plan, the Facility Manager/designee shall document, in writing, and justify all deviations from the plan. (28 C.F.R. §115.13[b]) This documentation *shall* be forwarded to the Executive Deputy Secretary, Regional Deputy Secretary, PREA Coordinator at *CR, DOC PREA Reports email address*, and Central Office Security Major.

c. Whenever necessary, but no less frequently than once a year, each facility shall assess, determine, and document whether adjustments are needed to: (28 C.F.R. §115.13[c])

    (1) the facility's deployment of video monitoring systems and other monitoring technologies; and (28 C.F.R. §115.13[c][2])

    (2) the resources the facility has available to commit to ensure adherence to the staffing plan. (28 C.F.R. §115.13[c][3])

d. The annual reviews *shall* be conducted in consultation with the PCM at that facility and the statewide PREA Coordinator. (28 C.F.R. §115.13[c])

5. Access to Information for Special Populations

a. Pursuant to Department policy DC-ADM 006, "Reasonable Accommodations for Inmates with Disabilities," the Department shall ensure that inmates with disabilities have an equal opportunity to participate in or benefit from all aspects of the Department's efforts to prevent, detect, and respond to sexual abuse and sexual harassment. (28 C.F.R. §115.16[a])

b. Written materials *shall* either be delivered in alternative formats that accommodate the inmate's disability or the information *shall* be delivered through alternative methods, such as reading it to the inmate or communicating through an interpreter, which ensures the understanding of the PREA-related material. (28 C.F.R. §115.16[a])

c. The Department shall take reasonable steps to ensure meaningful access to all aspects of the Department's efforts to prevent, detect, and respond to sexual abuse and sexual harassment to inmates who are limited English proficient, including steps

---

DC-ADM 008, Prison Rape Elimination Act (PREA) Procedures Manual
Section 2 – Sexual Abuse/Sexual Harassment Prevention and Training

    (2) the other alternative means of separation that were explored; and

    (3) the reason why no alternative means of separation can be arranged. (28 C.F.R. §115.43[d][2])

e. If the Shift Commander assigns an inmate to involuntary AC for the purpose of protection from sexual victimization, access to programs, privileges, education, or work opportunities shall be afforded to that inmate to the extent possible. If the facility restricts access to these opportunities, the facility shall document in the Involuntary Administrative Custody Services Access Restriction Form (Attachment 2-C). (28 C.F.R. §115.43[b])

    (1) the opportunities that have been limited; (28 C.F.R. §115.43[b][1])

    (2) the duration of the limitation; and (28 C.F.R. §115.43[b][2])

    (3) the reasons for such limitations. (28 C.F.R. §115.43[b][3])

f. The facility may assign inmates to involuntary AC only until an alternative means of separation from likely abusers can be arranged and such assignment shall not ordinarily exceed 30 days. (28 C.F.R. §115.43[c])

g. In accordance with Department policy DC-ADM 802, "Administrative Custody Procedures," at least every 30 days, the Program Review Committee (PRC) shall ensure each inmate is reviewed to determine whether there is a continuing need for separation from the general population. This review shall be documented on the *DC-141, Part 1 (Other) Report*. (28 C.F.R. §115.43[e])

7. Upgrade to Facilities and Technologies

a. When designing or acquiring any new facility and in planning any substantial expansion or modification of existing facilities, the Department shall consider the effect of the design, acquisition, expansion, or modification upon the Department's ability to protect inmates from sexual abuse. (28 C.F.R. §115.18[a])

b. When installing or updating a video monitoring system, electronic surveillance system, or other monitoring technology, the Department shall consider how such technology may enhance the Department's ability to protect inmates from sexual abuse. (28 C.F.R. §115.18[b])

8. Housing of Youthful Inmates

a. A youthful inmate (under the age of 18) shall not be placed in a housing unit in which the youthful inmate will have sight, sound, or physical contact with any adult inmate through the use of a shared dayroom or other common space, shower area, or sleeping quarters. (28 C.F.R. §115.14[a])

## CERTIFICATE OF SERVICE

I hereby certify that I 'am Garla kiki Brown Plaintiff in this matter & on 3 day of 12 20 20

Plaintiff's Motion For Sanction For spolation of electronically Stored information 1 Page Plaintiff's Brief 2 pg & 11 Pages in Exhibits was Put in to the Prison's mail's box for first class Postage to the U.S. District Court Middle District.

U.S. District Court
235 North washington Ave
P.O. Box 148
Scranton, PA 18501

Dated 3/12/20

Garla Brown NR640I [signature]
SCI Forest
P.O. Box 307
286 woodland Dr.
Marrenville, PA 16239

Smart Communications/PADOC

SCI- Forest

Name Gaitor Brown

Number NA4401

PO Box 33028

St Petersburg FL 33733

RECEIVED
SCRANTON

MAR 17 2020

_____ /s/ _____
DEPUTY CLERK

INMATE
MAIL

United States District Court
235 North Washington Ave
P.O. Box 1148
Scranton, PA 18501

neopost
03/10/2020
US POSTAGE $001.40
ZIP 16239
011D11974206