(Exhibit 48)

18-CV-1527

DC-707

## SECURITY LEVEL 5 HOUSING UNIT
## EXERCISE, SHOWER, SHAVE SIGN-UP

**Housing Unit: GA**                                    **Date:** 2/6/2018   GA

All inmates listed were provided the opportunity for recreation, shower and/or shave.
Each inmate's response is as noted.

**Codes:**                X = Inmate accepted opportunity
D = Inmate denied opportunity
R = Inmate refused opportunity (Verbal or Physical Response Required)
N/A = Specific activity not available on this date
INA = Inmate not available (ATA, etc.)

**Abbreviations**      RZ = Razor,           NC = Nail Clippers        IND = Indigent

| Cell# | Inmate# | Ex | Shwr | BI | IND | CB | RZ | M | NC | Cell# | Inmate# | Ex | Shwr | BI | IND | CB | RZ | M | NC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  | R |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  | R |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  | R |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  | R |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  | R |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| 1008 | FX1504 | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| 1008 | NA6401 | R |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |

DEF000091

(Exhibit 49)

DC-707

## SECURITY LEVEL 5 HOUSING UNIT
## EXERCISE, SHOWER, SHAVE SIGN-UP

Housing Unit: GA                                    Date:     2/7/2018    GA

All inmates listed were provided the opportunity for recreation, shower and/or shave.
Each inmate's response is as noted.

Codes:            X = Inmate accepted opportunity
                  D = Inmate denied opportunity
        5         R = Inmate refused opportunity (Verbal or Physical Response Required)
                  N/A = Specific activity not available on this date
                  INA = Inmate not available (ATA, etc.)

Abbreviations    RZ = Razor,        NC = Nail Clippers        IND = Indigent

| Cell# | Inmate# | Ex | Shwr | Bl | IND | CB | RZ | M | NC | Cell# | Inmate# | Ex | Shwr | Bl | IND | CB | RZ | M | NC |
|-------|---------|----|------|----|-----|----|----|---|----|-------|---------|----|------|----|-----|----|----|---|----|
|       |         |    |      |    |     |    | X  | 2 |    |       |         |    |      |    |     |    | R  |   |    |
|       |         |    |      |    |     |    | R  |   |    |       |         |    |      |    |     |    | R  |   |    |
|       |         |    |      |    |     |    |    |   |    |       |         |    |      |    |     |    | X  |   |    |
|       |         |    |      |    |     |    | X  | 52|    |       |         |    |      |    |     |    | R  |   |    |
|       |         |    |      |    |     |    | R  |   |    |       |         |    |      |    |     |    | R  |   |    |
|       |         |    |      |    |     |    | P  |   |    |       |         |    |      |    |     |    | R  |   |    |
|       |         |    |      |    |     |    | R  |   |    |       |         |    |      |    |     |    | R  |   |    |
|       |         |    |      |    |     |    | X  |   |    |       |         |    |      |    |     |    | R  |   |    |
|       |         |    |      |    |     |    |    |   |    |       |         |    |      |    |     |    | R  |   |    |
|       |         |    |      |    |     |    | X  |   |    |       |         |    |      |    |     |    | R  |   |    |
|       |         |    |      |    |     |    |    |   |    |       |         |    |      |    |     |    | R  |   |    |
| 1008  | FX1504  | X  |      |    |     |    | R  |   |    |       |         |    |      |    |     |    | R  |   |    |
| 1008  | NA6401  | R  |      |    |     |    | R  |   |    |       |         |    |      |    |     |    | R  |   |    |
|       |         |    |      |    |     |    | R  |   |    |       |         |    |      |    |     |    | R  |   |    |
|       |         |    |      |    |     |    |    |   |    |       |         |    |      |    |     |    | R  |   |    |
|       |         |    |      |    |     |    | R  |   |    |       |         |    |      |    |     |    | R  |   |    |
|       |         |    |      |    |     |    | R  |   |    |       |         |    |      |    |     |    | R  |   |    |
|       |         |    |      |    |     |    | R  |   |    |       |         |    |      |    |     |    | R  |   |    |
|       |         |    |      |    |     |    | R  |   |    |       |         |    |      |    |     |    | X  |   |    |
|       |         |    |      |    |     |    | R  |   |    |       |         |    |      |    |     |    | R  |   |    |
|       |         |    |      |    |     |    | R  |   |    |       |         |    |      |    |     |    | R  |   |    |
|       |         |    |      |    |     |    |    |   |    |       |         |    |      |    |     |    | X  |   |    |
|       |         |    |      |    |     |    | R  |   |    |       |         |    |      |    |     |    | R  |   |    |
|       |         |    |      |    |     |    | R  |   |    |       |         |    |      |    |     |    | R  |   |    |
|       |         |    |      |    |     |    | R  |   |    |       |         |    |      |    |     |    | R  |   |    |
|       |         |    |      |    |     |    | X  |   |    |       |         |    |      |    |     |    | R  |   |    |
|       |         |    |      |    |     |    |    |   |    |       |         |    |      |    |     |    | R  |   |    |

DEF000092

A                              Exhibit 50                    D105

| Form DC-141 Part 1<br>Rev. 12/2017 | **COMMONWEALTH OF PENNSYLVANIA<br>DEPARTMENT OF CORRECTIONS** | | D031777 |

☑ MISCONDUCT REPORT      ☐ OTHER      ☐ DC-ADM 801 INFORMAL RESOLUTION

| DC Number<br>NA6401 | Name<br>BROWN | | Institution<br>SCI H | Incident Time 24 Hr. Base<br>1130 | Incident Date<br>2-8-18 | Date of Report<br>2-8-18 |
| Quarters<br>GD 1005 | Place of Incident<br>GA Showers | | | | | |

### OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| STAFF | Col B. HARRIS | | X | | | | |
| | | | | | | | |

### MISCONDUCT CHARGE OR OTHER ACTION

CLASS 1 # 35 Refusing to obey an order.

### STAFF MEMBER'S VERSION

On 2-8-2018 at approx 1130 hrs, I went to the Showers on the Bottom of GA quad where inmate NA6401 Brown stated to me "I already told Harris but I Am Not taking a cellie." He was given A Direct order to take A cellmate. Inmate Brown replies "I Am Not going back to 100%."

### IMMEDIATE ACTION TAKEN AND REASON
Him informed of this Report - Not Appropriate For informal Resolution Due to charge Continued current Status until Seen By Hex

| PRE-HEARING CONFINEMENT | | | |
|---|---|---|---|
| **IF YES** | | | |
| ☐ YES | TIME | DATE | |
| ☑ NO | | | |

**FORMS GIVEN TO INMATE**
☑ REQUEST FOR WITNESSES AND REPRESENTATION   ☑ INMATE'S VERSION

| REPORTING STAFF MEMBER<br>SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY<br>RANKING C.O. ON DUTY   SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY | |
|---|---|---|---|
| Col K Myers | R Cron Co'l | DATE<br>2-8-18 | TIME 24 HOUR<br>BASE<br>1430 |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | MISCONDUCT CATEGORY | Signature of Person Serving Notice |
|---|---|---|---|
| DATE<br>2/10/2018 | TIME<br>0800 | ☑ CLASS 1   ☐ CLASS 2 | Newter Col |

### Notice to Inmate
You are scheduled for a hearing on the allegation on the date and time indicated or as soon thereafter as possible. You may remain silent if you wish. Anything you say shall be used against you both at the misconduct hearing and in a court of law, if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you shall be asked no further questions. If you are found guilty of a Class 1 misconduct, any pre-release status you have shall be revoked.

WHITE - DC-15              YELLOW – Inmate              PINK – Reporting Staff Member

Ref: 1244207 pg 42 of 45  s 01/31/2019 16:08

(Exhibit 51)

| Job Code | Pay Scale Group | Pay Scale Type | Bargaining Unit | Type Service | Executive Board Change | Last Change Effective | Job Specification Effective |
|----------|-----------------|----------------|-----------------|--------------|------------------------|-----------------------|-----------------------------|
| 47230 | 04 | CM | H3 | C | 999-99 | 1/1/2019 | 2/10/2017 |

**JOB TITLE:** CORRECTIONS OFFICER 3
**JOB CODE:** 47230

**SERIES NATURE OF WORK:** The Corrections Officer job series describes work involving the care, custody, control, and non-professional counseling of inmates.

**DEFINITION:** This is supervisory and/or administrative work in the care, custody, control, and non-professional counseling of inmates on an assigned shift in a state correctional facility, or supervisory and/or administrative work within the Central Office of the Department of Corrections.

An employee in this job in a correctional facility is responsible for observing and directing the activities of subordinate corrections officers and inmates during an assigned shift to ensure security is maintained and facility rules are adhered to, or performs administrative duties of equivalent scope and complexity. An employee in this job may also assume sole authority and responsibility for facility operations on an assigned shift where a higher-level corrections officer is not assigned and in the absence of an administrative supervisor. An employee in this job exercises discretion and considerable independent judgment in the performance of daily tasks or under emergency conditions. Work is performed according to established rules and regulations and is reviewed by a higher-level officer or administrative supervisor through direct observation, inspections, and reports.

- In a Central Office setting, an employee in this job is responsible for assisting in developing and implementing policies and procedures for programs related to security, inmate abuse allegations, staff misconduct, drug interdiction, or other areas of operations, and for monitoring facility compliance; or is assigned in an administrative and training capacity to the Department's Training Academy.

**DISTINGUISHING CHARACTERISTICS:**

- Work is differentiated from the lower-level job by the responsibility for supervising lower-level corrections officers and/or performing administrative duties that include assisting with the development and effective implementation of agency or facility program policies and procedures.

**EXAMPLES OF WORK:** (NOTE: The examples of work are representative of the work, but every position classified to this job may not perform all examples of work listed. Conversely, this is not an all-inclusive list of work examples.):

- Supervises and directs the security functions of subordinate corrections officers.

- Directs facility operations, such as, security, food service, plant maintenance, medical services, and recreation on an assigned shift where a higher-level corrections officer is not assigned and in the absence of an administrative supervisor.

- Supervises and participates in searches of inmates and visitors and inspections of facility grounds and buildings to ensure conformance with departmental policies and procedures and documents any violations.

- Supervises and provides non-professional counseling to inmates on issues related to facility adjustment as well as matters of a personal nature.

DEF000004

Ref: 1244207 pg 43 of 45


(Exhibit 52)

- Observes inmate behavior and takes appropriate action when anything unusual is detected.

- Participates as a member of a housing unit team.

- Conducts and participates in operational inspections to observe officers' performance, ensures officers are alert and diligent in the performance of their duties, ensures compliance with facility operations, and observes inmates' behavior.

- Monitors Corrections Officer Trainees' progress through observation, discussions with employees and other staff, and review of progress reports.

- Interprets rules, regulations, policies, and objectives of the facility to subordinate corrections officers and to inmates.

- Interviews inmates and staff, investigates incidents of inmate abuse or staff misconduct, and prepares required reports of findings and conclusions.

- Handles and secures evidence obtained from investigations and maintains chain-of-custody.

