# In The United States District Court For The Middle District Of Pennsylvania

Gartor Kiki Brown

v.

LT. Maxwell, et. al.,

No. 18-CV-1527

FILED
HARRISBURG, PA
AUG 29 2022
PER ____IBR____
DEPUTY CLERK

## Plaintiff's Proposed Findings Of Facts And Conclusions Of Law

1. Brown has a history of vulnerability to assaults & sexual assaults.
2. Brown, at his transfered to SCI Huntingdon on 10/23/17 was surving a 2-4 years sentence for Aggravated Harassment.
3. It was Promulgated that Brown Post feminine characteristics & gender identity issues.
4. Brown encountered defendant Maxwell at the time PREA investigator, Brown told Maxwell he was subject to sexual abuse while at Camp Hill.
5. Maxwell forced Brown to sign a double celling sheet
6. Brown meet with PAC King & other medical officials pursuant to pending injuries
7. Brown was forced to write a statement on 10/25/17 that he feel safe in population
8. Brown was put on a single cell unit called BA
9. Brown was transfered back to SCI Camp Hill 10/30/17
10. Brown was forced with an inmate Willson, that voiced he did not want to be housed with a homosexual
11. Brown was send to medical on 11/1/17 because Willson assaulted him
12. Brown meet with Pennsylvania state police on 11/10/17 pursuant to sexual assault claims
13. Transfered to Huntingdon 11/13/17, encountered Maxwell, he use to work at Camp Hill, a lot of heat due to m/ca called Brown a "Whistle blower".
14. At this time Brown was undering some form of treatment while housed on BA single cell unit
15. Around this time, Brown voiced some mental health concerns to Ms. Cousins & Butterball
16. Officials had initiated some form of retailation monitoring under OOB inmate victim
17. Brown's first refusal of a cell out of fear on 12/1/17, & Brown's first attempt to take PC
18. Brown was written up a saire on 12/5/17 for refusing a cell due to fear & was moved to GD
19. Brown was send to population contrary to safety concerns, to A-A
20. Unit AA unlike B-A is a double celling block.
21. Brown was first put in cell 108, after leaving the cell upon coming back he encountered Dale Jackson
22. Jackson started to press Brown pursuant to his feminine characteristics & wearing eye liner
23. During this time Brown used the phone to call the PREA hotline after a C/O Kovach called Brown a faggot 1/7/11
24. During this time officials were responsible for Pass back request & grievance responses & mail
25. Kovach Passed Jackson Brown's mail pursuant to the Camp Hill sexual assault, 1/13/18
26. Jackson who was friends with Allen told Allen to whom both inmates started to extort, threat & sexual harress
27. Both Allen & Jackson made it Promulgated that Brown was not only a homosexull, but that he was a rat working with state police
28. Brown encountered Maxwell pursuant to safety concerns PREA claims & after Jackson had put shank to Brown's neck
29. Allen was housed on A-A from 7/14/17 - 1/20/18
30. Jackson assaulted Brown on 1/15/18
31. Brown received a misconduct on 1/22/18
32. Brown was put in cell 116 in the RHU on GA
33. Brown received another write up for refusing a cell, on 1/25/18
34. C/O Plocinik removed Brown from 116 cell on GA to 214 cell on GD on 2/2/18, Brown predicated concerns due to the cell was cover in O/C due to the previous inmate housed in the cell was fighting & was sprayed