- Takes, receives, and verifies periodic counts of inmates.

- Investigates and prepares reports regarding findings, with conclusion and recommendations on infractions of the rules and regulations by staff and inmates, initiates corrective action, and recommends major corrective disciplinary action or dismissal.

- Authorizes and reviews the use of force.

- Supervises and participates in the search of visitors and in the inspection of incoming and outgoing vehicles, materials, and supplies for the presence of contraband and to prevent escape.

- Serves as a member of a facility Program Review Committee.

- Receives inmate and staff grievances, complaints, and requests and conducts initial investigation into causes and conditions, and resolves or recommends resolution.

- Prepares required reports on inspections and activities.

- Serves as a liaison with agency facilities or federal, state, and local law enforcement agencies.

- Audits and reviews facilities' security operations to ensure compliance with policies, rules, and regulations.

- Ensures that searches conducted by the Drug Interdiction Teams are in accordance with established procedures.

- Reviews extraordinary incident, inmate misconduct, and/or other reports prepared by facility staff to determine program and procedural compliance.

DEF000005



Ref: 1244207 pg 44 of 45 for GARVOR BROWN

(Exhibit 53)

- Performs the full range of supervisory duties.
- Employees in this job may participate in the performance of subordinates' work consistent with operational or organizational requirements.
- Performs related work as required.

ENTRY LEVEL KNOWLEDGES, SKILLS, AND ABILITIES:

- Knowledge of the methods and techniques used in enforcing discipline of inmates.
- Knowledge of individual and group behavior.
- Knowledge of the principles and practices of inmate supervision.
- Knowledge of inmate search and inspection procedures.
- Knowledge of corrections security and safety practices.
- Knowledge of basic first-aid practices.
- Knowledge of general housekeeping activities.
- Ability to read and interpret written materials.
- Ability to observe changes in inmate personality, demeanor, attitude, and degree or program participation and to identify unusual or suspicious behaviors.
- Ability to use restraining devices correctly and effectively.
- Ability to establish and maintain effective working relationships.
- Ability to communicate effectively orally.
- Ability to communicate effectively in writing.

FULL PERFORMANCE KNOWLEDGES, SKILLS, AND ABILITIES: (NOTE: These are expected of an employee performing the work of this job at the full performance level. These may not be evaluated by the State Civil Service Commission or used for Civil Service examination purposes and are not position-specific performance standards.):

- Knowledge of the use of drug detection procedures and equipment.
- Knowledge of the On-The-Job Training Program for Corrections Officer Trainees.
- Knowledge of emergency preparedness policies, procedures, and implementation.
- Knowledge of investigative principles, including the collection and preservation of evidence.
- Knowledge of appropriate interviewing, interrogation, and investigation techniques.

DEF000006

(EXhibit 54)

Iam inmate Juan Castillo #L53066. On
04/10/2018 While Standing at my door
I could here inmate Garter Brown and
CO Placinik arguing. I then heard Placinik
Call Garter a homisexual whit a attela dick.
Garter Said Fuck off and the CO told him to
Stick his thual up ass, and something about
Sucking dick. I then heard Garter asking
104 cell if he heard what the co has said to
him he Said yes. latter he told 105 he did not
want to get envolve for reasons of retaliation.
He also tell garter what ever he wrote. For him
he cou't use it because CO's keep coming to
his cell harassing him. I feel diffeemtet
about what is happening to Brown because I
know a third party can report allegations
of abuse. verbally or in writing to any StaFF
member or to Central OFFice. I also here
inmate harass Garter Brown all the time.
The inmate tell him he got rape and he
tell the police. They call Garter a rat, a guy
that likes it up the you know knowkekjod!
Some guys back here Said iF Garter go to
population they will kill him, because they
are friend whit the other guy on A-Pod
they say the other guy will pay anyone that
harm Garter. Everytime Garter leave the
Cell guys always threating him and call him gay
The COs moveb Same guy From A-pob here
in 109 the guy Send Shit in a CoFFe bag
to Garter. I dod not know what was in
the beg. Garter told me when he get the
bag it whs Shit and a note tha Said

DEF000296

(EXhibit 55)

eat my Shit. This Same guy Started
yelling to Garter how do You ass hole
Feel? So guy in yard came Sam told
me the guy name Allen at A-pod rape
Garter in Cell 108.
I ask Garter if he report all this to
StaFF he told me yes but do not want
to do anything. What I heard ca palisist
Say on ott lo 2018 I have inmates
tell Garter this every day and everytime
he leave the Cell in Frnt Of Other Cos.
Tim in Cell 107 in D-pod at SCI Huntingdon
I declar under penalty Of perjury
everything I am saying is trice

Date: 4-17-18

Sign [signature]

DEF000297

(Exhibit 56)

This document on which this certificate is affix is

CERTIFIED

A TRUE, CORRECT, AND COMPLETE COPY of the original

By:
Signed                                    Date

Convention de la Haya du-
5 - October - 1961

(Exhibit 56)

I am inmate Fidel Clark, inmate #FR1896, I'm currently in 2006 cell directly across from inmate Cantor Brown #NA6401. Prior to meeting inmate Brown multiple inmates had told me that Brown was yelling like a little girl in the RHU for his cellmate to get off him in which the yelling would not stop. Upon meeting Brown, I can clearly see he's no less than 105 pounds, he's a very little guy. While in the RHU with Brown, I witness multiple inmates yelling and making jokes at him about what happened with him and his last cellmate, and how he's a punk, pussy, fagot, rat. I could also hear the guards calling him "fuck boy" "that got fucked!" I also witness inmates beating on his wall and threatening him, I could see Brown crying through his cell door. I have a son and Brown looks very young, I don't think he deserve any such treatment; that is why I did offer to write this Truth Affidavit for him. This was written on February 9th, 2019. I do declare under penalty of perjury that everything asserted herein is true, correct, and complete to the best of my knowledge.

Without Prejudice/All Rights Reserved

By: _____ Fidel Clark ©_____ Auth. Rep.

American Sovereign, Public Minister,

Exempt from Levy

(EXhibit 57)



FX1504 Allen

Upper Back

February 14, 2018   0832

Picture by ▇. Emigh, RN

DEF000138

(EXhibit 58)



NA6041 Brown, Gartor                    February 14, 2018    0846

Right Knee                              Picture by███ Emigh, RN

DEF000125

(Exhibit 59)



NA6041 Brown, Gartor                    February 14, 2018    0846

Upper Back                              Picture by ▓. Emigh, RN

Ref: 1258489 pg 39 of 59 for GARTOR BROWN



(Exhibit 60)



NA6041 Brown, Gartor

Upper Front

February 14, 2018    0846

Picture by ██. Emigh, RN

DEF000129

( Exhibit 61 )



NA6041 Brown, Gartor

Upper Front

February 14, 2018   0846

Picture by █. Emigh, RN

489 pg 42 of 59 for GARTOR BROWN

(EXhibit 62)



FX1504 Allen

Lower Back

February 14, 2018   0832

Picture by ▉. Emigh, RN

DEF000133

Ref: 1258489 pg 45 of 59 for GARTOR BROWN

Exhibit 63



FX1504 Allen

Upper Front

February 14, 2018   0832

Picture by ██. Emigh, RN

Ref: 1258489 pg 46 of 59 for GARTOR BROWN

(EXhibit 64)



FX1504 Allen

Lower Front

February 14, 2018   0832

Picture by ▆. Emigh, RN

DEF000135

(Exhibit 65)

## STAFF WRITTEN STATEMENT OF SEXUAL ABUSE/HARASSMENT

LOCATION: CLINIC AREA   DATE: 2/16/18   TIME: 1100   CASE: 2018-P-197

LAST NAME: PLOCINIK   FIRST ███████

DOB: ███   EMPLOYEE NUMBER

FACILITY OF EMPLOYMENT:   SCI Huntingdon

██████ PLOCINIK ██████, hereby state that Lt Maxwell has identified himself/herself to me as a Commissioned Officer employed by the Pennsylvania Department of Corrections. ██████

The following statement is being given by me freely and without coercion for official Commonwealth business and will be considered for all purposes, including actions under the Statutes of this Commonwealth, just as though it had been sworn or affirmed before a court of law or formal arbitration panel. █████████████

AT NO TIME DID THIS OFFICER FORCE INMATE BROWN (KA6401) INTO A CELL WITH ANOTHER INMATE. AT NO POINT DID INMATE BROWN NOTIFY THIS OFFICER THAT HE WAS BEING PHYSICALY OR SEXUALY ASSAULTED. AT NO POINT DID BROWN REQUEST TO BE MOVED OUT OF ANY CELL. AT NO POINT DID THIS OFFICER NOTICE ANY INJURIES ON INMATE BROWN. AT NO POINT DID THIS OFFICER WITTNESS ANY BEHAVIOR FROM INMATE BROW THAT WOULD INDICATE HE WAS IN DISTRESS

I have read and understand this entire statement or it has been read and explained to me. I have signed this statement indicating that it is true and correct.

Having read this statement, which was given by me for official Commonwealth business, to be considered for all purposes, including actions under the Statutes of this Commonwealth, just as though it had been sworn or affirmed before a court of law or formal arbitration panel, I find I have nothing further to add. ██████████

_(signature)_ CO3   _(signature)_ 2/16/18
(Witness)   Page _1_ of _1_   (Signature of Person Making Statement) /Date

*DC-ADM 008, Prison Rape Elimination Act (PREA) Procedures Manual   Attachment 5-C, Page 1*
*Section 5 – Investigating Allegations of Sexual Harassment and/or Sexual Abuse*
Issued: 8/22/2016
Effective: 9/22/2016

DEF000034

Ref: 1258511 pg 44 of 45 for GARTOR BROWN

(Exhibit 66)

## STAFF WRITTEN STATEMENT OF SEXUAL ABUSE/HARASSMENT

LOCATION: _Clinic Area_   DATE: _15 Feb 2018_ TIME: _1430_   CASE: _2018-P-197_

LAST NAME: _Fochtman_   FIRST: ██████████████████

DOB: ████   EMPLOYEE NUMBER: ████████████████████

FACILITY OF EMPLOYMENT:   SCI Huntingdon

██████ _Fochtman_ _____, hereby state that Lt Maxwell has identified himself/herself to me as a Commissioned Officer employed by the Pennsylvania Department of Corrections. ██ _F_ (initial)

The following statement is being given by me freely and without coercion for official Commonwealth business and will be considered for all purposes, including actions under the Statutes of this Commonwealth, just as though it had been sworn or affirmed before a court of law or formal arbitration panel. ██ _F_ (initial)

_Sir, at no time did inmate Brown NA6401 inform this officer of any physical or sexual abuse. On 7 Feb 2018 this officer went to inmate Browns cell to ask about a reported bloody nose. This officer asked inmate Brown if the nose bleed was caused from fighting. Inmate Brown stated no it was not from fighting and that he has a history of nose bleeds. This officer observed inmate Allens hands and inmate Browns nose and neither had any signs of fighting. This officer then exchanged inmate Browns sheets and jumpsuit. This officer would also like to report that inmate Brown and Allen have requested to move cells because they could not see the tv, this officer informed them that we do not do courtesy moves._

I have read and understand this entire statement or it has been read and explained to me. I have signed this statement indicating that it is true and correct.