35. Mr. Plocinik returned predicating you will be moving to GA with inmate Allen
36. Brown made it apparent that Allen had extorted him in population, he did not feel safe moving in the cell with him
37. Plocinik was also the escorting officer on 2/2/18 to Maxwell & other leaderships, Brown explicitly told Maxwell & leadership what he had told Plocinik, Brown was told he would be force to move or force would be use
38. Likewise on 2/3/18 C/O Plocinik ordered Brown to move with Allen or force would be used
39. While on GA Brown informed C/O Clark & Plocinik he feared for his safety
40. At this time, an individual name Shea DelGrosso was in 109 cell warning Brown he did not have to go in the cell with Allen
41. Allen also voiced the stigmatized that Brown was a rat, homo, he would not freely housed with him
42. Defendants were aware Allen exhibited dangerous, predatoral behavior arousing unlawfull sexual desirous that were not being meat as a lifer
43. Defendants was aware, Allen had (77) misconducts, must of whom was violent, (4) of which were sexual related, Allen had documented history of aggressive & predatory behavior; the inmate was agitated the department took away his Z-code; defendants were aware of potential imbalance of power existed between Brown & Allen that would lead to victimization of the weaker Brown
44. The cell was a corner cell farest from the bubble
45. Defendants had received employee training under (28 C.F.R. § 1153[07]) pursuant to zero tolerance against sexual abused, defendants were aware that Brown identified as a gay, homosexual, or transgender
46. Brown was forced in 108 cell, C/O Plocinik predicated to Allen "Fuck him up, he's a rat & a kiddie-toucher," C/O Plocinik failed to intervene when Allen started to assault Brown
47. In February of 2018 video monitering existed on GA block
48. The assault continued on February 4th, with the inmate rapping his hand with socks; Brown would cover up his face utilizing his arms
49. Both Plocinik & Fochtman promoted the inmate as he took Brown's dinner tray; Plocinik returned to pick up mail as Brown initiated a request of staff for law library asking for help
50. On February 5th Brown requested to be move; ignored forced to cuff up & face the wall so that Allen can cuff up & be allowed to go to yard
51. Upon returned Allen was forced to lock in the cell with threats of force; both inmates were let out for shower but was forced back in 108 cell
52. Brown encountered Mr. Maxwell, Allen told Maxwell why he did not want to cell with Brown & that he intended to keep assaulting Brown; Brown also encountered both the Unit Manager Kendrick & Parsons, Brown stated his safety concerns but was ignored
53. C/O Chilcote made an attempt to move Allen with a friend on GB, with orders that Brown must stay in corner cell, "we can't have you refusing to lock in; Brown also encounter C/O Johnston as he did rounds informing Johnston but was ignored
54. Brown was attacked in the middle of the night, hitting head on bed fixture, wrestled, hit, repeatedly slammed to ground, at one point a chockhole in attempts to submitt Brown to get his jumper off
55. Brown encountered not limited to C/O Plocinik, Maxwell, Fochtman, Johnston; defendants were put on notice that Allen attempted to rape Brown during the night & that Brown feared for his safety; Allen demanded that Brown be moved or he would be raped & assaulted, the faggot will not eat
56. On 2/7/18 Brown was subject to the same procedure, Brown directed concerns to Garlick, Poorman, some would even concede "we are only following order, we can't move you"; Allen went to yard, & was forced back in 108 cell
57. After dinner trays served by Plocinik & Fochtman Brown asked to be move, while talking to C/O Johnston with a sheet rapped around him, Allen yelled "I'm sick of this" & attacked Brown
58. Consequently Brown started to yell "help, get off me"; Brown keaped his eyes at the door, remember seeing C/O Plocinik approached the door; Brown remember socks being rapped around Allen's hand & part of the sheet was forced into his mouth
59. Allen forced his way through Brown's jumper, with Brown on his back & legs over shoulders, Allen thrust into Brown's anal causing pain & bleeding
60. As a result of the sexual assault, Brown sustained injuries that triggered bleeding from his anal, mouth, nose, knee, head
61. Although Brown encountered Johnston, Fochtman, Plocinik, Chochle, Heaster, telling them that he was sexually assaulted, he was never seen by medical
62. It look like an animial was slay said Johnston, Fochtman & Plocinik would joke about Brown conceiving "we do not make courtesy move, this is Huntingdon, not the Hilton."
63. Fochtman briefly encountered witness Shea DelGrosso
64. C/O Johnston came back to 108 cell, predicating that he was directed to exchange Brown's "linens, boxers, jumper etc.
65. Brown did not leave 108 cell on February 7th, 2018
66. Brown was subject to a second sexual assault, Allen dragged Brown to the toilet, at a point put Brown face in the toilet
67. On the morning of February 8th, 2018, officials refused to let Allen out for yard, it appeared to be as a direct result as to what had transpired on February 7th, 2018
68. During showers it was attempted to deprive both Brown & Allen, forcing Allen to cover cell door with a towel, with other inmates protesting only then was Allen & Brown let out
69. Brown was threatened by Allen, that if he returned to 108 cell, he would be kill
70. Brown refused to return to 108 cell with Brown begging staff, he would be vicimized again, officials repeated to use force, but with God on Brown's side, they did not
71. Brown was moved to GD 105 cell, & written up did not mention why Brown refused to return to 108 cell
72. On February 13, 2018, Brown pleaded guilty to refusing to obey an order asserting that he feared his life
73. Brown initiated a sick call on February 13, 2018, first access to paper; Brown immediately requested video monitering be preserved
74. Brown wrote a statement during a middle of night encounter with LT. Orndorf