Having read this statement, which was given by me for official Commonwealth business, to be considered for all purposes, including actions under the Statutes of this Commonwealth, just as though it had been sworn or affirmed before a court of law or formal arbitration panel, I find I have nothing further to add.

_[signature]_   ████████████████ _[signature]_   15 Feb 2018
(Witness)                                           (Signature of Person Making Statement) /Date
                              Page _1_ of _1_

DC-ADM 008, Prison Rape Elimination Act (PREA) Procedures Manual    Attachment 5-C, Page 1
Section 5 – Investigating Allegations of Sexual Harassment and/or Sexual Abuse
Issued: 8/22/2016
Effective: 9/22/2016

DEF000028

Ref: 1258511 pg 38 of 45 for GARTOR BROWN

(Exhibit 67)

<u>STAFF WRITTEN STATEMENT OF SEXUAL ABUSE/HARASSMENT</u>

LOCATION: _Clinic Area_   DATE: _2/15/18_   TIME: _____   CASE: _2018-P-197_

LAST NAME: _Heaster_   FIRST: _Erik_   MIDDLE: _____

DOB: N/A   EMPLOYEE NUMBER: ███████████

FACILITY OF EMPLOYMENT:   SCI Huntingdon

███████ _Heaster_ _____, hereby state that Lt Maxwell has identified himself/herself to me as a Commissioned Officer employed by the Pennsylvania Department of Corrections. ████████

The following statement is being given by me freely and without coercion for official Commonwealth business and will be considered for all purposes, including actions under the Statutes of this Commonwealth, just as though it had been sworn or affirmed before a court of law or formal arbitration panel █████ (initial)

Inmate Brown (NA6401) claims that he was a victim of a sexual assault in the RHU on 2/7/18. I was alerted by the punchman that inmate Brown had a nose bleed so I sent officer Fochtman to investigate as to what the issue was. ~~Inmate officer~~ Fochtman reported to me that inmate Brown stated he frequently had nose bleeds and that all that he wanted was clean sheets and a jumpsuit. No officer on shift reported any evidence of an altercation and when both inmates were questioned by officer Fochtman he reported back to me that neither inmate admitted to fighting. Inmate Brown was moved into GA1008 with inmate Allen (FX1501) on 2/3/18. Inmate had requested to move to a different cell to various officers between 2/3/18 and 2/7/18 but his reasoning was that we had violated policy by placing him a cell with another inmate after he had received a misconduct for refusing to double cell on an earlier date. Inmate Brown went to showers on multiple occasions and voluntarily

I have read and understand this entire statement or it has been read and explained to me. I have signed this statement _went back_ indicating that it is true and correct.   _into that cell._

Having read this statement, which was given by me for official Commonwealth business, to be considered for all purposes, including actions under the Statutes of this Commonwealth, just as though it had been sworn or affirmed before a court of law or formal arbitration panel, I find I have nothing further to add.

_[signature]_   ████████ _[signature]_ _2/15/18_
(Witness)   (Signature of Person Making Statement) /Date

Page _1_ of _1_

*DC-ADM 008, Prison Rape Elimination Act (PREA) Procedures Manual   Attachment 5-C, Page 1*
*Section 5 – Investigating Allegations of Sexual Harassment and/or Sexual Abuse*
Issued: 8/22/2016
Effective: 9/22/2016

DEF000026

(Exhibit 68)

## STAFF WRITTEN STATEMENT OF SEXUAL ABUSE/HARASSMENT

LOCATION: Clinic Area     DATE: 02-20-18   TIME: 1351   CASE: 7618-R-187

LAST NAME: Johnston     FIRST: ▉▉▉▉▉▉▉▉

DOB: ▉▉     EMPLOYEE NUMBER ▉▉▉▉▉▉

FACILITY OF EMPLOYMENT:   SCI Huntingdon

▉▉▉▉▉ Johnston ▉▉▉▉, hereby state that Lt Maxwell has identified himself/herself to me as a Commissioned Officer employed by the Pennsylvania Department of Corrections. ▉▉▉▉

The following statement is being given by me freely and without coercion for official Commonwealth business and will be considered for all purposes, including actions under the Statutes of this Commonwealth, just as though it had been sworn or affirmed before a court of law or formal arbitration panel. ▉▉▉▉▉▉

While conducting a punch round in the RHU, I was stopped at A-Quad 1008 cell with Inmate Brown telling me he had a bloody nose and that there was blood on his sheet and jump suit. Brown was asked about fighting, after returning from the Sgt. on the RHU stating Inmate Brown had a bloody nose and blood on his sheet and jump suit. I noticed nothing in the cell was disruptive and the cellmate was okay and not harmed in any way. Inmate Brown stated there was no fight, that he just wanted his belongings replaced. No one requested medical attention other than the bloody nose. At no time did an inmate state about a physical or sexual assault.

I have read and understand this entire statement or it has been read and explained to me. I have signed this statement indicating that it is true and correct.

Having read this statement, which was given by me for official Commonwealth business, to be considered for all purposes, including actions under the Statutes of this Commonwealth, just as though it had been sworn or affirmed before a court of law or formal arbitration panel, I find I have nothing further to add.

_(signature)_ COT          ▉▉▉▉     _(signature)_ COT    02-20-18

(Witness)                              (Signature of Person Making Statement) /Date

Page __1__ of __1__

DC-ADM 008, Prison Rape Elimination Act (PREA) Procedures Manual    Attachment 5-C, Page 1
Section 5 – Investigating Allegations of Sexual Harassment and/or Sexual Abuse
Issued: 8/22/2016
Effective: 9/22/2016

DEF000042

Ref: 1258613 pg 9 of 57 for GARTOR BROWN



both went out for showers and neither refused to go back in the cell afterwards". CO2 Heaster further stated "I think Brown has had mental problems recently because last week he was sitting in his cell eating feces out of a cup".

CO2 Heaster submitted a written statement.

CO1 Fochtman was interviewed on February 15, 2018 in the Clinic area by Lt Maxwell and AO1 Pyle.

During the interview the allegations made by Inmate Brown were reviewed. CO1 Fochtman was asked if Brown ever reported being physically or sexually assaulted, he stated "No". CO1 Fochtman was asked if Brown ever asked to be moved from his cell with Allen, he stated "No". CO1 Fochtman was asked if he witnessed Brown with a nose bleed, he stated "No, I never actually saw the nose bleed but he did report to a trainee he had a nose bleed". CO1 Fochtman stated "I went to talk to Brown to see for myself if anybody was fighting and they both stated they weren't". CO1 Fochtman stated "Allen and Brown neither one asked for a cell move due to not getting along or physical assaults but they did complain they couldn't see the TV from their cell and I told them we don't do courtesy moves for the TV".

CO1 Fochtman submitted a written statement.

CO1 Chilcote was interviewed on February 15, 2018 in the Clinic area by Lt Maxwell and AO1 Pyle.

During the interview the allegations made by Inmate Brown were reviewed. CO1 Chilcote was asked if at any time he witnessed any signs of Brown being physically or sexually assaulted, he stated "no". CO1 Chilcote was asked if Brown ever reported being physically or sexually assaulted, he stated "No". CO1 Chilcote was asked if at any time Brown asked to be moved to a different cell, he stated "No but Brown told me he was moving because the unit manager saw him eating feces and told him he was moving so he was under the impression he had a temporary "Z" code". CO1 Chilcote was asked if he ever heard Allen threaten Brown with physical or sexual harm, he stated "No".

CO1 Chilcote submitted a written statement.

CO1 Garlick was interviewed on February 16, 2018 in the Clinic area by Lt Maxwell and AO1 Pyle.

During the interview the allegations made by Inmate Brown were reviewed. CO1 Garlick was asked if Brown ever reported to him being physically or sexually assaulted by Inmate Allen, he stated "No". CO1 Garlick was asked if at any time he witnessed any signs of Brown being physically or sexually assaulted, he stated "No". CO1 Garlick was asked if Inmate Brown ever asked to be moved from the cell, he stated "He rarely ever

DEF000011

(Exhibit 70)

speaks to any of us but he was in the shower the one day and said he didn't want to live with Allen anymore so we moved him that same day to D quad". CO1 Garlick stated "As we escorted Brown back from the shower to move cells he was smiling the whole time".

CO1 Garlick submitted a written statement.

CO1 Plocinik was interviewed on February 16, 2018 in the Clinic area by Lt Maxwell and AO1 Pyle.

During the interview the allegations made by Inmate Brown were reviewed. CO1 Plocinik was asked if he escorted Brown from the camera cell to GA1008 cell with Allen, he stated "I don't remember if I moved him or not". CO1 Plocinik was asked if he moved Brown and Brown was immediately assaulted by Allen as he alleged, he stated "No, I would have administered OC". CO1 Plocinik was asked if he ever witnessed Allen physically assault Brown, he stated "No". CO1 Plocinik was asked if Brown ever reported to him being physically or sexually assaulted by Inmate Allen, he stated "No". CO1 Plocinik was asked if at any time he witnessed any signs of Brown being physically or sexually assaulted, he stated "No". CO1 Plocinik was asked if Brown requested to be moved from the cell at any time, he stated "No". CO1 Plocinik was asked if Brown was forced into the cell with Allen, he stated "No".

CO1 Plocinik submitted a written statement.

CO1 ▓▓ Clark was interviewed on February 20, 2018 in the Clinic area by Lt Maxwell and AO1 Pyle.

During the interview the allegations made by Inmate Brown were reviewed. CO1 ▓▓ Clark was asked if Brown or Allen ever asked him about being moved from the cell, he stated "No". CO1 ▓▓ Clark was asked if he witnessed what appeared to be injuries from a possible physical altercation on Inmate Brown, he stated "No". CO1 ▓▓ Clark was asked if Inmate Brown ever reported to him he was physically and/or sexually assaulted by Inmate Allen, he stated "No". CO1▓▓ Clark stated the only thing Inmate Brown said to him was he was to live by himself when Inmate Allen was being escorted to yard. CO1 ▓▓ Clark stated "Nothing seemed to be out of the normal since Brown was always trying to get a cell by himself".

CO1 ▓▓ Clark submitted a written statement.

PSS Parsons was interviewed on February 20, 2018 in the Clinic area by Lt Maxwell and AO1 Pyle.