# Conclusion of Law

The facts of the case gleaned from February 3, 2018 through February 8, 2018, Brown to whom was forced in a RHU cell with a violent lifer, who exhibited predatoral behavior arousing from sexual desires, also with knowledge that the lifer knew that Brown had cooperated with several state police. The inmate established that he hated "rats & homosexuals." This case acknowledged defendants ignorance of physical and sexual abuse of a prisoner at the hands of another prisoner. It was also established that defendants Johnston and Fochtman deprived Brown of medical treatment or delayed access to such.

It is established that this case legal issues reflects that of the Eighth Amendment Cruel and Unusual Punishment Clause. This is in line with Failure to Protect, and Failure to Provide Adequate Medical Care.

Brown request that the Court establish that defendants Maxwell, Plocinik, Fochtman & Johnston violated his constitutional rights under the Eighth Amendment Cruel and Unusual Punishment Clause, by failing to protect him from violence at the hands of another prisoner.

Brown also request that the Court establish that defendants Johnston, and Fochtman violated his constitutional rights under the Eighth Amendment Cruel and Unusual Punishment Clause by depriving or delaying medical treatment.

First Brown points to a Supreme Court case as to Plaintiff's Failure to Protect Claims; Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed 2d 811 (1994). In Farmer the prisoner was transferred for disciplinary reasons to a federal penitentiary in Indiana & was ultimately placed in general population, without voicing concerns to such placement. Within (2) two weeks, the prisoner was allegedly raped and beaten by a cellmate. The prisoner was a transsexual who projected feminine characteristics. On certiorari, the Supreme Court vacated the judgment and remanded the case.

It was held that prison officials may be held liable for denying to a prisoner humane conditions of confinement under the Cruel and Unusual Punishment if the official was deliberate indifferent. Deliberate indifference was identified as equivalent to "reckless disregard" and describes a state of mind more blameworthy than negligence, but is something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result, thus a prisoner must point to evidence showing that he was incarcerated under conditions posing substantial risk of serious harm, the officials were deliberate indifferent to that substantial risk to his health and safety and thus the officials deliberate indifference caused the inmate harm.

The first element sets out an objective inquiry that the officials "knowingly and unreasonably disregarded an objectively intolerable risk of harm. The second element of " deliberate indifference" is a subjective standard, the prison official must actually have known or been aware of the excessive risk to inmate safety. To satisfy these elements Brown points to the record, well documented, underlined circumstances. It was promulgated Brown post feminine characteristics, both safety and mental health concerns, stigmatized as a "rat and a faggot" forced in a cell corner furthest from the bubble, with an inmate Lifer that exhibited dangerous, predatoral behavior arousing from unlawful sexual desires that were not being met as a lifer.

At the time Mr. Allen had (7) misconducts (4) of which were sexual related; defendants was aware of potential imbalance of power existed between Brown and Mr. Allen that would lead to victimization of Brown, from the very fact it was obvious. Defendants knew Mr. Allen had zero tolerance for gays, rats, or kiddie touchers, from the very fact that he told them. One could argue that Mr. Allen meat the standard as a criteria that staff shall carefully review when considering Z-code pursuant to (P.R.A.) Prison Risk Assessment tool characterization of " Characteristics of Sexually aggressive inmate "Between age 27-45", Large build, Physical strength, Aggressive nature, having limited ties to family, Street wise & Gang Affiliated, Have difficulty controlling voyeuristic behavior", doing an substantial amount of time, established himself as having power & strength with the prison population." See Coleman V. Wetzel, 2019 U.S. Dist. LEXIS 172587 (M.D. PA. July 18, 2019).