During the interview the allegations made by Inmate Brown were reviewed. PSS Parsons was asked if at any time Inmate Brown reported to him he was physically or sexually assaulted by his cellmate, PSS Parsons replied "No". PSS Parsons was asked if Inmate

(Exhibit 71)

| SP 7-0051 (12-2011) | REPORT TYPE | DATE(S)/DAY(S) OF INCIDENT | | INCIDENT NO. |
|---|---|---|---|---|
| **PENNSYLVANIA STATE POLICE** | ☒ INCIDENT | | | PA18-154001 |
| CONTINUATION SHEET ☒ | ☐ OTHER | TIME(S) OF INCIDENT | JUVENILE | DOMESTIC VIOLENCE |
| SUPPLEMENTAL INVESTIGATION REPORT ☐ | | | ☐ | ☐ |

| ATTACHMENTS: | | DISP.: ☐ CLEARED BY ARREST ☐ UNFOUNDED ☐ EXCEPTIONALLY CLEARED- DATE |
|---|---|---|
| ☐ INTOXICATION WORK SHEET | ☐ MISSING PERSON CHECKLIST | A ☐ DEATH OF ACTOR        D ☐ VICTIM REFUSED TO COOPERATE |
| ☐ FELONY CRIMES AGAINST THE PERSON | ☐ STATEMENT FORM(S) | B ☐ PROSECUTION DECLINED   E ☐ JUVENILE/NO CUSTODY |
| ☐ VICTIM/WITNESS ASSISTANCE GUIDE RECEIPT | ☒ RIGHTS WARNING AND WAIVER | C ☐ EXTRADITION DENIED     N ☐ NOT APPLICABLE    ☐ MULTIPLE CLEAR-UP |
| ☐ PROPERTY RECORD | | |
| ☐ OTHER | | |

| 1. ORI/STATION | 2. DATE OF REPORT |
|---|---|
| | |

| 3. OFFENSE | 4. VICTIM |
|---|---|
| | |

**5. NARRATIVE**

**INTERVIEW:** ▮▮▮▮ **HARRIS (Corrections Officer)** ▮▮▮▮

On 02/19/18 at 1005HRS I interviewed HARRIS about this investigation. HARRIS related he did not wish to change or add anything to the written statement he provided to LT. MAXWELL on 02/15/18. HARRIS related that neither Inmate BROWN or Inmate ALLEN reported any fight or assault to him at any time. HARRIS never witnessed any assault between BROWN and ALLEN. Inmate BROWN never made a request to him to go to the Medical Department. Interview concluded at 1015HRS.

**INTERVIEW:** ▮▮▮▮ **KENDRICK (Acting Unit Manager)** ▮▮▮▮

On 02/19/18 at 1025HRS I interviewed KENDRICK about this investigation. KENDRICK related he did not wish to change or add anything to the written statement he provided to LT. MAXWELL on 02/15/18. KENDRICK related he is the Unit Manager of the RHU/DTU and makes numerous rounds on the housing units. Inmate#NA6401 BROWN has talked to him on several occasions and never once told him he was being assaulted physically or sexually by his cellmate Inmate#FX1504 ALLEN. Inmate BROWN has told him he wanted a single cell because he has mental and physical issues. Inmate BROWN also told him he tends to eat and play with feces which bothers his cell mates. KENDRICK advised Inmate BROWN he was able to have a cellmate and that if he refused he would receive a Misconduct. Interview concluded at 1035HRS.

**INTERVIEW:** ▮▮▮▮ **HEASTER (Sergeant)** ▮▮▮▮

On 02/19/18 at 1045HRS I interviewed HEASTER about this investigation. HEASTER related he did not wish to change or add anything to the written statement he provided to LT. MAXWELL on 02/15/18. HEASTER related he is the Sergeant in the RHU. On 02/07/18 he was alerted that Inmate BROWN had a nosebleed. HEASTER had C.O. FOCHTMAN check as to why Inmate BROWN had a nose bleed. C.O. FOCHTMAN reported to HEASTER that Inmate BROWN stated he frequently gets nosebleeds and only requested clean sheets and a jumpsuit. C.O. FOCHTMAN also reported that when both Inmate BROWN and Inmate ALLEN were questioned about fighting neither admitted to fighting. HEASTER stated no officer on shift reported any evidence of an altercation between Inmate BROWN and Inmate ALLEN. HEASTER related Inmate BROWN requested to move to a different cell to various officers between 02/03/18-02/07/18. Inmate BROWN's rationale for moving to a different cell was because he felt DOC policies/procedures had been violated. HEASTER stated Inmate BROWN went to showers on multiple occasions and voluntarily returned to his cell. Interview concluded at 1100HRS.

| 6. OFFICER'S NAME/SIGNATURE | BADGE NO. | 7. INVEST. RECPT. | 8. SUPV. INIT./BADGE NO. | 9. ☐ CONCUR | 10. PAGE |
|---|---|---|---|---|---|
| TPR. ▮▮▮▮ LEAR/ | 8698 | ☐ CONT. ☒ TERM. | | ☐ NONCONCUR | 04 |

STATION

DEF000143

(EXhibit 72)

| SP 7-0051 (12-2011) | REPORT TYPE | DATE(S)/DAY(S) OF INCIDENT | INCIDENT NO. |
| | ☒ INCIDENT | | PA18-154001 |
| **PENNSYLVANIA STATE POLICE** | ☐ OTHER | | |
| CONTINUATION SHEET ☒ | | TIME(S) OF INCIDENT | JUVENILE | DOMESTIC VIOLENCE |
| SUPPLEMENTAL INVESTIGATION REPORT ☒ | | | ☐ | ☐ |

| ATTACHMENTS: | | DISP.: ☐ CLEARED BY ARREST ☐ UNFOUNDED ☐ EXCEPTIONALLY CLEARED· DATE |
| ☐ INTOXICATION WORK SHEET | ☐ MISSING PERSON CHECKLIST | A ☐ DEATH OF ACTOR | B ☐ VICTIM REFUSED TO COOPERATE |
| ☐ FELONY CRIMES AGAINST THE PERSON | ☐ STATEMENT FORM(S) | | |
| ☐ VICTIM/WITNESS ASSISTANCE GUIDE RECEIPT | ☐ RIGHTS WARNING AND WAIVER | B ☐ PROSECUTION DECLINED | E ☐ JUVENILE/NO CUSTODY |
| ☐ PROPERTY RECORD | | | |
| ☐ OTHER | | C ☐ EXTRADITION DENIED | N ☐ NOT APPLICABLE ☐ MULTIPLE CLEAR-UP |

| 1. DIV/STATION | | 2. DATE OF REPORT |
| 3. OFFENSE | | 4. VICTIM |

**5. NARRATIVE**

**INTERVIEW: Victim-Continued**
    The victim alleged he received a bloody lip during this attempted rape. On 02/06/18 the victim stated he talked with LT. KENDRICK and reported the assault and rape but nothing was done. On 02/07/18 the victim reported he and "Adam" talked to C.O. JOHNSON about being assaulted and the attempted rape. On 02/07/18 "Adam" jumped on him, ripped his jumper off and raped him. The victim related he was too tired to fight off "Adam." He received a bloody nose from this rape. The victim stated after the rape he yelled for C.O. JOHNSON but "another" C.O. observed him and stated he needed medical attention. The victim related he was advised by an unknown C.O. "The D.O.C. does not make courtesy moves". The victim gave his bloody clothes to C.O. Johnson but nothing was done due to medical refusing to see him. The victim reported "Adam" raped him a second time later in the day on 02/07/18. The victim reported his anus was penetrated twice, on two separate occasions by "Adam's" penis. "Adam" also rubbed his penis on the victim's face. The victim related he didn't refuse to go to "Medical" last night. The victim stated the nurse told him she wasn't a doctor and asked if he would rather be seen by a doctor. The victim stated the nurse never asked to take pictures. Nurse "Nikki" did take pictures of him but never asked for details of his assaults/rapes. Interview concluded at approximately 1435HRS.

**INTERVIEW: Raheem (NMN) ALLEN(Inmate#FX1504)**
    I interviewed Inmate#FX1504 Raheem ALLEN on 02/14/18 at approximately 1445HRS in the presence of LT███ MAXWELL.███ PYLE, Administrative Officer 1, transcribed this interview. It should be noted; ALLEN was the cell mate of the victim. ALLEN is who the victim referred to as "Adam" during his interview. ALLEN was advised of the nature of this investigation. ALLEN was advised of his Miranda Rights via a Rights and Warning Waiver at 1447HRS this date. ALLEN agreed to be interviewed and provided a written statement on DOC form Attachment 5-C/PREA)Procedures Manual. ALLEN denied all allegations made by the victim. ALLEN stated, "He never had a fight with BROWN or any sexual encounter at all". ALLEN related he wants a "Z code" but this isn't an attempt for him to get one. ALLEN stated he wasn't forcing anyone to do anything they didn't want to do. ALLEN related he didn't know BROWN was crazy until he was in the cell a couple days. ALLEN stated he tried to "deal" with BROWN because he too was young and wild. ALLEN stated he was questioned about BROWN having a nosebleed and if they had been fighting. ALLEN related that BROWN just had a nosebleed. Interview concluded at approximately 1505HRS.

| 6. OFFICER'S NAME/SIGNATURE | BADGE NO. | 7. INVEST. RECM. | 8. SUPV. INIT./BADGE NO. | 9. ☐ CONCUR | 10. PAGE |
| TPR.███ LEAR/ | 8698 | ☐ CONT. ☒ TERM. | | ☐ NONCONCUR | 03 |

STATION

DEF000142

(Exhibit 73)

There were no Inmate witnesses available for this allegation due to allegedly taking place in the cell.

**Staff Witnesses Version:**

CO1 Harris was interviewed on February 15, 2018 in the Clinic area by Lt Maxwell and AO1 Pyle.

During the interview the allegations made by Inmate Brown were reviewed. CO1 Harris was asked if he witnessed anything that looked like an assault on Brown while he was housed with Allen, he stated "No". CO1 Harris was asked if Allen or Brown ever reported to him that they were not getting along, he stated "No, Brown doesn't ever talk to anybody". CO1 Harris stated "Allen is a loudmouth and wouldn't be afraid to yell anything out of his cell so if they were having problems Allen would have said something". CO1 Harris was asked if Brown ever requested to see the medical department, he stated "no".

CO1 Harris submitted a written statement.

A/UM Kendrick was interviewed on February 15, 2018 in the Clinic area by Lt Maxwell and AO1 Pyle.

During the interview the allegations made by Inmate Brown were reviewed. A/UM Kendrick was asked if Brown ever reported to him that he and Allen didn't get along, he stated "No, he just wanted a single cell but he doesn't qualify for a single cell". A/UM Kendrick was asked if he ever reported he was physically or sexually assaulted by Allen, he stated "No". A/UM Kendrick stated "I made multiple rounds around the RHU and he never told me about being assaulted". A/UM Kendrick further stated "He told me his reason for wanting a single cell was that he has mental issues and likes to play with and eat feces, not that he was ever assaulted".

A/UM Kendrick submitted a written statement.

CO2 Heaster was interviewed on February 15, 2018 in the Clinic area by Lt Maxwell and AO1 Pyle.