The fact that Mr. Allen check most boxes may establish the element under Farmer, even ignorance of the underlying circumstances. The second element of deliberate indifference is a subjective Brown predicates that defendants actually knew of the risk. Mr. Plocinik and other officials forced Brown into the cell, contrary to Mr. Allen's demands that he will not be housed with a "rat, faggot". His dialect was cut and clear. Defendant witness an assault and multiple assaults thereafter. Defendants collectively at different times refused and ignored Brown's request to move. They knew there was an obvious, substantial risk to Brown's safety.

Prior to the move to 108 cell, Brown was forced to sign a double celling sheet, and documents were passed to a Dale Jackson, a friend of Mr. Allen pursuant to Camp Hill sexual assault. Jackson told Mr. Allen, at the time Brown and Mr. Jackson, were cellies. Brown meat with Mr. Maxwell exposing the facts and Mr. Allen's envolvement in extorting him. On Feb. 7, 2018, defendant Johnston refused to remove Brown and witnessed Brown being attacked. Brown believe the dispute also brieff drew Mr. Plocinik to his cell, in part him and Mr. Johnston quickly walking away. The after math was also obvious, as defendants refused to remove Brown, at the very lease acknowledging his bloodied nose, As Mr. Fochtman asking, "Which one of you, am I writing up for fighting", Mr. Johnston coming back to exchanged Brown's linens, boxers, jumper etc. with the longstanding documents and the underlined circumstances the shall conclude it happed Brown was rape. First defendants knew there was a substantial risk of serious harm to Brown namely, a substantial risk that the Plaintiff would be attacked. Second, the defendants were each deliberately indifferent to that risk. Third, the Plaintiff would have suffered less harm if the defendants had not been deliberately indifferent. See Bistrian V. Levi, 2010 U.S. Dist. LEXIS 77348 (E.D. PA. July 29, 2010)

The Eighth Amendment Failure to Provide, delaying or denying medical care, this was well established in Estelle V. Gamble, 429 U.S. 97 (1976). The Supreme Court held that prison officials violate the Eighth Amendment when they are deliberately indifferent to a prisoner's serious medical needs. To succeed on such a claim, Brown must make (1) subjective showing that defendants Fochtman and Johnston were deliberately indifferent to those needs, (2) An objective showing that those needs were serious. Deliberate indifference occurs when "prison officials" intentionally deny or delay access to medical care or interfere with treatment once prescribed."

Brown request that the Honorable Court conclude that on February 7, 2018, Brown had a serious medical need, the problem was obvious that non-medical defendants Mr. Fochtman and Mr. Johnston, would easily recognize the need for medical attention but failed to take reasonable measures to address it. Defendants actually knew, symptoms were obvious, nose injure, bruised and bleeding from anal, head injurie; knee, back, groin, bleeding from mouth. Defendant joked that "somebody was slayed." It's a bat, its a girl. It was evident Brown's jumper, boxers, t-shirt, linens were exchanged. The Honorable Court shall infer from the obviousness of the risk, that the defendants knew of the risk, thus defendants denied Brown a reasonable request for medical treatment, this exposed Brown to physical pain as well as mental.

# Certificate OF Service

This is to Certify that Plaintiff's Proposed findings of facts and Conclusions of laws, with Brown's Conclusion of law was Put into the Prison's mail box for first class Postage to the address below on 8/25/22

United States District Court
228 Walnut Street
P.O. Box 983 Harrisburg, PA 17108

Dated 8/25/22

Garfer Brown
Moshannon Valley Jail
555 Geo Drive
Phillipsburg, PA 16866
S/ Garfer Brown

Gartor Brown
Moshannon Valley Jail
555 Geo Drive
Phillipsburg, PA 16866

JOHNSTOWN PA 159

26 AUG 2022 PM 1 L

Hasler
08/26/2022
US POSTAGE $000.57⁰

FIRST-CLASS MAIL

ZIP 16866
011E11683466

RECEIVED
HARRISBURG, PA
AUG 29 2022
PER _____ DEPUTY CLERK

United States District Court
228 Walnut Street
P.O. Box 983 Harrisburg, PA 17108

17108$2566