During the interview the allegations made by Inmate Brown were reviewed. CO2 Heaster was asked if Brown ever reported being physically or sexually assaulted, he stated "No". CO2 Heaster stated "Trainee Johnston came to me and told me that Brown told him he had a nose bleed so he needed a new jumper so I told them to give him a new jumper". CO2 Heaster stated "The problems with Brown started over the weekend because Brown thought if he refused to be celled with somebody and got a misconduct then he thought it was against policy to cell him with somebody". CO2 Heaster stated "Allen and Brown

DEF000010

Ref: 1258511 pg 20 of 45 for GARTOR BROWN

Ref: 1258489 pg 36 of 59 fq cation sequ...

dbDC-138A

## CASH SLIP

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

**1. REQUISITIONING INMATE**

| INSTITUTIONAL NUMBER | LOCATION | DATE |
|---|---|---|

**2. RECEIVING INMATE**

| INSTITUTIONAL NUMBER | LOCATION | DATE |
|---|---|---|

**3. ITEMS TO BE CHARGED TO MY ACCOUNT**

MEDICAL CO-PAY

- ✓ Sick Call Medical/Dental   ($5.00)
- ___ Prescriptions #___   ($5.00 each)
- ___ Self Inflicted Injury   ($5.00)
- ___ Assaulted by #___
- ___ Sports Injury   ($5.00)
- ___ Sports Physical   ($5.00)
- ___ Telebinocular exam in conjunction with Eyewear Policy   ($5.00)

TOTAL CHARGE THIS VISIT: $ ___

WITNESS SIGNATURE

5. OFFICIAL APPROVAL

**6. BUSINESS OFFICE'S SPACE**

| CHARGE ENTERED | DATE | BOOKKEEPER |
|---|---|---|

---

## MEDICAL/DENTAL SICK CALL REQUEST

DATE: 2/13/18     TIME: 6:30

Block: G-D10s

INMATE NAME: Carter Brown   NUMBER: IV A (...)

Sick call is for     Medical     Dental
Circle one of the above

PROBLEM: Brown has assaulted from
2-3-18 - 2-7-18 he not also raped on 2-7-18
was all of inmates from head to toes, then badly
Beaten the flut & broken no se.

TO SIGN UP FOR SICK CALL: COMPLETE THE ABOVE FORM AND SECTION #1 AND SECTION #4 ON THE ATTACHED CASH SLIP.

I UNDERSTAND THAT THIS SICK CALL VISIT MAY BE SUBJECT TO THE FEES AS PER DC-ADM 820; CO-PAYMENT FOR MEDICAL SERVICES. THE PRACTITIONER THAT SEES YOU WILL DETERMINE IF YOU ARE TO BE CHARGED OR NOT.

If the visit is not chargeable this form will be destroyed.

After the sick slip charges are completed the cash slip portion will be torn off and only the cash slip will be sent to Inmate Accounts.

PLACE THIS REQUEST FORM IN THE LOCKED MEDICAL BOX ON YOUR HOUSING UNIT.

DEF000124

## CASH SLIP

DC-138A

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

### 1. REQUISITIONING INMATE

| INSTITUTIONAL NUMBER | LOCATION | DATE |
|---|---|---|
| SCI H | 6-∆-105 | 2/14/19 |

### 2. RECEIVING INMATE

| INSTITUTIONAL NUMBER | LOCATION | DATE |
|---|---|---|
| | | |

### 3. ITEMS TO BE CHARGED TO MY ACCOUNT
MEDICAL CO-PAY

- ✓ Sick Call Medical/Dental ($5.00)
- ___ Prescriptions # ___ ($5.00 each)
- ___ Self Inflicted Injury ($5.00)
- ___ Assaulted by # ___
- ___ Sports Injury ($5.00)
- ___ Sports Physical ($5.00)
- ___ Telebinocular exam in conjunction with Eyewear Policy (5.00)

TOTAL CHARGE THIS VISIT: $ ___

### 4. INMATE'S SIGNATURE

WITNESS SIGNATURE

### 5. OFFICIAL APPROVAL

### 6. BUSINESS OFFICE'S SPACE

| CHARGE ENTERED | DATE | BOOKKEEPER |
|---|---|---|
| | | |

---

(Exhibit 75)   Block: 6-∆-105

<u>MEDICAL/ DENTAL
SICK CALL REQUEST</u>

DATE: 2/14/18          TIME: 7:30 pm

INMATE NAME: _____ NUMBER: _____

Sick call is for    Medical        Dental
                    Circle one of the above

PROBLEM: Pain in ribs, Anus (tail, hard pain),
broken nose, (old pain), back pain,
groin pain problest of head & neck pain,
ankle knee & tight ankle pain

TO SIGN UP FOR SICK CALL: COMPLETE THE ABOVE
FORM AND SECTION #1 AND SECTION #4 ON THE
ATTACHED CASH SLIP.

I UNDERSTAND THAT THIS SICK CALL VISIT MAY BE
SUBJECT TO THE FEES AS PER DC-ADM 820; CO-
PAYMENT FOR MEDICAL SERVICES. THE PRACTITIONER
THAT SEES YOU WILL DETERMINE IF YOU ARE TO BE
CHARGED OR NOT.

If the visit is not chargeable this form will be destroyed.

After the sick call charges are completed the cash slip
portion will be torn off and only the cash slip will be sent to
Inmate Accounts.

PLACE THIS REQUEST FORM IN THE LOCKED MEDICAL
BOX ON YOUR HOUSING UNIT.

(Exhib #76)

Block: _GA 105_

## MEDICAL/ DENTAL
## SICK CALL REQUEST

DATE: _2/26/15_     TIME: _6:30 PM_

INMATE NAME: _Carlos Rivera_  NUMBER: _NA 6641_

Sick call is for     Medical     Dental
                   Circle one of the above

PROBLEM: _I was sexually assaulted & being denied_
_medical attention I have pain in right forarm_
_& bleeding wounds, brusing nose lip lobor in_
_back, pain, pain left shoulder & head neck pain_
_right knee & auttochs(?), crook pain in back_

TO SIGN UP FOR SICK CALL: COMPLETE THE ABOVE
FORM AND SECTION # 1 AND SECTION # 4 ON THE
ATTACHED CASH SLIP.

I UNDERSTAND THAT THIS SICK CALL VISIT MAY BE
SUBJECT TO THE FEES AS PER DC-ADM 820; CO-
PAYMENT FOR MEDICAL SERVICES. THE PRACTITIONER
THAT SEES YOU WILL DETERMINE IF YOU ARE TO BE
CHARGED OR NOT.

If the visit is not chargeable this form will be destroyed.

After the sick call charges are completed the cash slip
portion will be torn off and only the cash slip will be sent to
Inmate Accounts.

PLACE THIS REQUEST FORM IN THE LOCKED MEDICAL
BOX ON YOUR HOUSING UNIT.

---

DC-138A

## CASH
## SLIP

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

### 1. REQUISITIONING INMATE

| INSTITUTIONAL NUMBER | LOCATION | DATE |
|---|---|---|
| SCI-H | GD 105 | 2/26/15 |

### 2. RECEIVING INMATE

| INSTITUTIONAL NUMBER | LOCATION | DATE |
|---|---|---|

### 3. ITEMS TO BE CHARGED TO MY ACCOUNT

MEDICAL CO-PAY

✓ ___ Sick Call  Medical/Dental ($5.00)

___ Prescriptions # ___     ($5.00 each)

___ Self Inflicted Injury     ($5.00)

___ Assaulted by # ___     _Sick Call_

___ Sports Injury  ($5.00)

___ Sports Physical ($5.00)

___ Telebinocular exam in conjunction with Eyewear Policy     (5.00)

TOTAL CHARGE THIS VISIT: $ ___

_Carlos Rivera_

| 4. INMATE'S SIGNATURE | WITNESS SIGNATURE |
|---|---|
| | 5. OFFICIAL APPROVAL |

### 6. BUSINESS OFFICE'S SPACE

| CHARGE ENTERED | DATE | BOOKKEEPER |
|---|---|---|

( Exhibit 77 )

Brown told him he was suicidal and that he feared for his life. PSS Parsons stated "No, if he would have I would have taken action, for example observation placement". PSS Parsons stated he had several contacts with Inmate Brown, all of which indicated no need for clinical services and possible manipulation for a single cell. PSS Parsons was asked if he witnessed any injuries on Inmate Brown that could have possibly been sustained from a physical assault, he stated "No".

PSS Parsons submitted a written statement.

LPN Trice was interviewed on February 20, 2018 in the Clinic area by Lt Maxwell and AO1 Pyle.

LPN Trice was the nurse who initially reported the allegation upon reviewing the sick call slip authored by NA6401 Brown. Once LPN Trice reviewed the sick call slip and saw the allegation she notified control. LPN Trice responded to the RHU and attempted to assess Inmate Brown for any injuries since it was outside of the 96 hour window. LPN Trice stated "Inmate Brown refused any medical treatment". LPN Trice was asked if Inmate Brown appeared to have any injuries sustained from a physical altercation. LPN Trice stated "Inmate Brown did not have any injuries or markings related to his allegations".

LPN Trice submitted a written statement.

COT C Johnston was interviewed on February 20, 2018 in the Clinic area by Lt Maxwell and AO1 Pyle.

During the interview the allegations made by Inmate Brown were reviewed. COT Johnston was asked if he witnessed Inmate Allen attack Inmate Brown at any time, he stated "No". COT Johnston was asked if Brown ever asked him to move, he stated "The one day Brown did ask me to move but we already had the cell moves done and he wanted in a single but isn't a "Z" code". COT Johnston stated "Another thing I remember about Brown is the one day he had a bloody nose, asked to see medical, wanted different sheets and wanted another jumpsuit". COT Johnston was asked if the bloody nose looked to be a result from an assault, he stated "No, both inmates were asked if a fight occurred between them and they both stated no". COT Johnston stated "Brown told me from time to time he gets a bloody nose". COT Johnston stated "I let the Sgt. know about it and medical was actually doing rounds at that time so I informed them also". COT Johnston was asked if Brown ever reported to him he was physically or sexually assaulted, he stated "At no time did Brown tell me he was physically or sexually assaulted, he just asked for a change of clothes and some new sheets".

COT C Johnston submitted a written statement.

Lt Orndorf was interviewed on February 22, 2018 in the Clinic area by Lt Maxwell and AO1 Pyle.

---

State Correctional Institution at Huntingdon, 1100 Pike Street, Huntingdon, PA 16654

(EXhibit 77)

# Unit Management - Inmate Cumulative Adjustment Records

Inmate Apps     Inmate Inquiry     Reports     Photos     JNET     Unit Management

| JNet Inmate |
| --- |

**Offender Details**

| Name: ALLEN, Raheem | CL/Prog: | Housing Unit: | Inmate Status: |
| --- | --- | --- | --- |
| DOB: | Sex: | Race: Black | Perm Location: |
| PBPP #: | SID: | FBI #: | Temp Location: |
| RRRI: | Rebuttable: | Counselor: M. | Detainers: |

FX1504

| Your Current Working Facility is: Huntingdon | Huntingdon ∨ | Change Working Facility |
| --- | --- | --- |

| Add Comments |
| --- |

| New Search |
| --- |

**Inmate Cumulative Adjustment Records – Since**

| Entered Date | Entered By | Location | Comment |
| --- | --- | --- | --- |

DEF000101

Page 1 of 15     Total Records (362)

(Exhibit 78)

# Inmate Query - Cell History

Welcome CWOPA\hopyle

Inmate Apps    Inmate Inquiry    Reports    Photos    JNET

2/14/2018 9:21:30 AM [CR2PRODWEB04]

JNet Inmate

**Offender Details**

Name: ALLEN, Raheem     CL/Prog.cd:▓▓     Housing Unit:▓▓▓     Inmate Status:▓▓▓
DOB:▓▓▓     Sex:▓▓     Race:▓▓     Perm Location:▓▓▓
PBPP #:     SID:▓▓▓     FBI #:▓▓▓     Temp Location:
RRRI:     Rebuttable:     Counselor:▓▓▓     Detainers:▓▓

FX1504

New Search



DEF000053

(EXhibit 81)

ALLEN, RAHEEM  #FX1504

## DC - 560 MENTAL HEALTH CONTACT NOTE



**DC-560 MENTAL HEALTH CONTACT NOTE**
PA DOC DC - 560 MENTAL HEALTH CONTACT NOTE



000105

Ref: 1258489 pg 17 of 59 for GARTOR BROWN

(Exhibit 82)

**ALLEN, RAHEEM**  #FX1504                    DOB: ███████    Location: ███████

███████████████████
██████

███████████████████████
██████████

███████████
██████████████████████

████████████
████████████

██████████████████
███████████████████████

███████████████
██████

██████████████
█████

███████████
████████████████████

███████████████
████████

███████████
████████████████

██████████

**DC-560 MENTAL HEALTH CONTACT NOTE**
PA DOC DC-560 MENTAL HEALTH CONTACT NOTE

000106

Ref: 1258489 pg 18 of 59 for GARTOR BROWN

(EXHIBIT 83)

**ALLEN, RAHEEM** #FX1504                                    DOB: █████████   Location: █████████



I have read this form or have had this form read to me, have been given an oppotunity to ask questions about it, and:

☑ acknowledge that I understand and consent to the disclosure of information as set forth in the above form.

000103

Ref: 1258489 pg 15 of 59 for GARTOR BROWN

(Exhibit 84)

## MENTAL HEALTH REFERRAL FORM



Mental Health Referral Form
Commonwealth of Pennsylvania
Department of Corrections
DC-97
Revised 5-01

Inmate Name: *Raheem Allen*

Original - Medical Record      Copy - Counselor      Copy - Psychology      Copy - Referral (retain for tracking)

*13.8.1, Access to Mental Health Care Procedures Manual*
*Section 1 - Psychological Services*                                    *Attachment 1-A*
Issued: 2/6/2014
Effective: 2/13/2014

DEF000110

Ref: 1258489 pg 22 of 59 for GARTOR BROWN

(EXhibit 85)

DC-457

## MEDICAL INCIDENT/INJURY REPORT

| Person Involved: | (Last Name) Allen | (First Name) Raheem | (Middle Initial) | (check) Male ☑ | Female ☐ |

| Reported to Medical Department: | Date: | Time: | Date of Birth: ▓▓▓▓▓ |

| Date of incident: 2-7-18 | Time of incident: appror 2200 | Exact location of incident: BD1005 |

| Inmate: (check) ☑ | Inmate/Employee number: FX1504 | Housing unit: GA | Work related: (Check) Yes ☐ No ☑ |
| Employee: (check) ☐ | | | Sport related: (Check) Yes ☐ No ☑ |

| | Supervisor (Name/Title): | |

| | Department: | Job title: |

| Visitor/Other: (check) ☐ | Home address: | Home phone: |
| | Occupation: | Reason for presence at this facility: |

| Property Involved: Describe: | Yes ☐ No ☑ | Equipment involved: Yes ☐ No ☑ | Was person authorized to be at location of incident: Yes ☑ No ☐ |

[large redacted black area]

| Date of report: 2-14-18 | ▓▓▓▓ | paring report: Emish RN | Reviewing Authority: HARKER, RNS  Harker, RNS |

**13.1.1, Management and Administration of Health Care Procedures Manual**
**Section 5 – Occupational Exposure to Blood-borne Pathogens**
Issued: 2/6/2017   Effective: 2/13/2017

*Attachment 5-D*
*Page 1 of 2*

DEF000119

Ref: 1258489 pg 31 of 59 for GARTOR BROWN

(Exhibit 86)

DC-457

## MEDICAL INCIDENT/INJURY REPORT

| Person Involved: | (Last Name) Allen | (First Name) Raheem | (Middle Initial) | (check)  Male ☑   Female ☐ |
|---|---|---|---|---|
| Reported to Medical Department: | Date: NA | Time: | | Date of Birth: |

13.1.1, *Management and Administration of Health Care Procedures Manual*
*Section 5 – Occupational Exposure to Blood-borne Pathogens*
Issued: 2/8/2017    Effective: 2/13/2017

*Attachment 5-D*
*Page 1 of 2*

DEF000074

(Exhibit 86)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GARTOR KIKI BROWN,** | : | **No. 3:18-CV-01527** |
| **Plaintiff,** | : | |
| | : | **Honorable James Munley** |
| **vs.** | : | |
| | : | |
| **LT. MAXWELL, C.O. PLOCINIK,** | : | |
| **C.O. JOHNSON** *and* **C.O.** | : | |
| **FOCHTMAN,** | : | *Complaint filed 08/01/18* |
| **Defendants** | : | |

## SUPPLEMENTAL RESPONSE TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS

Defendants, by and through their undersigned counsel, hereby provide the following objections and supplemental response to plaintiff's first request for production of documents to defendants, as follows:

1.     First & last name of the inmate Brown was housed with on Unit G Block A from 2/3/18 through 2/8/18 at SCI Huntingdon in Cell 108.

**RESPONSE**:       **OBJECTION**.  Defendants object to this request because it seeks information that is not relevant to the claims in this matter.

Defendants further object to this request as inmates are not permitted to access records related to other inmates. Possession of such records would constitute contraband. *See* 2017 Inmate Handbook, p. 30, § D(3)(o). *See also* Department Policy DC-ADM 003, "Release of Information Policy," Section IV, subsection A.5.

(Exhibit 87)

("An inmate is prohibited from receiving inmate information pertaining to another inmate other than him/herself.").

Without waiving the foregoing objections, see PSP report previously produced and marked for production as DEF000139-DEF000147.

2.     Plaintiff seeks for inspection & copying from D.O.C. Defendants all Pennsylvania Additive Classification Tool Policy, or (PACT) Policy, including but not limited to classifiding (sic) & housing inmates.

**RESPONSE**:     **OBJECTION**. Defendants object to this request because it is overbroad and is not relevant to the claims or defenses of any party.

Defendants further object to this request as not being proportional to the needs of this case.

Defendants further object to this request to the extent that it seeks information relating to matters beyond that are set forth in the complaint.  Because the scope of this matter is limited, all of the requested records are not relevant to the claims at issue.

Defendants further object to this request to the extent that it seeks certain information that if obtained, an inmate will be able to use such information to adversely affect institutional safety and security and may also attempt to manipulate and circumvent Department policy, which can affect the overall safety and security

2

*(Exhibit 88)*

of the institutions. Thus, the disclosure of this information would create safety and security concerns and may endanger the lives of involved staff. The Department has adopted various policies and rules regarding the care, custody, and control of the inmates within its institutions that it keeps confidential for security reasons. Certain policies, procedures manuals, and rules are confidential and cannot be disclosed to inmates. Inmates are not entitled to copies of confidential policies and procedures.

By way of further response, Section 3 – Pennsylvania Additive Classification Tool ("PACT") of 11.2.1, *Reception and Classification* is a confidential DOC policy and not subject to release.

3.      Plaintiff seeks for inspection & copying all "(11.2.1)" Policy Manual.

**RESPONSE**:  **OBJECTION**.  Defendants object to this request because it seeks information that is not relevant to the claims in this matter.

Defendants further object to this request because it is overly broad and unduly burdensome.

Defendants further object to this request to the extent that it seeks information relating to matters beyond that are set forth in the complaint.  Because the scope of

3



(Exhibit 89)

this matter is limited, all of the requested records are not relevant to the claims at issue.

Defendants further object to this request as not being proportional to the needs of this case. The burden and expense on Defendants in searching for and producing the documents requested outweigh any benefit the documents as requested could confer on Plaintiff in his prosecution of this lawsuit.

Without waiving the foregoing objections, any public portions of DOC policies are in the prison's library and are available to all inmates.


4.      Plaintiff seeks for inspection & copying all "(IRC)" documents Pursuant to what the IRC team documented while Plaintiff was at SCI Camp Hill & most importantly SCI Huntingdon; Plaintiff also seek these documents as to the IRC documents of inmates Allen same inmate he claims sexually assaulted him on May the inmate have a different government name, Plaintiff seeks the information as to the inmate he was housed with on G_A_ in cell 108 from 2/3/18 through 2/8/18 while at SCI Huntingdon in the R.H.U. Plaintiff seeks full history of IRC documents from the time the inmate entered the DOC to current date. What has been documented by the IRC team at each institution the inmate had been housed at. (sic-paragraph)

4

*Exhibit 90*

contraband. *See* 2017 Inmate Handbook, p. 30, § D(3)(o). *See also* Department

Policy DC-ADM 003, "Release of Information Policy," Section IV, subsection A.5.

("An inmate is prohibited from receiving inmate information pertaining to another

inmate other than him/herself.").

 

     5.    Plaintiff seeks for copying all classified classification documents or all

documents from the "diagnostic center" as to integrated case summary of the inmate

knewn (sic) as inmate Allen same person Brown claims sexually assaulted him;

Plaintiff also seek the same information for himself Gartor Kiki Brown.

**RESPONSE**:  **OBJECTION**.  Defendants object to this request because it is

overbroad and is not relevant to the claims or defenses of any party.

Defendants further object to this request as not being proportional to the needs

of this case.

Defendants further object to this request to the extent that it seeks information

relating to matters beyond that are set forth in the complaint.  Because the scope of

this matter is limited, all of the requested records are not relevant to the claims at

issue.

Defendants further object to this request to the extent that it seeks documents

that contain evaluations, diagnoses, impressions, and recommendations, information

that if obtained, an inmate will be able to use such information to adversely affect

*(Exhibit 91)*

institutional safety and security and may also attempt to manipulate and circumvent Department policy that can affect the overall safety and security of the institutions. Thus, the disclosure of this information would create safety and security concerns and may endanger the lives of involved staff. The Department has adopted various policies and rules regarding the care, custody, and control of the inmates within its institutions that it keeps confidential for security reasons. Certain documents are confidential and cannot be disclosed to inmates.

Defendants further object to this request as inmates are not permitted to access records related to other inmates. Possession of such records would constitute contraband. *See* 2017 Inmate Handbook, p. 30, § D(3)(o). *See also* Department Policy DC-ADM 003, "Release of Information Policy," Section IV, subsection A.5. ("An inmate is prohibited from receiving inmate information pertaining to another inmate other than him/herself.").

Without waiving the foregoing objections, see the DOC investigative report previously produced and marked for production as DEF000008-DEF000138.

6. Plaintiff seeks misconducts, grievances, & criminal record history of the inmate he was house in cell 108 on G_A_ in the RHU at SCI Huntingdon from 2/3/18 through 2/8/18.

*EXhibit 92*

**RESPONSE**: **OBJECTION**.   Defendants object to this request because it is overbroad and is not relevant to the claims or defenses of any party.

Defendants further object to this request as not being proportional to the needs of this case.

Defendants further object to this request to the extent that it seeks information relating to matters beyond that are set forth in the complaint.  Because the scope of this matter is limited, all of the requested records are not relevant to the claims at issue.

Defendants further object to this request as inmates are not permitted to access records related to other inmates. Possession of such records would constitute contraband. *See* 2017 Inmate Handbook, p. 30, § D(3)(o). *See also* Department Policy DC-ADM 003, "Release of Information Policy," Section IV, subsection A.5. ("An inmate is prohibited from receiving inmate information pertaining to another inmate other than him/herself.").

7.     Last Plaintiff seeks for inspection & copying all complaints, statements, investigation files of any other inmate or staff that claim that inmate Allen had attempted to or did sexually abuse, assault them or threaten to do as such; any other claims against the inmate Pursuant to ADM 001 or 008 policy.

**RESPONSE**:  **OBJECTION**.   Defendants object to this request because it is overbroad and is not relevant to the claims or defenses of any party.

8

Exhibit 93

Defendants further object to this request as not being proportional to the needs of this case.

Defendants further object to this request to the extent it assumes facts not in evidence.

Defendants further object to this request to the extent that it seeks information relating to matters beyond that are set forth in the complaint.  Because the scope of this matter is limited, all of the requested records are not relevant to the claims at issue.

Defendants further object to this request as inmates are not permitted to access records related to other inmates. Possession of such records would constitute contraband. *See* 2017 Inmate Handbook, p. 30, § D(3)(o). *See also* Department Policy DC-ADM 003, "Release of Information Policy," Section IV, subsection A.5. ("An inmate is prohibited from receiving inmate information pertaining to another inmate other than him/herself.").

8.    Plaintiff also seeks for inspection & copying a statement from Ivan Costillo LS3066, the statement predicates as to what the inmate knewn (sic) about the sexual assault, the statement was confiscated by Ms. Spkyer & Mr. Maxwell after Brown gived (sic) the statement to his Counslor (sic) Richards to copy she then gived (sic) it to Maxwell & Spkyer they then confiscated the statement claimant it was put in a (sic) investigation file and Brown could not get a copy.

9

Exhibit 99

**RESPONSE**:   **OBJECTION**.   Defendants object to this request because it is overbroad and is not relevant to the claims or defenses of any party.

Defendants further object to this request as not being proportional to the needs of this case.

Defendants further object to this request to the extent it assumes facts not in evidence.

Defendants further object to this request to the extent that it seeks information relating to matters beyond that are set forth in the complaint. Because the scope of this matter is limited, all of the requested records are not relevant to the claims at issue.

Defendants further object to this request as inmates are not permitted to access records related to other inmates. Possession of such records would constitute contraband. *See* 2017 Inmate Handbook, p. 30, § D(3)(o). *See also* Department Policy DC-ADM 003, "Release of Information Policy," Section IV, subsection A.5. ("An inmate is prohibited from receiving inmate information pertaining to another inmate other than him/herself.").

Without waiving the objections, Defendants supplement this response and produce the handwritten statement of inmate Castillo, which has been marked for production as DEF000296-DEF000297.

10



## Section 5 – Single-Celling ("Z" Code) and Double-Celling Housing

### A. General Procedures/Orientation

During the diagnostic and classification process and upon reception at any facility as a result of a transfer, each inmate shall be interviewed and available records shall be reviewed by the Initial Reception Committee (IRC), after which the appropriate housing status shall be determined. Staff shall inform inmates of the conditions which apply to double-celling. During this orientation, staff shall explain rules governing behavior as well as those governing the conditions and contents of the cell. Included shall be procedures for requesting consideration for termination of double-celling and instructions for inmates to follow to inform staff of any problems arising as a result of double-celling.

### B. Processing Inmates for Double-Celling

An inmate who does not require single-cell status ("Z" Code) may be processed for double-celling according to the following guidelines and procedures.

1. Selection of cells: Selection of cells to be used for double occupancy should be made pursuant to the following guidelines:

   a. cells in administrative custody (AC) or disciplinary custody (DC) may be used for double occupancy only after careful review of those inmates to be double celled; and

   b. every attempt should be made to designate cells in locations that afford the most appropriate access, supervision, and control.

2. Selection criteria governing inmates to be double-celled are listed below.

   a. Double-celling of inmates generally shall be based on the inmate's expression of preferences affecting double-celling compatibility. An inmate's requests generally shall be accommodated if circumstances permit and provided there are no contraindications (custody level, security needs, etc.) noted by staff. If the inmate does not express a preference, the double-cell assignment shall be made based on facility need (available bed space).

   b. During the inmate reception process, the IRC or designated responsible staff shall ask the inmate if he/she has preferences affecting double-celling compatibility, but shall not offer the inmate choices. If the inmate indicates a preference (non-smoking cell, familial relationships, age, race, etc.), this information shall be documented and forwarded to the inmate's counselor for inclusion in the **DC-14, Cumulative Adjustment Record** for future reference. To the extent reasonable, the inmate's indicated preferences should be accommodated. When it is not reasonable to accommodate, staff should inform the inmate whether the preference is likely to be accommodated in the future and, if so, when such an accommodation is likely to occur. The facility does not have to move an inmate based solely on his/her request.

5-1


(Exhibit 96)

    d.  An inmate who has a documented history of aggressive or predatory behavior towards cell partners or who staff have reason to believe would exhibit assaultive or predatory behavior towards cell partners.[5]

2.  ***A newly received inmate at a Diagnostic and Classification Center (DCC) may be assigned a temporary "Z" Code until transferred to a permanently assigned institution.*** When an inmate is transferred from one facility to another, the sending facility shall explain the specific reason for "Z" Code in the transfer rationale. The IRC at the receiving facility shall review the "Z" Code housing classification to determine if it is still appropriate for the inmate. ***If the IRC determines that a "Z" Code should remain, it should*** be processed according to the procedures in **Subsection C.4. below**.

3.  When reviewing an inmate for "Z" Code housing status, facility staff shall complete a review of appropriate documentation. Documentation shall include misconduct reports, recommendations from medical and/or psychiatric or psychological staff, and reports from other staff who have knowledge of the inmate's adjustment and behavior. The Program Review Committee (PRC), Unit Manager, or Shift Commander may temporarily assign a "Z" Code until a full assessment is completed.

4.  ***The assignment or continuation of all "Z" Program Codes requires review and approval by the Regional Deputy Secretary.***

    a.  ***After review of the "Z" Code recommendation and supporting documentation by IRC or the Unit Management Team***, a DC-46, **Vote Sheet** along with other relevant information shall be circulated to the Facility Manager/designee ***for a*** decision.

    b.  ***If approved, the Facility Manager/designee shall provide a copy of the written rationale, the DC-46, current recommendations from medical and/or psychiatric staff, the Security Office, or any other supporting documentation, along with the Z-Code Approval/Continuation Request Form (Attachment 5-A) to his/her respective Regional Deputy Secretary and inspection team by emailing: CR-DOC Eastern Region Inspection Team; CR-DOC Central Region Inspection Team; or CR-DOC Western Region Inspection Team. If the Facility Manager disapproves the addition/continuation of the "Z" Code, there is no need to submit an approval packet to the Regional Deputy Secretary.***



    c.  ***The Regional Deputy Secretary's decision will be forwarded to the Facility Manager. If approved, the Facility Manager will direct the Unit Management Team to update the inmate's program code in the Unit Management System under the "Program Code" section, note in the Inmate Cumulative Adjustment Record (ICAR), and in*** the Pennsylvania Additive Classification Tool (PACT). ***The update shall include the date of approval and brief rationale for adding/continuing "Z" Code.***

---

[5] 4-4133

Issued: 8/4/2017
Effective: 8/11/2017

Case 3:18-cv-01527-MCC   Document 97   Filed 04/27/20   Page 53 of 60

*11.2.1, Reception and Classification Procedures Manual*
*Section 5 – Single-Celling ("Z" Code) and Double-Celling Housing*


(Exhibit 97)

d. *At a minimum, the review of existing "Z" Codes shall be conducted during the annual review.*

e. *The assignment of temporary "Z" Codes are not subject to review by the Regional Deputy Secretary. All "Z" Codes assigned longer than six continuous months shall not be considered temporary and must be reviewed by the Regional Deputy Secretary. Assignment or removal of temporary "Z" Codes may not require a DC-46; however, rationale for the assignment or removal of the temporary code is required to be documented in the ICAR.*

f. *Removal of the "Z" Code does not require review by the Regional Deputy Secretary. However, the removal of a "Z" Code will require the Facility Manager's approval via the DC-46 Vote Sheet procedures.*

5. Use of Program Code "Z"

   a. "Z" Code housing status can be assigned to an inmate any time during an inmate's incarceration.

   b. In addition to staff-initiated housing evaluations, an inmate may request to be reviewed for the addition or deletion of "Z" Code housing classification. Staff shall make the final determination regarding Program Code "Z" addition or removal according to procedures in **Subsection C.4. above**. Unless there is an obvious demonstrated need, this will be completed at the inmate's regularly scheduled annual review. If the inmate meets the criteria for consideration of a single cell, the counselor shall follow procedures outlined in **Subsection C.4. above**. If the inmate does not meet the criteria, the counselor shall inform the inmate of his/her ineligibility and document the specific reason why in the *ICAR*.

   c. An inmate assigned Program Code "Z" due to an inability to double cell is not necessarily precluded from open dormitory housing if staff believe the inmate or others will not be jeopardized as the result of the dormitory housing placement.

   d. The "Z" Code housing status is not necessarily a permanent status. An inmate who is classified with a "Z" Code shall be reviewed at least annually and at any other staffing to insure the code is still the most appropriate housing classification.

   e. An inmate assigned Program Code "Z" due to assaultive tendencies towards cell partners or who staff have reason to believe would be assaultive toward cell partners:

      (1) shall be Custody Level 4 or greater as determined by the PACT in accordance with **Section 3** of this procedures manual. Staff shall make a notation in the "Security Concerns" section of the Unit Management System, specifying the type of assaultive behavior (e.g., physical/sexual);

      (2) who is identified as a Facility Sexual Predator must be assigned Custody Level 4 or 5 and Program Codes "Z" and "H";

(Exhibit 98)

## STAFF WRITTEN STATEMENT OF SEXUAL ABUSE/HARASSMENT

LOCATION: Clinic Area      DATE: 2-20-18 TIME: 1330   CASE: 2012-P-197

LAST NAME: Trice                FIRST

DOB: ▮                             EMPLOYEE NUMBER: ▮

FACILITY OF EMPLOYMENT:   SCI Huntingdon

___ Trice ___, hereby state that Lt Maxwell has identified himself/herself to me as a
Commissioned Officer employed by the Pennsylvania Department of Corrections. ▮ (initial)

The following statement is being given by me freely and without coercion for official Commonwealth business and will be
considered for all purposes, including actions under the Statutes of this Commonwealth, just as though it had been sworn or
affirmed before a court of law or formal arbitration panel. ▮ (initial)

I was reviewing sick call slips when I saw Inmate Brown MA-6401
slip with the allegation of abuse from 2-3-18 to 2-7-18 + then
raped on 2-7-18. I reported to control responded to RHU I
LT orndorf to assess inmate. Inmate refused medical treatment
refused to have pictures taken. There were no naked injuries
or marcing related to the allegation claimed.

I have read and understand this entire statement or it has been read and explained to me. I have signed this statement
indicating that it is true and correct.

Having read this statement, which was given by me for official Commonwealth business, to be considered for all purposes,
including actions under the Statutes of this Commonwealth, just as though it had been sworn or affirmed before a court of law or
formal arbitration panel, I find I have nothing further to add.

_____ w3                        _____ 2-20-18
(Witness)                                               (Signature of Person Making Statement) /Date

Page _1_ of _1_

DC-ADM 008, Prison Rape Elimination Act (PREA) Procedures Manual    Attachment 5-C, Page 1
Section 5 – Investigating Allegations of Sexual Harassment and/or Sexual Abuse
Issued: 8/22/2016
Effective: 9/22/2016

DEF000040

Ref: 1258613 pg 7 of 57 for GARTOR BROWN

(Exhibit 99)

## MEDICAL INCIDENT/INJURY REPORT

(check) Male ☑   Female ☐

| Person Involved: | (Last Name) Brown | (First Name) Coorter | (Middle Initial) |
|---|---|---|---|

Date of Birth: ████

Reported to Medical Department: Date: 2-13-18   Time: 2225

Date of incident: 2-3-08/7-18   Time of Incident: Unknown   Exact location of incident: GA1008

Inmate: (check) ☑   Employee: (check) ☐

Inmate/Employee number: MAG951   Housing unit: GD1005

Work related: (Check) Yes ☐ No ☐
Sport related: (Check) Yes ☐ No ☐

Supervisor (Name/Title):

Department:    Job title:

Visitor/Other: (check) ☐

Home address:    Home phone:

Occupation:    Reason for presence at this facility:

Property Involved: Yes ☐ No ☑   Equipment Involved: Yes ☐ No ☑
Describe:

Was person authorized to be at location of incident: Yes ☑ No ☐

1. Describe exactly what happened, why it happened and action(s) taken. Describe all injuries to the body and include specific information regarding the part(s) of the body impacted. Describe the damage to property and/or equipment.
NET/Nursing Protocol used Yes ☐ No ☐ N/A ☑   Description of Illness/Injury:

PREA allegation = Inmate Allen C11504

(Continue on reverse)

2. Treatment rendered: Inmate refused medical attention to this time only wants to be seen by md. refusing to have photo taken per Policy

(Continue on reverse)

3. Follow-up: Skrig in medical

(Continue on reverse)

Physician notified? Yes ☐ No ☑   Family notified? Yes ☐ No ☑ Name:   Time:

Person involved seen by a facility practitioner? Yes ☐ No ☑   Date:   Time:   Where?   Practitioner's name:

Person involved taken to a hospital? Yes ☐ No ☑   Date:   Time:   Where?   Transport Mode:

Type of injury:
1. Laceration ☐
2. Hematoma ☐
3. Abrasion ☐
4. Burn ☐
5. None Apparent ☑
6. Other ☐
Specify: _____

Indicate on diagram location of injury:

Date of report: 2-13-18   Signature & title of person preparing report: [signature] TRICE LPN   Reviewing Authority:

**13.1.1, Management and Administration of Health Care Procedures Manual**
**Section 5 – Occupational Exposure to Blood-borne Pathogens**
Issued: 2/6/2017  Effective: 2/13/2017

Attachment 5-D
Page 1 of 2
DLEF000073

Ref: 1258613 pg 40 of 57 for GARTOR BROWN

*(Exhibit 100)*

DC-457

## MEDICAL INCIDENT/INJURY REPORT

| Person Involved: | (Last Name) Brown | (First Name) Gartor | (Middle Initial) | (check) Male ☑ | Female ☐ |
|---|---|---|---|---|---|

| Reported to Medical Department: | Date: NA | Time: | Date of Birth: ▮▮▮▮▮▮ |
|---|---|---|---|

| Date of Incident: 2-7-18 | Time of Incident: 2200 | Exact location of Incident: GD 1005 | | |
|---|---|---|---|---|
| Inmate: (check) ☑ | Inmate/Employee number: NA6401 | Housing unit: GD | Work related: (Check) Yes ☐ No ☑ | |
| Employee: (check) ☐ | Supervisor (Name/Title): | | Sport related: (Check) Yes ☐ No ☑ | |
| | Department: | | Job title: | |
| Visitor/Other: (check) ☐ | Home address: | | Home phone: | |
| | Occupation: | Reason for presence at this facility: | | |

| Property Involved: Describe: | Yes ☐ No ☑ | Equipment Involved: Yes ☐ No ☑ | Was person authorized to be at location of incident: Yes ☑ No ☐ |
|---|---|---|---|

1. Describe exactly what happened, why it happened and action(s) taken. Describe all injuries to the body and include specific information regarding the part(s) of the body impacted. Describe the damage to property and/or equipment.
   NET/Nursing Protocol used  Yes ☐   No ☐   N/A ☑   Description of Illness/Injury:

PREA allegation. voice attempt occurred 2/6, assault occurred 2/7/18 at approx 2200. There are no injuries to this inmate observed (Continue on reverse)

2. Treatment rendered:

Nursing Assessment. No injuries observed by this nurse. Pictures taken of inmate as inmate allowed (Continue on reverse)

3. Follow-up:

(Continue on reverse)

| Physician notified? Yes ☑ No ☐ | Family notified? Yes ☐ No ☑ | Name: | Time: |
|---|---|---|---|
| Person involved seen by a facility practitioner? Yes ☐ No ☑ | Date: | Time: | Where: | Practitioner's name: |
| Person involved taken to a hospital? Yes ☐ No ☑ | Date: | Time: | Where: | Transport Mode: |

Type of injury:
1. Laceration ☐
2. Hematoma ☐
3. Abrasion ☐
4. Burn ☐
5. None Apparent ☑
6. Other ☐
Specify: _____

Indicate on diagram location of injury:

| Date of report: 2-14-18 | ▮▮▮▮▮▮ preparing report: Emished | Reviewing Authority: ▮▮▮▮▮ |
|---|---|---|

**13.1.1, Management and Administration of Health Care Procedures Manual**
Section 5 – Occupational Exposure to Blood-borne Pathogens
Issued: 2/6/2017   Effective: 2/13/2017

Attachment 5-D
Page 1 of 2

DEF000118

DC009

(Exhibit 101)

cc File

| Form DC-135A **INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania Department of Corrections |
|---|---|
| | **INSTRUCTIONS** Complete items number 1-8.  If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
| 1.  To: (Name and Title of Officer) Ms Snyker | 2.  Date: 6/12/19 |
| 3.  By: (Print Inmate Name and Number) Gaitor Brown NA6401  *Inmate Signature* | 4.  Counselor's Name |
| | 5.  Unit Manager's Name House |
| 6.  Work Assignment | 7.  Housing Assignment GA 111 |

8.  Subject: State your request completely but briefly.  Give details.

P.R.E.A.  On 5/24/19, c/o Hariss came to get me for a Rope counseling, after taking me to the D.T.u. and putting me in a cage, c/o Hariss would put to P.R.E.A. Phone, in front of me has he has done befor. As the phone started to ring, I asked and told the c/o he could not pick the Phone up that it would break all confidentiality in which had already been confirm by the P.R.E.A. Counselor over the ~~cree~~ Phone weeks Prior. The c/o asserted "Your not picking up our fucking Phone" I then told the c/o he could Pick it up, but to hand the Phone to me, I was ignored, the c/o picked the Phone up & started to talke to the P.R.E.A. counselor, before handing me the phone, the c/o then left the room leaving the door wide open so other inmates can hear me, talk out of retaliation. The P.R.E.A counselor againe told me over the Phone that Sha would report the c/o actions. This is an issue because, A inmate King AK7A SL015e while I was housed on GA back in April & much this inmate told me c/o's told him I was playing the rope hot line & was threating & harrassing me because of such, I asked for Se Praytection the the inmate. The c/o actions on 5/24/19 confirmed the confidentiality Policy.

9.  Response: (This Section for Staff Response Only)

Mr. Brown -

The officers do verify who is on the telephone before they hand you the telephone. That is not a

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name _____ *Print* _____ CCJDM *Sign* Date 6/20/19.

Revised July 2000

violation. You indicate the officer walked out providing you confidentiality.

(Exhibit 02)    E-Unit - B Pod

| Form DC-135A  **INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania Department of Corrections  **INSTRUCTIONS** Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|

| 1. To: (Name and Title of Officer) P.R.E.A. Coordinator | 2. Date: 1/6/20 |
|---|---|
| 3. By: (Print Inmate Name and Number) Garlos Brown NA6401 _____ Inmate Signature | 4. Counselor's Name E-Unit |
| | 5. Unit Manager's Name E-Unit |
| 6. Work Assignment | 7. Housing Assignment EB - Cell 31 |

8. Subject: State your request completely but briefly. Give details.

Pursuant to the 008 Policy I was under going Counseling once every 30 days over the Phone. With due respect it was in relation to my claims of sexual assault.

9. Response: (This Section for Staff Response Only)

I have sent the paperwork that needs to be signed to your counselor and psychology. The Calls at present are on Thursdays and you will be on a callout that say teleconference to the visit area. The Calls rotate and only sometimes on a 6 week rotation

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name _____ Print _____ Sign _____ Date 1.9.2020

Revised July 2000

Certificate OF Service

I  Gartor Kiki Brown here Pro Se as Plaintiff certify that a true and Correct Copy of his Motion For Summary Judgment (1) Page, Plaintiff's Statement OF Undisputed Material Facts (2) Pages, memorandum of law in Support OF Motion For Summary Judgment (3) Pages (2) Pages Of which is Plaintiff's declaration (02) Exhibits, Exhibit (45) has (15) Exhibits was all Put into the Prison's mail box for first class Postage to the address below On April 23, 2020.


United States District Court Middle District
235 North Washington Ave
P.O. Box 1148
Scranton, PA 18501




Dated _4/23/20_                          Gartor Kiki Brown NA6401
                                          P.O. Box 307
                                       286 Woodland Drive
                                    Marienville, PA 16239
                                        SCI Forest.

Garfor Brown NA6401
SCI Forest
P.O. Box 307
286 Woodland Drive
Marienville, PA 16239

INMATE
MAIL

PRIORITY MAIL

neopost
04/24/2020
US POSTAGE $008.70

ZIP 16239
041M11225I506

RECEIVED
SCRANTON

APR 27 2020

PER _____
DEPUTY CLERK

United States District Court
Middle District of Pennsylvania
235 North Washington Ave
P.O. Box 1850
Scranton, PA 18501